UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHANEL E.M. NICHOLSON, et al., Plaintiffs | § § § § § § § § § § § § § | Civil Action 4:23–cv– 01025 |
| | | JURY TRIAL DEMAND |
| v. | | |
| A.H.D. HOUSTON, INC. d/b/a CENTERFOLDS; W.L. YORK, INC. d/b/a COVER GIRLS; D WG FM, INC. d/b/a SPLENDOR; D TEXAS INVESTMENTS INC / AHD HOUSTON d/b/a TREASURES GENTLEMENS CLUB; ALI DAVARI; HASSAN DAVARI, Defendants | | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR HOSTILE WORK ENVIRONMENT, BREACH OF CONTRACT, AND DISCRIMINATORY DENIAL OF ACCESS**

Plaintiffs CHANEL E.M. NICHOLSON, LIOSHA WILLIAMS, DESTINY ILORI, JALAYCIA DECLOUET, LINDSEY SMITH, TABITHA VANN, and CORINA CASTRO  individually and on behalf of all other African-American dancers/entertainers with the same or similar claims, alleges the following based upon personal knowledge, information and belief, deposition testimony by a long term manager at Defendants' establishments, interviews with another local industry manager, interviews with current and former dancers at the Defendants' places of business; and, published documents.

I. NATURE OF THE ACTION

1. Plaintiff Chanel E.M. Nicholson alleges causes of action against Defendants A.H.D. HOUSTON, INC. d/b/a CENTERFOLDS ("Centerfolds") and D WG FM, Inc. d/b/a SPLENDOR ("Splendor"), and against and individuals ALI DAVARI and HASSAN DAVARI (referred to as "Individual Defendants")  due to violations of 42 U.S.C. § 1981, for creating, promoting and permitting a hostile work environment during her time working

at Centerfolds and Splendor, thereby causing severe emotional distress and resulting injury and loss of compensation from disability; for breach of numerous contractual provisions; and for breach of contract for refusal to provide her access, though payment by Plaintiff Nicholson would have been required for access, to Centerfolds' and Splendor's premises in 2021.

2. Plaintiff Liosha Williams alleges causes of action through violations of 42 U.S.C. § 1981 against D TEXAS INVESTMENTS INC. / AHD HOUSTON d/b/a TREASURES GENTLEMENS CLUB ("Treasures") and the Individual Defendants for: (i) creating, promoting and subjecting her to a hostile work environment at Defendants' place of business, causing severe emotional distress and resulting injury and loss of compensation from disability; and (ii) refusal to provide her access, though payment by Plaintiff Williams would have been required for access, to Defendant Centerfolds' premises in 2022; and (iii) breach of contract for forced "tipping" of management at Treasures.

3. Plaintiff Destiny Ilori allege causes of action through violations of 42 U.S.C. § 1981 against Centerfolds, Splendor and the Individual Defendants for refusal to provide her access, notwithstanding proposed payment by her, which prevented her from earning income; and for severe emotional distress and pain and suffering and resulting injury from the racist rejection at Centerfolds and Splendor (described below).

4. Plaintiffs Jalaycia Declouet, Lindsey Smith, Tabitha Vann, and Corina Castro allege causes of action through violations of 42 U.S.C. § 1981 for refusal to provide them access notwithstanding payment as an access condition, to one or more of Defendants' premises; which prevented all these Plaintiffs from earning income. These causes of action are each against one or more of: W.L. YORK, INC. d/b/a COVER GIRLS ("Cover Girls"), Centerfolds, Splendor and Treasures (collectively, "Defendant Clubs"), and the Individual Defendants (the Individual Defendants with Defendant Clubs, are collectively referred to as "Defendants"), as described below.

5. All Plaintiffs seek to represent (i) other African-American women ("Black Dancers") applying to be entertainers/dancers at the Defendant Clubs during the statutory period, and denied access; and/or (ii) Black Dancers barred or terminated or who had their

contracts breached by the Defendant Clubs during the statutory period; provided, however, that the class of such Black Dancers does not include any members who entered a valid and enforceable agreement with a Defendant Club, and wherein the Court dismisses such Black Dancers' claims under 42 U.S.C. § 1981 and/or for contract breach, or the Court rules that such Black Dancers cannot be class members because such a valid and enforceable agreement is found by the court to: (a) prohibit collective actions or class actions for asserting the Black Dancers' rights under 42 U.S.C. § 1981 and/or for contract breach; or (b) provide for arbitration as the exclusive forum for resolving the Black Dancers' claims under 42 U.S.C. § 1981 and/or for contract breach.

6. The Individual Defendants own and operate a number of adult entertainment establishments featuring female entertainers (also referred to as "dancers" herein), including all the Defendant Clubs. Individual Defendants are named as the sole officers (President and Vice President) and/or the sole directors of the Defendant Clubs in the state-filed corporate documents for said Defendant Clubs. The Defendant Clubs have the same two persons (Bob Furey and Jere Gibbons) designated as managers in an agreement with Plaintiff Nicholson (**Exhibit A**, p.12, for Splendor), Plaintiff Williams (**Exhibit B**, p.12, for Treasures), and in another known agreements between Plaintiff Nicholson and Cover Girls. An agreement from an unrelated case (Baugh v. AHD Houston, Inc., No. H-20-0291) shows a dancer's agreement from 2020 with Centerfolds, also designating Bob Furey and Jere Gibbons as managers.

7. The causes of action herein arise from Defendants' willful and intentional actions which created a hostile work environment, by: (i) denying Plaintiff Nicholson (who is Black) access rights because their Black Dancer limit had been reached, while she worked at: (a) Centerfolds, from about August 2013 to September 2014, and where she applied on June 24, 2021, and (b) Splendor, where she worked from about September, 2014 to November, 2016, and where she applied on August 11, 2021; (ii) allowing illegal prostitution and sex slavery to flourish unchecked and with active participation by management on Defendants' premises at Splendor and Centerfolds; (iii) extorting money from Ms. Nicholson under threats of denial of access at Splendor and Centerfolds; and (iv) management's training of managers on extortion techniques at Splendor, with training

materials incorporated in Plaintiff's agreement with Splendor (**Exhibit A**, *see* memorandum addendum).

