United States District Court
Southern District of Texas
**ENTERED**
March 18, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHANEL E. M. NICHOLSON, *et al.,* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-01025 |
| | § | |
| AHD HOUSTON INC, *et al.,* | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Plaintiffs' First Amended Complaint (Doc. #23) and Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #25). Plaintiffs did not file a response and the deadline to do so has passed. Having considered Defendants' arguments and the applicable legal authorities, the Court grants Defendants' Motion to Dismiss in part.

### I.  Background

#### a.  Factual Background

Plaintiffs Chanel Nicholson, Liosha Williams, Destiny Ilori, Jalaycia Declouet, Lindsey Smith, Tabitha Vann, and Corina Castro (collectively, "Plaintiffs") are African American women who currently or previously danced at adult entertainment clubs in Houston, Texas. Doc. #23. Most of the Defendants in this matter are some of the adult entertainment clubs where Plaintiffs worked or applied to work: A.H.D. Houston, Inc., d/b/a Centerfolds ("Centerfolds"), W.L. York, Inc., d/b/a Cover Girls ("Cover Girls"), D WG FM, Inc., d/b/a Splendor ("Splendor"), D Texas Investments, Inc., d/b/a Treasures Gentlemen's Club ("Treasures") (collectively, the "Club Defendants"). Ali Davari, the president and director of the Club Defendants, and Hassan Davari,

vice president and director of the Club Defendants, are also Defendants in this matter (together, the "Individual Defendants," and collectively with the Club Defendants, "Defendants"). Plaintiffs generally allege that they were racially discriminated against in some capacity by Defendants, but the factual bases for their respective allegations slightly differ. As such, the Court will briefly summarize each Plaintiffs' allegations in turn.

Plaintiff Chanel Nicholson ("Nicholson") worked at Centerfolds from 2013 to 2014, and she signed a "Dancer License and Access Agreement" ("DLAA") upon starting. Doc. #23, Ex. 3. The DLAA states, in part, that there is no mandatory tip sharing arrangement among dancers, management, or other employees. *Id.* at 7. Nicholson alleges that while employed with Centerfolds, there were some evenings when she was told that she could not work because "there were too many Black [d]ancers already working." Doc. #23 at 11. Further, she alleges that she was charged entrance fees to enter Centerfolds and charged fines for violating rules that she knew nothing about. *Id.* Moreover, she asserts that she had to tip and share her income with other employees and managers. *Id.* at 12. She was allegedly "barred" by Centerfolds "for not sharing enough of her income with particular managers and employees" and refusing to pay the fines associated therewith. *Id.* In 2014, Nicholson began working at Splendor, where she signed a similar DLAA that states that mandatory tip sharing is not required. She alleges that, like at Centerfolds, she was told on some evenings that too many Black dancers were already working and was charged fines for violating rules. *Id.* at 13. Nicholson alleges that she was "barred" from Splendor for refusing to pay a fine. *Id.* In 2021, Nicholson sought reemployment at Centerfolds and Splendor but was told that the establishments were not hiring. Nicholson specifically alleges that a manager at Splendor told her that he was not hiring Black dancers. *Id.* at 14. As such, Nicholson asserts violations of 42 U.S.C. § 1981 ("Section 1981") and breach of contract claims

2

against Centerfolds, Splendor, and the Individual Defendants. *See id.*

Plaintiff Liosha Williams ("Williams") began working at Treasures in 2018 and signed a DLAA that states that tip sharing amongst dancers, management, and other employees is not mandatory. Doc. #23, Ex. 2. Williams alleges that during her time at Treasures, managers required her to pay them tips otherwise she would be denied access to the establishment. Doc. #23 at 4. Williams also asserts that managers told her that she was "too dark-skinned" and that they do not hire "too many Black girls." *Id.* Williams claims that Treasures breached the DLAA by requiring her to share tips with managers. In February and April of 2022, Williams sought employment at Centerfolds. When she applied in April, she was allegedly told by a manager that "she would have to pay to get hired" and that she was "too dark" to work there. *Id.* at 4–5. As such, Williams brings breach of contract, and Section 1981 hostile work environment claims against Treasures and the Individual Defendants, and Section 1981 failure-to-hire claims[1] against Centerfolds and the Individual Defendants.