8. The denial of Plaintiff Nicholson's access rights and refusing her access or a dancer position resulted directly from Defendants' policy of limiting the total number of Black Dancers working the same shift at the same venue; and not providing Black Dancers dancer positions or access rights in order to enforce such limit, while no corresponding limitations were applied to Caucasian entertainers (hereinafter referred to as "Defendants' Racist Policy").

9. Plaintiff Nicholson was also subject to a hostile work environment by: (i) the periodic denial of her access rights under Defendants' Racist Policy; (ii) her being extorted with forced "tips" for managers, in order for her to maintain or regain access at Centerfolds and Splendor; (iii) the training in extortion of Black dancers provided in materials from management which are incorporated in her agreement with Splendor (**Exhibit A**, memorandum addendum); and (iv) managements' participation in and allowance of illegal prostitution and sex slavery on the premises.

10. The causes of action herein also arise from Defendants' willful and intentional actions relating to Defendants' Racist Policy, by subjecting Plaintiff Liosha Williams, who is Black, to a continuous and hostile work environment, by: (i) Treasures' managers requiring "tips" from her under threat of denial of access if not paid, wherein they would also target Ms. Williams and other Black Dancers for more money more often than other races of dancers; (ii) by the training in extortion of Black dancers provided in materials from management which are incorporated in her agreement with Treasures (**Exhibit B**, p. 12); and (iii) comments from managers that she is too dark-skinned and that they don't "hire Black girls," or they don't "hire too many Black girls," while she worked at Treasures from about 2018 to 2022.

11. The causes of action herein also arise from Defendants' willful and intentional actions relating to Defendants' Racist Policy, by denying Plaintiff Williams access when she applied at Centerfolds on February 12, 2022, and again in April 2022 when she returned to Centerfolds to apply. At the April 2022 encounter, she was told by the manager that

she would have had to pay to get hired, and that she was "too dark" to work there; while the same manager accepted a Caucasian dancer for a dancer position at the same time.

12. Defendants' Racist Policy was enforced by the same owners and managers common to all Defendant Clubs subject to the present action, and as explained further below, all Plaintiffs have causes of action arising from its enforcement against them. The training materials on extortion are, on information and belief, provided to all managers at all Defendant Clubs.

13A. In late 2021 and 2022, Plaintiff Destiny Ilori, who is Black, went to Splendor three times to apply for a dancer position, and the last time, on May 20, 2022, the hostess at the front of the premises told her that they had enough ebony dancers. She saw Caucasian dancers entering the premises in street clothes, apparently to start their shifts.

13B. Between late 2021 and May 20, 2022, Plaintiff Destiny Ilori applied at Centerfolds about eight times. The last time, on May 20, 2022, the hostess refused to give her an application. She was told by the hostess that they were not going to be hiring for a while. But then, the hostess immediately granted a female Caucasian applicant for a dancer position an application form and let this person meet and speak directly with the hiring manager. Another employee told Ms. Ilori that they only grant dancer positions to a limited number of Black dancers.

14. Ms. Ilori currently dances at Queen of Hearts and has worked there since 2018. During the last four years she has also danced at Chics Club and Crazy Bull. She has also danced at Goldiggers for the last few months.

15. Plaintiff Jalaycia Declouet, who is Black, went to Centerfolds to apply for a dancer position several times in 2022, but was always refused access. In July 2022, she went to apply there with an acquaintance who is Caucasian, and that person was given an audition and a dancer position, but Ms. Declouet was not given an audition. Ms. Declouet had been told on the phone prior to going to Centerfolds that day that they were hiring.

16. The next day she came back and spoke with the front desk hostess who said they were not auditioning that day. Then the day after Ms. Declouet returned again and spoke with a manager and the front desk hostess, and was given an application. After the

manager and the hostess spoke privately, however, the hostess told Ms. Declouet that she was sorry but the club had a limit on how many black women they could hire, and they were "all full."

17. Ms. Declouet started dancing at Michaels Men's Club in Broussard, Louisiana in 2021. In 2021 she also danced at Cabaret Nola in Metairie, Louisiana. In 2022, before she auditioned at Centerfolds, she had moved to Houston.

18. Plaintiff Lindsey Smith, who is Black, applied for a dancer position at Treasures one afternoon in July 2022, but the manager said there were "too many Black girls" on day shift and to come for night shift if she wanted to be given a dancer position. She saw Caucasian dancers inside the premises.

19. Plaintiff Lindsey Smith started dancing in 2018 at Divas Bikini Bar and at Crazy Horse. From 2019 to 2022 she also danced at Houston Dolls. She currently dances at Heartbreakers.

20. Plaintiff Tabitha Vann, who is Black, applied at Splendor in January 2022, and was rejected by the male Caucasian manager who insulted her. She saw only Caucasian dancers inside the premises.

21. Plaintiff Tabitha Vann had danced at Cover Girls in about 2016, and has been dancing at The Ritz for a year or so.

22. Plaintiff Corina Castro, who is Black, applied at both Splendor and Cover Girls in April 2021 for a dancer position, but was told by both the manager and/or the hostess near the front that because she was not white, they wouldn't hire her. She saw Caucasian dancers inside the premises on both occasions.