Plaintiff Destiny Ilori ("Ilori") allegedly applied to work at Splendor and Centerfolds on multiple occasions in 2021 and 2022. *Id.* at 5. During one of her attempts to apply at Splendor, she was allegedly told by a hostess that "they had enough ebony dancers." *Id.* Similarly, at Centerfolds, she alleges that when she asked for an application, a hostess refused to give her one, stating that Centerfolds would not be hiring for "a while." But Ilori claims that the same hostess

---

[1] Other than the hostile work environment assertions, Plaintiffs' First Amended Complaint fails to explicitly assert the grounds under which Plaintiffs' Section 1981 claims are proceeding. Instead, Plaintiffs' allegations are ambiguous and generally assert Section 1981. It does not help that Plaintiffs did not file a response that might have clarified the specific Section 1981 claim being asserted. As such, reading the First Amended Complaint in the light most favorable to Plaintiffs and for the sake of clarity, the Court will name and address the specific Section 1981 claims that are suggested by the facts. *See Nicholson v. A.H.D. Hous., Inc.*, No. 4:21-cv-2624, 2022 WL 4543201, at *2 n.3 (S.D. Tex. Sept. 28, 2022).

"immediately granted a female Caucasian applicant for a dancer position an application form and let this person meet and speak directly with the hiring manager." *Id.* She asserts failure-to-hire under Section 1981 claims against Splendor, Centerfolds, and the Individual Defendants.

Plaintiff Jalaycia Declouet ("Declouet") sought to apply for a dancer position at Centerfolds in 2022, but she alleges that she was told by a hostess, who spoke with a manager, that "the club had a limit on how many [B]lack women they could hire, and they were 'all full.'" *Id.* at 6. Plaintiff Lindsey Smith ("Smith") allegedly attempted to apply to dance at Treasures, but she was told by a manager that there were "'too many Black girls' on the day shift and to come for night shift" if she wanted to dance there. *Id.* Plaintiff Tabitha Vann ("Vann") claims that when she applied to dance at Splendor, she "was rejected by the male Caucasian manager who insulted her." *Id.* Finally, Plaintiff Corina Castro ("Castro") claims that when she applied to dance at both Splendor and Cover Girls, she was told at both locations that she would not be hired because she is not white. *Id.* Declouet, Smith, Vann, and Castro each bring Section 1981 failure-to-hire claims against Defendants.

### b.    Procedural History

This lawsuit commenced on March 21, 2023, when Plaintiffs filed their Complaint against Defendants. Doc. #1. On August 1, 2023, Plaintiffs filed their First Amended Complaint (Doc. #23), which Defendants moved to dismiss on August 15 (Doc. #25). As to Nicholson, Defendants contend that her claims are barred by *res judicata*. In August 2021, Nicholson sued Defendants for breach of contract and violating Section 1981 based on the same facts asserted here. *Nicholson v. W.L. York, Inc.* (*Nicholson I*), No. 4:21-cv-2624, 2023 WL 3632760, at *1 (S.D. Tex. May 24, 2023). The Honorable Andrew S. Hanen presided over *Nicholson I* and determined that Nicholson's claims were either barred by the applicable statute of limitations or failed as a matter

4

of law. *See generally id.* As to the other Plaintiffs, Defendants aver that they have failed to plead sufficient facts to support their claims. Doc. #25.

## II.      Legal Standard: Federal Rule of Civil Procedure 12

A complaint may be dismissed for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The pleading standard is set forth in Federal Rule of Civil Procedure 8(a)(2), requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (1955). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plausibility exists when the complaint includes factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must show more than a "sheer possibility that the defendant has acted unlawfully," and pleading facts that are "'merely consistent with' a defendant's liability" will not suffice. *Id.*; *see Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). Courts accept "the well-pleaded factual allegations in the complaint as true" but do "not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

## III.     Analysis

Due to the number of Plaintiffs and their various allegations, the Court will consider the sufficiency of each Plaintiff's allegations against the Club Defendants in turn. However, because

Plaintiffs collectively put forth general assertions against the Individual Defendants, the Court will separately address those claims.

### a.   Nicholson's Claims

Defendants aver that Nicholson's claims are precluded by Judge Hanen's ruling in *Nicholson I.* Doc. #25 at 3–8. "Claim preclusion, or *res judicata*, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999). "The test for *res judicata* has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004). To determine if the same claim or cause of action was involved in both actions, courts consider whether the two actions are based on "the same nucleus of operative facts." *Southmark*, 163 F.3d at 934 (emphasis removed).