23. Plaintiff Corina Castro danced at the following establishments during the dates indicated: Solid Platinum: 2006-2013; Houston Dolls: 2007-2008; HOTTYZ: 2006-2012; Babes: 2006-2007; Billionaire Boys Club: 2008-2010; Vegas Club: 2010-2012; Chics Cabaret: 2012-2021; Hi 10/Divas: 2012-2022; Lachatte: 2019-2023; Legs Cabaret: 2020-2021; G's cabaret: 2012-2016; XTC south: 2012-2017; and, Show Palace: 2013-2015.

24. Enforcement by Defendants of Defendants' Racist Policy to exclude Plaintiffs, require added money from Plaintiffs for access, or to create and promote a hostile work environment, including through training on extortion, violates 42 U.S.C. § 1981 because it violates Plaintiffs' rights as African-Americans to make and enforce contracts to the same extent "as is enjoyed by white citizens." It violates the rights of other Black Dancers, including those who are class members, for the same reason.

25. Denying access is also a breach of the access rights in the agreements Plaintiffs Nicholson (**Exhibit A**, ¶3) and Williams (**Exhibit B**, ¶3) entered, and other dancers are required to enter, with the Defendants Clubs. Extorting money as "tips" is a violation of Plaintiffs Nicholson's (**Exhibit A**, p. 10 ¶19) and Williams' (**Exhibit B**, p. 10 ¶19) agreements.

26. Plaintiffs bring a class action to recover: (i) the monies they and other Black Dancers who are class members would have received but instead who, under Defendants' Racist Policy, were excluded or denied access to Defendant Clubs' premises; (ii) compensation for the severe emotional distress, loss of income and related damages caused to Plaintiffs Nicholson and Williams by Defendants' hostile work environment; (iii) compensation for the severe emotional distress, loss of income and related damages caused to Plaintiff Ilori by Centerfolds' and Splendor's racist rejections of her; (iv) pre- and post-judgment interest on such monies; (iii) punitive damages, (v) attorneys' fees and (vi) other related relief including (a) remedying past discrimination by additional hiring of Black Dancers and (b) declaring unconscionable agreements with Black Dancers, which are required to be entered, unenforceable and prohibiting enforcement of such agreements. Members of the class are those Black Dancers meeting the requirements of paragraph 5 above, and not disqualified by paragraph 5(a) or 5(b) above (as further explained in paragraph 34 below), and are hereinafter referred to as "Black Class Members."

II. PARTIES

27. Plaintiff Chanel Nicholson is African-American and was at all relevant times and is a resident of Harris County, Texas.

28. Plaintiff Liosha Williams is African-American and was at all relevant times and is a resident of Harris County, Texas.

29. Plaintiff Destiny Ilori is African-American and was at all relevant times and is a resident of Harris County, Texas.

30. Plaintiff Jalaycia Declouet is African-American and has been a resident of Harris County, Texas and currently resides in Louisiana.

31. Plaintiff Lindsey Smith is African-American and was at all relevant times and is a resident of Harris County, Texas.

32. Plaintiff Tabitha Vann is African-American and was at all relevant times and is a resident of Harris County, Texas.

33. Corina Castro is African-American and was at all relevant times and is a resident of Harris County, Texas.

34. The Black Class Members are all current and former female Black Dancers who, under Defendants' Racist Policy (i) applied and were refused positions as dancers at the Defendant Clubs, starting two years before this Complaint was filed up to the present, and/or (ii) were terminated or refused access as dancers by one or more of the Defendant Clubs and who had agreements with Defendant Clubs but which were **not** valid and enforceable agreements with the Defendant Club(s), wherein said agreements prohibited or waived court action, collective actions and/or class actions for asserting their rights under 42 U.S.C. § 1981 or for contract breach, and/or allowed Defendants to have claims for such rights exclusively decided in arbitration rather than in court, and whose claims in court were dismissed as a result of such agreement(s) or who were ordered excluded from the class by the court; starting four (4) years before the Original Complaint was filed up to the present.

35. Defendant A.H.D. HOUSTON, INC. is a Texas for-profit corporation doing business as Centerfolds, at 6166 Richmond Avenue, Houston, Texas 77057, and has accepted service.

36. Defendant W.L. YORK, INC. is a Texas for-profit corporation doing business as Cover Girls at 10310 W. Little York, P.O. Box 570413, Houston, Texas 77257, and has accepted service.

37. Defendant D WG FM, Inc. is a Texas for-profit corporation doing business as Splendor and at 7440 W Greens Rd, Houston, Texas 77064, and has accepted service.

38. Defendant D TEXAS INVESTMENTS INC. / AHD HOUSTON is a Texas for-profit corporation doing business as Treasures Gentlemen's Club at 5647 Westheimer Rd, Houston, TX 77056, and has accepted service.

39. Defendant ALI DAVARI is the president and a director of Defendants W.L. YORK, INC., A.H.D. HOUSTON, INC., D TEXAS INVESTMENTS INC., and D WG FM, Inc., and has accepted service.

40. Defendant HASSAN DAVARI is the vice president and a director of Defendants W.L. YORK, INC., A.H.D. HOUSTON, INC., D TEXAS INVESTMENTS INC., and D WG FM, Inc., and has accepted service.

41. One or more of the Individual Defendants (who are the sole named officers and directors of the Defendant Clubs) would sometimes visit the Defendant Clubs. During these site visits, they thereby directly observed a paucity of Black Dancers at the Defendant Clubs, and/or exclusion or access denial of Black dancers. As the sole officers and directors (as well as being the reputed owners of all the Defendant Clubs) they are charged with exerting operational and management control over Defendant Clubs and managing operations and day-to-day affairs at Defendant Clubs.

42. The Individual Defendants are responsible for establishing and enforcing Defendants' Racist Policy, including the refusal to provide access or barring of access of Plaintiffs and other Black Dancers. The Individual Defendants are, as directors and officers, also aware of the extortion by forced "tipping" described above, as well as the training manual for the extortion (*i.e.,* the "Human Trafficking Awareness" memorandum, addendum to **Exhibit A**). They are also aware of the tolerance of prostitution and sex slavery at the Defendant Clubs.