Here, it is evident that Nicholson's claims are barred by Judge Hanen's ruling in *Nicholson I*. Nicholson sued the same Defendants in both cases so the parties are identical, the *Nicholson I* ruling was rendered by a court of competent jurisdiction, *Nicholson I* was concluded by Judge Hanen granting Defendants' motion for summary judgment and then denying Nicholson's motion for reconsideration. Finally, this case is based on exact same facts raised in *Nicholson I*, so it is apparent that the same claim was involved in both actions. As such, Defendants' Motion to Dismiss is granted as to Nicholson's claims.

### b.   Williams' Claims

Defendants move to dismiss Williams' breach of contract and Section 1981 hostile work environment claims against Treasures and her Section 1981 failure-to-hire claims against

6

Centerfolds. Doc. #25.

### 1.    Treasures

Defendants contend that Williams failed to plead sufficient facts for her breach of contract claim because she did not identify any provisions in the DLAA that prohibited the alleged "forced tipping." *Id.* at 8.  However, Williams notes that the provision in the DLAA that she signed with Treasures regarding tipping is the same as a tipping provision in Nicholson's DLAAs, which is quoted in the First Amended Complaint.  Doc. #23 at 21.  Throughout the First Amended Complaint, Williams asserts that she was forced to tip managers at Treasures.  Further, the DLAA Williams signed is attached to the First Amended Complaint as an exhibit.  Doc. #23, Ex. 2. Taking her well-pleaded factual allegations as true, the Court finds that Williams properly identified the provision of the DLAA that is at issue.  As such, Defendants' Motion to Dismiss is denied as to this claim.

Next, Defendants assert that Williams' Section 1981 hostile work environment claim against Treasures fails.  Defendants contend that Williams did not allege that she was harassed or insulted on the basis of her race to adequately plead a hostile work environment claim.  Doc. #25 at 9–10.  "A hostile work environment exists when the 'workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.'"  *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  To support her claim, Williams must prove that she "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [her] membership in the protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the

harassment in question and failed to take prompt remedial action." *Id.* at 399–400.

Williams alleges that Treasures' managers required tips from her "under threat of denial of access if not paid, wherein they would also target Ms. Williams and other Black [d]ancers for more money more often than other races of dancers." Doc. #23 at 4. Based on these allegations, Williams easily satisfies the elements of her claim: (1) she is a member of a protected group as an African American woman; (2) she was subject to unwelcome harassment when managers required her to tip them to gain access to Treasures; (3) she clearly states that the alleged harassment was based on her race; (4) the alleged harassment regarding paying managers her tips impacted her privilege of employment because if not paid, she was denied access to Treasures; and (5) she alleges that managers did the harassing, so the employer knew about the alleged harassment in question and did not remediate it. Accordingly, Defendants' Motion to Dismiss is denied as to Williams' Section 1981 hostile work environment claim against Treasures.

### 2. Centerfolds

Defendants contend that Williams' Section 1981 failure-to-hire claim against Centerfolds fails because she does not plausibly plead that her race was a but-for cause of her injuries. Doc. #25 at 10. "To adequately assert a violation of Section 1981, a plaintiff must first show that: (1) she is a member of a racial minority; (2) there was an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Nicholson*, 2022 WL 4543201, at *5. Additionally, "the plaintiff must plead and prove that race was the but-for cause of the discrimination and loss of plaintiff's legally protected right." *Id.* In the First Amended Complaint, Williams asserts that when she attempted to apply at Centerfolds, she was told that she was "too dark" to work there and that she would have to pay to get hired. Doc. #23 at 4–5. Accepting these allegations as true, the Court finds that Williams has

8

plausibly pled that her race was a but-for reason that she was not hired at Centerfolds. Accordingly, Defendants' Motion to Dismiss is denied as to this claim.

### c.    Ilori's Claims

Defendants contend that Ilori's Section 1981 failure-to-hire claims against Splendor and Centerfolds fail because she does not plausibly plead that her race was a but-for cause of her injuries. Doc. #25 at 10. Ilori asserts that when she attempted to apply at Splendor, she was told by one of the hostesses that they already have "enough ebony dancers." Doc. #23 at 5. This allegation is sufficient to suggest that Ilori's race was a but-for cause of her rejection at Splendor. As to Centerfolds, Ilori claims that when she attempted to apply for a position, the hostess "refused to give her an application" and then told her that they "were not going to be hiring for a while," but then immediately gave a Caucasian applicant a dancer application form and "let this person meet and speak directly with the hiring manager." *Id.* Ilori further claims that an employee at Centerfolds told her that "they only grant dancer positions to a limited number of Black dancers." *Id.* Accordingly, these factual allegations plausibly suggest that Ilori's race was a but-for cause of her rejection at Centerfolds. Therefore, Defendants' Motion to Dismiss is denied as to Ilori's Section 1981 claims against Splendor and Centerfolds.