43. The Individual Defendants were thereby the alter egos of the corporate entities that own and operate the Defendant Clubs, or at least are the guiding spirits behind Defendants' Racist Policy, and are therefore personally liable for actions of the Defendant Clubs, including all damages from establishing and enforcing Defendants' Racist Policy and from the hostile work environment they helped create.

III. VENUE AND JURSIDICTION

44. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under 42 U.S.C. § 1981. The Court has pendent jurisdiction over Plaintiff Williams' and other class members' breach of contract claims and claims of unconscionability of the dancers' agreements with Defendants.

41. Venue is proper in this District because all Defendants are located in Harris County, and all Plaintiffs' causes of action arose in Harris County.

IV. FACTS

Plaintiff Nicholson

42. Starting in about August, 2013, Plaintiff Nicholson was a dancer at Centerfolds. When she first applied for a dancer position there in about June 2013, she and another Caucasian woman applied together. Though the Caucasian applicant had a plump, less attractive figure, and had no front teeth, she was given a position and Plaintiff Nicholson was not. Plaintiff Nicholson believes, however, that solely because this Caucasian applicant actively supported her being engaged to the management, in August 2013 Plaintiff Nicholson was given a dancer position at Centerfolds.

43. Plaintiff Nicholson does not recall signing the agreement and attachments (the "Centerfolds Agreement" **Exhibit C** hereto) which she believes she signed with Defendant Centerfolds in June and August 2013. She does recall that no one explained any part of the Centerfolds Agreement to her, she was not told she could have it reviewed by a lawyer before signing, and that she was not given a copy of the Centerfolds Agreement.

44. Plaintiff Nicholson typically worked up to about seven shifts per week at six hours per shift during her time at Centerfolds.

45. All of Plaintiff Nicholson's income consisted of monies paid to her directly by the customers at Centerfolds, usually in cash. Customers were also her sole income source, (as was or would have been true for all Plaintiffs allowed to enter and work as dancers) at all Defendant Clubs.

46. Regularly during her time at Centerfolds, sometimes as often as once or twice per week, Plaintiff Nicholson would arrive for her shift after having fully made-up, coiffed, painted her nails and/or applied extensions, shaved and perfumed her entire skin surface, and prepared her clothing so as to be able to remove it attractively and appropriately while dancing, only to be told by the hostess at the front upon entering the premises she could not enter and work. When she investigated the cause she would be told that other Black Dancer(s) (identified by name(s)) were already there. When she would investigate with the acting manager, often Chris M. or a manager known as "Reggie" (unknown last name), they would explain that there were too many Black Dancers already working. On several occasions Reggie told Plaintiff Nicholson that management did not like more than a small number of Black Dancers on the premises at the same time. At other times one of the managers would tell her there were too many Black Dancers working and exclude her, if she encountered them before the door girl. Plaintiff Nicholson never heard of a Caucasian dancer being excluded in a similar manner.

47. Though the Centerfolds Agreement, **Exhibit C**, ¶2, provided for Plaintiff Nicholson to determine her schedule, Centerfolds would charge Plaintiff Nicholson entry fees, which were scaled based on time of entry, with evening and late night costing more than earlier times.

48. Managers would often deny access, bar, or terminate, and especially fine, Plaintiff Nicholson and other Black Dancers for non-compliance with unwritten rules regarding dress, performance and sharing of income with managers (and sometimes other employees) in Centerfolds. Plaintiff Nicholson was often propositioned by Managers to provide sexual favors as *quid pro quo* for continuing working or for withdrawing fines. Plaintiff Nicholson knows of other Black Dancers who had sex with Managers, though Plaintiff Nicholson did not.  Plaintiff Nicholson also would need to generously tip the DJ in order to have him play music she wanted. Plaintiff Nicholson was eventually barred by

Centerfolds for not sharing enough of her income with particular managers and employees. She did not pay these fines.

49. Through Plaintiff Nicholson's discussions with other dancers at Centerfolds she learned that Black Dancers were nearly always levied larger fines by the management than Caucasian dancers and/or were forced to share a larger percentage of their earnings with managers and other employees for continued access rights to the premises.

50. Plaintiff Nicholson saw Reggie trash or destroy applications for employment from Black Dancers.

51. Starting in late September 2014, after she was barred by Centerfolds, Plaintiff Nicholson became a dancer at Splendor for the next two years or so. Plaintiff typically worked four (4) shifts per week at seven (7) hours per shift.

52. Plaintiff Nicholson does not recall signing the agreement and attachments (the "Splendor Agreement" **Exhibit A** hereto) which she signed with Splendor in late September, 2014. She does recall however that no one explained any part of the Splendor Agreement to her, she was not told she could have it reviewed by a lawyer before signing, and that she was not given a copy of the Splendor Agreement.

53. Though the Splendor Agreement, **Exhibit A**, ¶3, provided for Plaintiff Nicholson having unfettered access to the premises, Splendor would charge Plaintiff Nicholson scaled fees based on time of entry, with evening and late night costing more than earlier times.

54. The Splendor Agreement (**Exhibit A**, p. 12, top) identifies Bob Furey and Jere Gibbons as managers. They are also identified as managers at Treasures in Ms. Williams' agreement (**Exhibit B**, p. 12 ¶19).  On information and belief, they are still the managers at these and at all Defendant Clubs.

55. Plaintiff recalls two managers at Splendor. Reggie (same person as at Centerfolds) and "Joey" (unknown last name). Reggie would continue to destroy and/or trash Black Dancers' applications at Splendor regularly.

56. Again, during her time at Splendor, on a number of occasions, the hostess at the front or an acting manager would send her home after Plaintiff Nicholson arrived for her shift because there were already "too many black girls" working. On some occasions she would see Bob Furey (manager for Splendor and the other Defendant Clubs) on the premises, and she would be told she could not work because Bob Furey was already there.