### d.    Declouet's Claim

Defendants assert that Declouet's Section 1981 failure-to-hire claim against Centerfolds fails because she does not allege that her race was a but-for cause of her injuries. Doc. #25 at 10. Declouet alleges that during one of her attempts to apply at Centerfolds, a hostess, who had just spoken privately with a manager, told her that "the club had a limit on how many black women they could hire, and they were 'all full.'" Doc. #23 at 6. Thus, Declouet plausibly alleges that her race was a but-for cause of her injuries. As such, Defendants' Motion to Dismiss is denied as to

9

Declouet's claim.

e.    **Smith's Claim**

Defendants claim that Smith's Section 1981 failure-to-hire claim against Treasures fails because she does not plausibly plead that her race was a but-for cause of her injuries. Doc. #25 at 10. Smith asserts that when she attempted to apply for at Treasures, she was told by a manager that there were "'too many Black girls' on the day shift and to come for night shift if she wanted to be given a dancer position." Doc. #23 at 6. This allegation suggests that Smith's race was a but-for cause of her rejection at Treasures. Accordingly, Defendants' Motion to Dismiss is denied as to Smith's claim.

f.    **Vann's Claim**

Next, Defendants aver that Vann's failure-to-hire claim under Section 1981 against Splendor fails because she does not plausibly plead that her race was a but-for cause of her injuries. Doc. #25 at 10. Vann claims that when she applied at Splendor, she was "rejected by the male Caucasian manager who insulted her." Doc. #23 at 6. This allegation falls woefully short of alleging or even suggesting that Vann's race was a but-for reason that she was not hired. Accordingly, Defendants' Motion to Dismiss is granted as to Vann's claim.

g.    **Castro's Claim**

Similar to the other Plaintiffs' claims, Defendants contend that Castro's Section 1981 failure-to-hire claims against Splendor and Cover Girls fail because she does not plausibly plead that race is a but-for cause of her injuries. Doc. #25 at 10. Castro alleges that when she attempted to apply at both clubs, she "was told by both the manager and/or the hostess near the front that because she was not white, they wouldn't hire her." Doc. #23 at 6. Accepting this allegation as true, the Court concludes that Castro has plausibly alleged that her race was a but-for cause of her

rejection from Splendor and Cover Girls.  Accordingly, Defendants' Motion to Dismiss is denied as to these claims.

### h.     Plaintiffs' Section 1981 Claim Against the Individual Defendants

Finally, Defendants argue that Plaintiffs' allegations fall short of establishing that the Individual Defendants were liable under Section 1981.  Doc. #25 at 14.  To assert a Section 1981 claim against the Individual Defendants, Plaintiffs must plead that the Individual Defendants exercised supervisory or managerial authority over them.  *Nicholson*, 2022 WL 4543201, at *8.  Plaintiffs simply allege that the Individual Defendants "are charged with exerting operational and management control over [the Club Defendants] and managing operations and day-to-day affairs at [the Club Defendants]."  Doc. #23 at 9.  But Plaintiffs fail to attribute any of the alleged harassment or discriminatory conduct they experienced to the Individual Defendants.  In fact, Plaintiffs specifically allege that managers and/or hostesses were responsible for the discrimination they faced.  As such, without additional, specific allegations against the Individual Defendants, Plaintiffs' Section 1981 claims against the Individual Defendants are not sufficiently pled.  *See* Nicholson, 2022 WL 4543201, at *8.  Accordingly, Defendants' Motion to Dismiss is granted as to Plaintiffs' claims against the Individual Defendants.

### IV.    Conclusion

In conclusion, the Court finds that Nicholson's claims are precluded by Judge Hanen's ruling in *Nicholson I*, Vann's Section 1981 failure-to-hire claim against Splendor is insufficiently pled, and Plaintiffs' Section 1981 claims against the Individual Defendants are also insufficiently pled.  Accordingly, Defendants' Motion to Dismiss (Doc. #25) is GRANTED as to those claims, which are hereby DISMISSED WITH PREJUDICE.  However, for the foregoing reasons, Defendants' Motion to Dismiss is DENIED as to Williams' breach of contract and Section 1981

11

failure-to-hire and hostile work environment claims, and Ilori, Declouet, Smith, and Castro's Section 1981 failure-to-hire claims against the respective Club Defendants.

It is so ORDERED.

MAR 1 5 2024
_____
Date

_____
The Honorable Alfred H. Bennett
United States District Judge

12