57. At Splendor, Joey told Plaintiff Nicholson that both the Individual Defendants and upper management did not want too many Black Dancers on the premises. One time, Joey forcibly attempted to have intercourse with Plaintiff Nicholson in his office, but was forcefully rejected by her. He then told that Plaintiff Nicholson that the Individual Defendants wanted to limit the number of Black Dancers, and management wanted to keep the number of Black Dancers low, to not attract police attention to prostitution and drug trafficking taking place on the premises; which management profited from. Plaintiff Nicholson knew other Black Dancers who had sex with Joey.

58. At Splendor, managers would often suspend, bar, and fine Plaintiff Nicholson and other Black Dancers for non-compliance with unwritten rules regarding dress, performance, and especially for not paying sufficient "tips" to managers (and sometimes other employees). Plaintiff Nicholson was refused entry to work on multiple occasions unless she paid managers, or if she left a shift early. At one point she had to pay $1500 for access after being excluded. Thereafter, she was barred at Splendor because of refusal to pay such a fine.

59. At Splendor there was often illegal drugs being sold by employees, and pimps for some of the dancers were often on the premises. At one point at Splendor, Plaintiff Nicholson saw a pimp allowed to beat up a dancer, who she knew was working for him as a prostitute, in full view of the room.

60. After Splendor, in about November 2016, Plaintiff Nicholson was granted a position as a dancer at Defendant Cover Girls. She also worked in the 2017 period as a dancer at Solid Platinum Cabaret, in Houston. She continued to work at Solid Platinum Cabaret until pregnancy forced her to stop in 2018.

61. Plaintiff Nicholson sought to revive her career as a dancer and entered Centerfolds on June 24, 2021 during business hours and requested a position as a dancer, but was told they were not hiring. She was damaged because she could not earn as she had when she had worked at Centerfolds in 2013 and 2014. After being rejected, Plaintiff Nicholson stayed at Centerfolds and spoke briefly with a Black dancer, who told her they didn't hire many Black girls. She also saw several Caucasian dancers enter the Centerfolds premises in street clothes, then change and start their shift as dancers.

62. On August 11, 2021 at about 7 PM, Plaintiff Nicholson entered Splendor and requested a position as a dancer. She was told by the purported manager who was a relative of the Individual Defendants that they were not hiring, and that she would have a better chance of a dancer position at Centerfolds or elsewhere. She also saw Joey at Splendor that day. They spoke outside and he told her he would like to hire her but that they were not hiring Black Dancers at Splendor, and that she should try at Centerfolds or at Joy of Houston Men's Club.

63. While applying for the dancer position at Splendor on August 11, 2021, Plaintiff Nicholson saw Caucasian dancers enter the Splendor premises to start their shifts as dancers, and saw Caucasian dancers inside Splendor.

64. Plaintiff Nicholson was damaged by the rejection at Splendor because she could not earn as she had when she had worked there from 2014 to 2016.

65. Plaintiff Nicholson was also damaged by the hostile work environments she experienced at Splendor and Centerfolds, and suffered and continues to suffer severe emotional distress.

66. Plaintiff Nicholson mitigated damages inflicted on her by Splendor and Centerfolds barring her, and by their hostile work environments, by going to work at Cover Girls and Solid Platinum.

67. The relationship between all Plaintiff Nicholson's claims and Defendants' Racist Policy is supported by paragraphs 6, and 41-43 above, showing that all Defendant Clubs have the same owners, directors, officers and managers, and by paragraphs 72-77 below,

regarding certain managers' observed racist actions and the Defendant Clubs' racist reputation.

Plaintiff Williams

68. Plaintiff Liosha Williams' claims for creating and promoting a hostile work environment at Treasures while she worked there from 2018 to 2022, her claims for breach of contract due to forced tipping at Treasures, and her claims for denial of access by Centerfolds are described above in paragraphs 10 and 11. Ms. Williams does not recall the provisions in **Exhibit B** and it was not reviewed with her at the time it was signed, and she was not given a copy of it.

69. The relationship between all Plaintiff Williams' claims and Defendants' Racist Policy is supported by paragraphs 6 and 41-43 above, showing that all Defendant Clubs have the same directors, officers and managers, and by paragraphs 72-77 below, regarding certain managers' observed racist actions and the Defendant Clubs' racist reputation.

Plaintiff Ilori

70. Plaintiff Destiny Ilori's claims for denial of access are set forth in paragraph 13A-14 above. The relationship between her claims and Defendants' Racist Policy is supported by paragraphs 6 and 41-43 above, showing that all Defendant Clubs have the same directors, officers and managers, and by paragraphs 72-77 below, regarding certain managers' observed racist actions and the Defendant Clubs' racist reputation. Her claim for intentional infliction of emotional distress is set forth in paragraphs 3, 13 and 14 above, and is also related to Defendants' Racist Policy.

Other Plaintiffs

71. The Plaintiffs Jalacia Declouet, Lindsey Smith, Tabitha Vann, and Corina Castro ("Other Plaintiffs") claims for denial of access are set forth in paragraphs 4 and 15 to 23 above. The relationship between all Other Plaintiffs' claims and Defendants' Racist Policy is supported by paragraphs 6 and 41-43 above, showing that all Defendant Clubs have the same directors, officers and managers, and by paragraphs 72-77 below, regarding certain managers' observed racist actions and the Defendant Clubs' racist reputation.

72. At Cover Girls, the manager Bob Furey on one occasion, questioned why a Black Dancer on the premises had been given a position as a dancer, and then removed the responsible hiring manager's authority to fill dancer positions on the spot.

73. Bob Furey supervised a general manager at Cover Girls who generally did not give Black dancers positions, and this general manager was observed rejecting applicants for dancer positions because they were Black. These events were observed and testified to by a former manager (Andrew Skwera) at Cover Girls,

74. Andrew Skwera also had, before Cover Girls, managed at Splendor and Gold Cup (previously owned and operated by the Individual Defendants). He has testified that the same managers as at Cover Girls were at Gold Cup, and that they enforced the same racist policy of not giving Black Dancers positions.

75. Andrew Skwera also testified to the reputation of the Defendant Clubs in the industry for limiting the numbers of dancers, and generally not providing them with dancer positions.

76. A former manager of The Mile High Club in Humble, Texas who was laid off in 2020 due to the pandemic, has stated that all the clubs owned or operated by the Individual Defendants are well-known by those in the local adult entertainment industry for not hiring and/or severely limiting the total number of Black Dancers on their respective premises. This person had also worked at Defendant Clubs and observed Defendants' Racist Policy executed by the then management there.

77. The former manager of The Mile High Club estimates that at least about fifty (50) or more Black Dancers per month apply at each of the Defendant Clubs; based on her having received applications from ten to fifteen Black Dancers per week who had been recently rejected at one or more of the Defendant Clubs. During their interviews, those rejected Black Dancers often reported to this manager feeling that their rejection at the Defendant Club(s) was based on their race.

78. There is testimony and other evidence indicating that every dancer at each Defendant Club was under a License and Access agreement with the respective club she entered, with terms similar to those in Plaintiff Nicholson's Splendor Agreement (**Exhibit A**).

Plaintiff Williams entered a similar agreement with Treasures (**Exhibit B**). The Centerfolds Agreement (**Exhibit C**) is older and that form is apparently no longer in use. Accordingly, Plaintiffs Nicholson and Williams are adequate representatives of other Black Dancers who entered similar agreements at the Defendant Clubs that were similarly breached.

79. Plaintiff Williams and Plaintiff Nicholson also were not given dancer positions at Centerfolds based on their race, and Plaintiff Nicholson was not given a dancer position at Splendor based on her race. And the Other Plaintiffs herein were all not given dancer positions based on their race at Defendant Clubs, as evidenced by comments made at the time of their rejections, as described above.

80. Defendants' Racist Policy was in effect at all Defendant Clubs as evidenced by the fact that there were the same owners and managers at all the Defendant Clubs (paragraphs 6 and 41-43 above), who had implemented that policy in accordance with the owner's directives, and to benefit themselves (*see* paragraph 57 above). The discriminatory acts described above against all Plaintiffs arose directly from enforcement of Defendants' Racist Policy.

81. Defendants' Racist Policy and the agreements entered by Plaintiffs Nicholson and Williams, which include the extortion training for managers, are the common thread among Plaintiffs and all other class members' claims.

82. As such, Plaintiffs bring their claims as a class action on behalf of Black Class Members, because but for Defendants' execution of Defendants' Racist Policy in violation of 42 U.S.C. § 1981, Plaintiff and other Black Dancers would have been given dancer positions or allowed to retain access for dancer positions (as applicable), and Defendants would not have breached agreements and/or refused to enter access agreements with Plaintiff and other Black Dancers.

Unconscionability of Dancer Agreements

83. Plaintiff Nicholson further alleges that the following sections of her agreements with Defendants Centerfolds (**Exhibit C)** and Splendor (**Exhibit A)** are unconscionable and unenforceable. The same provisions as those in the Splendor Agreement (**Exhibit A)** are

also in Plaintiff Williams' agreement with Treasures (**Exhibit B)**, and Plaintiff Williams alleges that these same provisions in her agreement are this also unconscionable and unenforceable.

Nicholson's Splendor Agreement (**Exhibit A**) ¶12; Williams' Treasures Agreement (**Exhibit B**) ¶12: THE DANCER SHALL INDEMNIFY, HOLD HARMLESS AND PAY FOR SPLENDOR'S [TREASURE'S] DEFENSE FROM AND AGAINST ANY AND ALL CLAIMS, LOSSES OR LIABILITY, INCLUDING ATTORNEYS' FEES, ARISING FROM OR RELATING TO THIS AGREEMENT OR THE DANCER'S RELATIONSHIP WITH SPLENDOR, INCLUDING LIABILITY ARISING FROM SPLENDOR'S OWN NEGLIGENCE.

Centerfolds Agreement (**Exhibit C**) ¶8: THE DANCER SHALL INDEMNIFY, HOLD HARMLESS AND PAY FOR CENTERFOLDS'S DEFENSE FROM AND AGAINST ANY AND ALL CLAIMS, LOSSES OR LIABILITY, INCLUDING ATTORNEYS' FEES, ARISING FROM OR RELATING TO THE DANCER'S RELATIONSHIP WITH CENTERFOLDS, INCLUDING LIABILITY ARISING FROM CENTERFOLDS'S OWN NEGLIGENCE.

Nicholson's Splendor Agreement (**Exhibit A**) ¶13(C); Williams' Treasures Agreement (**Exhibit B**) ¶13(C): ANY AND ALL COVERED DISPUTES, CLAIMS AND CONTROVERSIES SHALL BE SUBMITTED TO THE AMERICAN ARBITRATION ASSOCIATION (THE "AAA") OR ITS SUCCESSOR, INITIALLY FOR MEDIATION.

Centerfolds Agreement (**Exhibit C)** ¶10 [A]ll disputes, claims or controversies arising out of or relating to this Agreement and any matter related to alleged employment independent contractor status, terms or conditions of service or employment, or compliance with the Fair Labor Standards Act (the "FLSA") shall be submitted to the American Arbitration Association (the "AAA"), or its successor, for mediation.

Nicholson's Splendor Agreement (**Exhibit A**) ¶13(H); Williams' Treasures Agreement (**Exhibit B**) ¶13(H): NEITHER SPLENDOR [TREASURES] NOR THE DANCER CAN FILE A CIVIL LAWSUIT IN COURT AGAINST THE OTHER PARTY RELATING TO ANY COVERED DISPUTES, CLAIMS AND CONTROVERSIES.

Centerfolds Agreement (**Exhibit C)** ¶11: THE DANCER WHOSE NAME APPEARS BELOW KNOWINGLY AND AFFIRMATIVELY WAIVES ANY RIGHT TO PARTICIPATE IN ANY COLLECTIVE ACTION OR CLASS ACTION COMMENCED OR TO BE COMMENCED IN ANY COURT OF LAW CONCERNING ANY CLAIMS RELATED TO THIS AGREEMENT, TO HER RELATIONSHIP TO CENTERFOLDS AS A LICENSEEE, OR OTHERWISE AS TO HER LEGAL RELATIONSHIP WITH CENTERFOLDS.

Nicholson's Splendor Agreement (**Exhibit A**) ¶11; Williams' Treasures Agreement (**Exhibit B**) ¶11: In the event any action is commenced to enforce or interpret the terms or conditions of this Agreement, Splendor [Treasures] shall, in addition to any costs or other relief, be entitled to recover its reasonable attorneys' fees.

Centerfolds Agreement (**Exhibit C)** ¶7: In the event any action is commenced to enforce or interpret the terms or conditions of this Agreement, Centerfolds shall, in addition to any costs or other relief, be entitled to recover its reasonable attorneys' fees.

Nicholson's Splendor Agreement (**Exhibit A**) ¶14: Williams' Treasures Agreement (**Exhibit B**) ¶14. WAIVER OF CLASS OR COLLECTIVE CLAIMS.

Centerfolds Agreement (**Exhibit C)** ¶11: Arbitration shall proceed solely on an individual basis without the right for any claims to be arbitrated on a collective or c1ass action basis or on bases involving claims brought in a purported representative capacity on behalf of others.

Nicholson's Splendor Agreement (**Exhibit A**) ¶15; Williams' Treasures Agreement (**Exhibit B**) ¶15: SPLENDOR [TREASURES] AND THE DANCER AGREE THAT IF, UPON ANY RULING OR DECISION OF AN ARBITRATOR, COURT OR OTHER TRIBUNAL WITH JURISDICTION OVER THE MATTER THAT THE RELATIONSHIP BETWEEN SPLENDOR AND THE DANCER IS ONE OF EMPLOYER AND EMPLOYEE, THE DANCER SHALL SURRENDER, REIMBURSE AND PAY TO SPLENDOR ALL MONEY RECEIVED BY THE DANCER AT ANY TIME SHE PERFORMED ON THE PREMISES OF SPLENDOR [TREASURES] - ALL OF WHICH WOULD OTHERWISE HAVE BEEN COLLECTED AND KEPT BY SPLENDOR [TREASURES] HAD THE PARTIES NOT ENTERED INTO THIS LICENSE AGREEMENT, AND THE DANCER

SHALL IMMEDIATELY PROVIDE A FULL ACCOUNTING TO SPLENDOR [TREASURES] OF ALL INCOME WHICH SHE RECEIVED DURING THE RELEVANT TIME PERIOD.

Nicholson's Splendor Agreement (**Exhibit A**) ¶16; Williams' Treasures Agreement (**Exhibit B**) ¶16. THE SUBMISSION OF AN APPLICATION, AUDITION AS A DANCER, ACCEPTANCE AS A DANCER OR THE CONTINUED PERFORMANCE AS A DANCER SHALL BE DEEMED TO BE ACCEPTANCE OF THIS ARBITRATION POLICY AND WAIVER OF CLASS OR COLLECTIVE ACTION CLAIMS. NO SIGNATURE SHALL BE REQUIRED FOR THE ARBITRATION POLICY TO BE APPLICABLE.

V. CAUSES OF ACTION

84. The effect of Defendants' Racist Policy has been to deprive Plaintiffs and other prospective, current and former Black Dancers, as a class, of the same right to make and enforce contracts as Caucasian female entertainers: who were not subject to any numerical limitation at any Defendant Club based on their race. As such, Defendants' execution of Defendants' Racist Policy is in violation of 42 U.S.C. § 1981 and but for it, Plaintiffs and other Black Dancers would have been given dancer positions or allowed to retain access for dancer positions (as applicable). Defendants' execution of Defendants' Racist Policy and denial of access to Black Dancers is also a material breach of the License and Access agreement which all dancers are required to enter.

85. In violation of 42 U.S.C. § 1981, Defendants' Racist Policy, the extortion training for managers and forced tipping, and the tolerance for sex trafficking, caused a hostile work environment and subjected Plaintiffs Nicholson and Williams to severe emotional distress, causing psychological injuries, such that Ms. Nicholson was and is under treatment for numerous conditions and for the exacerbation of pre-existing conditions by such emotional distress.

86. Defendants' Racist Policy and the extortion training for managers also led to tolerance of and management participating in illegal activities on the premises at Splendor and Centerfolds, adding to the hostile work environment for Plaintiff Nicholson. *See* paragraph 57 above.

87. The Individual Defendants are jointly and severally liable with the corporate defendants for all damages cause by Defendants Racist Policy as explained above in paragraphs 6 and 41-43 above.

88. Defendant D WG FM, INC. d/b/a SPLENDOR, is liable for numerous material breaches of its existing, unterminated License and Access Agreement with Plaintiff Nicholson (which damaged Plaintiff Nicholson) including the following breaches:

(i) Splendor Agreement (**Exhibit A**): Plaintiff Nicholson was denied the access right granted in paragraph 1 "to perform entertainment services at Splendor." (*see* paragraphs 56 and 62 above).

(ii) Plaintiff Nicholson was denied the rights granted in the Splendor Agreement (**Exhibit A**) paragraph 3 to: (i) "determine her schedule in performing the services," (ii) "to arrive and leave the premises at any time without penalty"; and (iii) to set her "own schedule of when and what hours she works."  (*see* paragraphs 56 and 62 above); and

(iii) Defendant Splendor also breached its express representation No. 19 in the "Policies Regarding Dancer Conduct" attached to the Splendor Agreement (**Exhibit A**): "There is no mandatory tip sharing arrangement among management, dancers, and employees. If you choose to voluntarily tip any manager, dancer, waitress, bus boy, DJ, valet, or any other individual affiliated with Splendor, you do so at your sole discretion." (*see* paragraphs 56 to 59 above).

89. A.H.D. HOUSTON, INC. d/b/a CENTERFOLDS materially breached its existing, unterminated Centerfolds Agreement (**Exhibit C**) which damaged Plaintiff Nicholson, by denying Plaintiff Nicholson the access right granted in paragraph 1: "to perform entertainment services at Centerfolds"; and paragraph 2: "The Dancer shall also determine her schedule in performing the services..."

90. Plaintiff Williams' agreement with Defendant D TEXAS INVESTMENTS INC. / AHD HOUSTON d/b/a TREASURES GENTLEMENS CLUB (**Exhibit B**), has the same provisions as in Ms. Nicholson's Splendor Agreement (**Exhibit A**), and it was breached by forcing her to "tip" managers, as in paragraphs 2, 10 and 11 above.

91. Plaintiffs seek a declaratory judgment that agreements with provisions the same or similar to the Splendor Agreement (**Exhibit A**) and/or the Centerfolds Agreement (**Exhibit C**), or the provisions in Plaintiff Williams' agreement with Treasures (**Exhibit B**), are unconscionable and unenforceable because they include unconscionable provisions (see paragraph 85) and are required to be executed by dancers under circumstances where the unconscionable provisions are not explained, or reviewed, and where later review is impossible as no copy of the agreement is provided to the dancer (*see* paragraphs 43, 52, 68 & 83).

92. Plaintiff Nicholson seeks a declaratory judgment that all the provisions listed in paragraph 83 from the Splendor Agreement (**Exhibit A**) and the Centerfolds Agreement (**Exhibit C**) are unconscionable and unenforceable against Plaintiffs Nicholson; and further that all of paragraph 13 to 16 of the Splendor Agreement (**Exhibit A**) and all of paragraphs 8 to 11 of the Centerfolds Agreement (**Exhibit C**) are unconscionable and unenforceable  against Plaintiff Nicholson.

93. Plaintiff Williams seeks a declaratory judgment that all the provisions in her agreement with Treasures (**Exhibit B**) which are the same as those listed in paragraph 83 are unconscionable and unenforceable against Plaintiff Williams; and, that paragraphs 13 to 16 of her agreement (**Exhibit B**) is also unconscionable and unenforceable against Plaintiff Williams.

94. The unlawful practices enacted under Defendants' Racist Policy and the hostile environment created were intentional and when they are established at trial, make punitive damages appropriate as they can provide an exemplary penalty for Defendants' intentional and outrageous conduct.

VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

95. Grant a Declaratory Judgment that the Splendor Agreement (**Exhibit A**) and the Centerfolds Agreement (**Exhibit C**) are unconscionable and unenforceable against Plaintiff Nicholson;

96. Grant a Declaratory Judgment that the agreement between Plaintiff Williams and Treasures (**Exhibit B**) is unconscionable and unenforceable against Plaintiff Williams;

97. Grant both a preliminary and a permanent injunction enjoining the Defendants, their officers, successors, assigns, and all persons in active concert or participation with them, from continuing Defendants' Racist Policy or otherwise denying access or executing policies and practices which discriminate against Black Dancers on the basis of race, and remedying the effects of past discrimination by requiring additional proactive hiring of Black Dancers at Defendant Clubs (*i.e.*, entering License and Access Agreements with additional Black Dancers);

98. Order Defendants to make whole Plaintiffs Nicholson, Williams and Ilori, by awarding them compensation for severe emotional distress, pain and suffering, and otherwise including compensation for disability and loss of income resulting directly therefrom;

99. Order Defendants to make whole all Plaintiffs and the Black Class Members by awarding them appropriate back pay, with prejudgment interest in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful practices;

100. Order the reinstatement of all Plaintiffs and the Black Class Members as entertainers/dancers with access, or award them front pay in the amounts to be determined at trial if reinstatement is impractical;

101. Order Defendants to make all Plaintiffs and the Black Class Members whole by providing compensation for past and future pecuniary losses resulting from the unlawful practices described above;

102. Award punitive damages to all Plaintiffs and the Black Class Members for Defendants' intentional, outrageous and malicious conduct described above, in amounts to be determined at trial;

103. Award all Plaintiffs' Attorneys' fees and costs associated with this action, as provided in TEXAS CIVIL PRACTICE AND REMEDIES CODE, Section 38.001 and 42 U.S.C. § 1981;

104. Award pre-judgment and post-judgment interest on all amounts recovered as permitted by law; and

105. Grant such further relief as the Court deems necessary and proper in the public interest.

VII. JURY TRIAL DEMAND

Plaintiffs request a jury trial.

Respectfully Submitted,

By: __/s/*Eric P. Mirabel*_____
    Eric P. Mirabel
    Texas State Bar No. 14199560
      Southern District ID No. 9708
    eric@emirabel.com
    3783 Darcus St.
    Houston, Texas 77005
    Tel:  281 772-3794
    Fax: 713 667 4234
    **ATTORNEY FOR PLAINTIFFS**

CERTIFICATE OF SERVICE

On this first day of August, 2023, I hereby certify that a true and correct copy of the foregoing document was served by email on counsel for Defendants.