IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHANEL E.M. NICHOLSON, on behalf of herself and other similarly situated Plaintiffs,<br><br>*Plaintiff,*<br><br>v.<br><br>A.H.D. HOUSTON, INC. d/b/a CENTERFOLDS; W.L. YORK, INC. d/b/a THE COVER GIRLS; D WG FM, INC d/b/a SPLENDOR, D. TEXAS INVESTMENTS INC / AHD HOUSTON d/b/a TREASURES GENTLEMENS CLUB; ALI DAVARI and HASSAN DAVARI,<br><br>*Defendants.* | § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:23-cv-01025<br><br>JURY TRIAL DEMANDED |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants A.H.D. Houston, Inc., W.L. York, Inc., D WG FM, Inc., and D. Texas Investments, Inc., (collectively "Defendants") file this motion for summary judgment against Plaintiffs Liosha Williams ("Williams"), Destiny Ilori ("Ilori"), Jalaycia Declouet ("Declouet"), Lindsey Smith ("Smith"), and Corina Castro ("Castro") (collectively "Plaintiffs").

## INTRODUCTION & SUMMARY OF THE ARGUMENT

This is an action for violation of 42 U.S.C. § 1981 and breach of contract. Plaintiffs filed their Original Complaint on March 21, 2023, which alleged various claims for unlawful discrimination under 42 U.S.C. § 1981 and breach of contract. Eventually, Plaintiffs filed their First Amended Complaint ("FAC") on August 1, 2023. (Dkt No. 23).

On March 15, 2024, this Court entered its order granting in part and denying in part Defendants' Rule 12(b)(6) motion to dismiss the FAC. (Dkt. No. 31). The Court dismissed all of Chanel Nicholson's and Tabitha Vann's claims, along with all the claims against the Individual

Defendants, Ali Davari and Hassan Davari. (*Id.*). As a result, the only live claims in this case are as follows: "(1) Williams' § 1981 hostile work environment claim against Treasures Gentlemen's Club ("Treasures"), (2) Williams' breach of contract claim against Treasures, (3) Williams' § 1981 failure-to-hire claim against Centerfolds, (4) Ilori's § 1981 failure-to-hire claims against Splendor and Centerfolds, (5) Declouet's § 1981 failure-to hire claims against Centerfolds, (6) Smith's § 1981 failure-to-hire claims against Treasures, and (7) Castro's § 1981 failure-to-hire claims against Splendor and The Cover Girls ("Cover Girls"). (*Id.*).

Defendants now move for summary judgment on the grounds that Plaintiffs' remaining § 1981 hostile work environment, breach of contract, and § 1981 failure-to-hire claims fail as a matter of law and because Plaintiffs' allegations have never developed into claims supported by evidence. Based on the record at hand, there is a complete absence of evidence to support the essential elements of Plaintiffs' claims. Defendants seek summary judgment on the claims asserted against them by Plaintiffs in Plaintiffs' FAC. Defendants are entitled to the relief sought by this motion because no evidence exists to support the necessary elements required for Plaintiffs to succeed on their claims.

## **STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case for which that party will bear the burden at trial. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is proper if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248

(1986). A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Rule 56 allows a movant to "merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 301-02 (5th Cir. 2020) (citation and quotation marks omitted); *see also Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (per curiam). Revealing a lack of evidence may be accomplished by deposing the nonmovant, or "establishing the inadequacy of documentary evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986). But "[i]f there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record." *Id*.

Once the burden has shifted, a non-movant "cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Plaintiffs must identify *specific* evidence in the record and articulate how that evidence supports their claims. FED. R. CIV. P. 56(c); *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). A fact issue does not exist simply because a non-movant points to "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation and quotation marks omitted).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case (or establishes an affirmative defense), the party opposing the motion must come forward with competent summary judgment evidence demonstrating the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). "The court views facts and inferences in the light most favorable to the non-moving party,

-3-

but ignores '[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation.'" *Odubela v. Exxon Mobil Corp.,* 736 Fed. Appx. 437, 441 (5th Cir. 2018) (citation omitted). "If the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case. If the non-movant does not show a genuine issue of material fact on an element essential to his case, summary judgment is appropriate." *Id.* (internal citations omitted).

## ARGUMENT

This case asserts 42 U.S.C. § 1981 claims on behalf of Plaintiffs Williams, Ilori, Declouet, Smith, and Castro and breach of contract claims on behalf of Williams. Notably, other than Williams hostile work environment allegations, Plaintiffs' other § 1981 claims are ambiguous and generally asserted. However, according to this Court's Order on Defendants' Motion to Dismiss, when looking at the suggested facts, the other § 1981 claims by Plaintiffs are claims for failure to hire. (Dkt. No. 31). Plaintiffs have failed to establish at least one element of each of their claims as a matter of law and there is no evidence to support their claims.

I. **William's § 1981 claims and breach of contract claim fails as a matter of law.**

Williams brings § 1981 hostile work environment and breach of contract claims against Treasures and § 1981 failure-to-hire claims against Centerfolds. Williams' claims fail as a matter of law because she has failed to establish key elements of each claim. Further, there is zero evidence to support each claim.

a. **Williams' § 1981 hostile work environment claim against Treasures fails as a matter of law because there is no evidentiary support to establish the required elements of her claim.**

Williams alleges that during the four years she performed at Treasures, from 2018 to 2022, that Treasures subjected her to a hostile work environment by (1) requiring her to pay the managers tips under the threat of denial of access, and targeting her and other Black dancers for more money

more often than other races of dancers, (2) by the training in extortion of Black dancers provided in materials from management which are incorporated in her agreement with Treasures, and (3) comments from managers like "she is too dark-skinned" and "they don't hire Black girls" or they don't "hire too many Black girls." (Dkt. No. 23 at ¶ 10).

To establish a prima facie case of a hostile work environment a plaintiff must show: "(1) [she] belongs to a protected group; (2) [she] was subjected to unwelcomed harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Mendoza v. Helicopter,* 548 F. App'x 127, 128–29 (5th Cir. 2013). In determining whether a workplace constitutes a hostile work environment, courts must consider the "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance*." Lyles v. Texas Alcohol Beverage Comm'n*, 379 F. App'x 380, 384 (5th Cir. 2010) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir.2002). (internal quotations omitted).

Here, Williams' allegations that she was required to tip managers and that managers made racial comments like she was "too dark-skinned" are conclusory allegations and unsubstantiated assertions which are insufficient to survive a motion for summary judgment. Further, Williams has provided no evidence in support of these allegations. Defendants have attached evidence hereto proving a hostile work environment does not exist. (*See* Exhibit A, Declaration of Crystal Cowart).

Treasures' policies regarding dancer conduct incorporated in the Dancer License and Access Agreement ("DLAA") attached to Plaintiffs' FAC as Exhibit B, prohibits harassment of any type, including, but not limited to, harassment or discrimination based on race. (*Id*. at ¶ 5). Further, at no point in time has Treasures ever adopted, condoned, or permitted any sort of racially

discriminatory policy or practice, let alone any sort of quota system that limits the number of Black dancers who are allowed to perform at Treasures during any given year, month, week, or day. (*Id.* at ¶ 6). Treasures does not deny dancers an application based on their race, nor require a Black dancer to pay in order to receive access to the Club other than the standard fees that are applicable to all dancers. (*Id.* at ¶ 7). If any employee, agent, or personnel affiliated with Treasures is found to have engaged in any racially discriminatory or criminal conduct at all, he or she would be subject to disciplinary measures, including immediate termination. (*Id.* at ¶ 8). Also pursuant to Treasures' policies regarding dancer conduct, dancers are not required or forced to tip managers, waitresses, bus boys, DJs, valets, or any other individual affiliated with Treasures. (*Id.* at ¶ 9).

Williams has failed as a matter of law to establish that she was subjected to unwelcomed harassment, that the harassment complained of was based on race, that the harassment complained of affected a term, condition, or privilege of employment, and that Treasures knew or should have known of the harassment in question and failed to take prompt remedial action. Moreover, Williams has failed to proffer any evidence that she was required to tip managers, or that any managers made racial comments like she was "too dark-skinned" and "they don't hire Black girls" or they don't "hire too many Black girls." As such, Williams' § 1981 hostile work environment claim fails.

> b. **Williams' breach of contract claim against Treasures fails as a matter of law because there is no evidentiary support to establish the required elements of her claim.**

Williams alleges Treasures breached their DLAA by forcing her to tip the managers. To prevail on a breach of contract claims, Plaintiffs must prove: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

Here, it is undisputed that a contract exists between Willaims and Treasures, and that Williams performed under the contract. However, Willaims has failed to prove elements three and four of a breach of contract claim.

Williams alleges Treasures breached representation No. 19 in the "Policies Regarding Dancer Conduct" attached to the DLAA between Treasures and Williams. Representation No. 19 states "[t]here is no mandatory tip sharing arrangement among management, dancers, and employees. If you choose to voluntarily tip any manager, dancer, waitress, bus boy, DJ, valet, or any other individual affiliated with Treasures, you do so at your sole discretion." Dkt. No. 23 at ¶ 25). Williams further asserts Treasures forced her to tip managers otherwise she would be denied access to the establishment in breach of paragraph three of her DLAA. Paragraph three concerns a dancer's ability to determine her schedule and the ability to arrive and leave the premises at any time without penalty and a dancer's agreement to supply her own costumes and other necessary apparel. (*Id.*).

Williams has provided no evidence that she was ever required to tip a manager. Instead, Williams only makes conclusory statements regarding her DLAA being breached for being forced to tip. Courts have "cautioned that conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." *Lyles v. Texas Alcohol Beverage Comm'n,* 379 F. App'x 380, 384 (5th Cir. 2010).

Defendants have attached evidence that Williams was never required to tip and managers, DJs, waitresses, or any employees. (Exhibit A at ¶ 9).  Because Williams has failed as a matter of law to establish the existence of a breach of the contract between Plaintiff and Treasures, Williams' breach of contract claim fails.

### c. Williams has no standing to seek declaratory relief setting aside the terms of her DLAA with Treasures.

Williams seeks a declaratory judgment that certain provisions of the "Treasures

Agreement" are unconscionable and unenforceable. (Dkt. No. 23 at ¶ 83). A Court's decision to issue a declaratory judgment is a three-step inquiry:

> "(1) whether an 'actual controversy' exists between the parties in the case; (2) whether it has authority to grant declaratory relief; and (3) whether "to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Orix Credit All., Inc. v. Wolfe,* 212 F.3d 891, 895 (5th Cir. 2000). The "actual case or controversy" requirement refers to an Article III case or controversy. *MedImmune, Inc.*, 549 U.S. 118, 127 (2007). Therefore, if there is no actual case or controversy, the Court lacks subject matter jurisdiction. The Court has broad discretion as to whether an exercise of its power to grant declaratory relief is necessary and appropriate.

*In re Sanchez Energy Corp.*, 648 B.R. 592, 616-17 (Bankr. S.D. Tex. 2023) (full citation added and parallel citation omitted). This Court need not move past the first inquiry, however, because Williams simply challenges the enforceability of contractual provisions not at issue or relevant to her § 1981 or breach of contract claims. Williams' request for declaratory relief therefore "presents no ripe case or controversy." *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 311 (5th Cir. 2021). Like her more traditional requests for relief, this Court should deny Williams' request for declaratory relief.

### d. Williams' claims against Treasures are time-barred.

Alternatively, Williams' claims are likely barred by the statute of limitations. Section 1981 provides that all persons "shall have the same right … to make and enforce contracts…." 42 U.S.C. § 1981(a). As originally enacted, § 1981 claims were limited to 'pre-formation' discriminatory conduct such that the statute did not extend to "conduct by the employer *after* the contract relation has been established." *Patterson v McLean Credit Union*, 491 US 164, 177 (1989) (emphasis added). In the early 1990s, Congress amended § 1981 to include 'post-formation' claims within the statute's ambit by adding a definition of "make and enforce contracts," *i.e.*, "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.*, § 1981(b).

A 'pre-formation' § 1981 claim is subject to the two-year statute of limitations supplied by state law. *See Johnson v Crown Enterprises Inc.*, 398 F3d 339, 341-42 (5th Cir 2005); *Fonteneaux v. Shell Oil Co.*, 289 Fed. Appx. 695, 699 (5th Cir. 2008). A 'post-formation' § 1981 claim is subject to a four-year limitations period supplied by federal law. 28 U.S.C. § 1658; *see Jones v R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). These "limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State Coll. v. Ricks*, 449 U.S. 250, 256-57 (1980).

As this Court wrote, in the context of a § 1981 claim, "accrual of the applicable limitations period requires a court to take two steps: (1) identify the specific unlawful employment practice alleged, and (2) determine the moment when a plaintiff can be charged with knowledge of the act." *Nicholson v. A.H.D. Houston, Inc.*, No. 4:21-CV-02624, 2022 WL 4543201, at *7 (S.D. Tex. Sept. 28, 2022) (citing *Ricks*, 449 U.S. at 257).

Under state law, breach of contract claims are subject to a four year limitations period. Tex. Civ. Prac. & Rem. Code § 16.051. "A breach of contract occurs when a party fails or refuses to do something he has promised to do." *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). "If the parties' agreement contemplates a continuing contract for performance, the limitations period does not usually commence until the contract is fully performed, unless one party refuses to fulfill the contract or prevents the other party from performing." *Id*.

Williams began working for Treasures on May 16, 2018 and claims Treasures had a practice of requiring Black dancers to tip managers and pay for access in breach of the contract. (*See* Exhibit B, Williams DLAA) (*See also* Dkt. No. 23 at ¶ 10). However, this lawsuit was not filed until March 21, 2023 – four years and 10 months after she began working and the alleged

breaches would have begun occurring. As such, Williams claims against Treasures are time-barred and should be dismissed.

**e. Williams' § 1981 failure-to-hire claim against Centerfolds fails as a matter of law because there is no evidentiary support to establish the required elements of her claim.**

Williams also asserts a § 1981 failure-to-hire claim against Centerfolds. To survive summary judgment, Plaintiffs bear the burden of proving that "(1) [she] is a member of a racial minority; (2) Defendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017). A § 1981 claim also requires proof that "but for race" the plaintiff "would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

Defendants now move for summary judgment on Williams' failure to hire claim against Centerfold because the record shows that there is zero evidence that Centerfolds intended to discriminate on the basis of race. Further, the record has zero evidence that but for race Williams would not have been refused access to Centerfolds.

Williams alleges she went to Centerfolds in February 2022 and in April 2022 to apply for a dancer position but was denied due to her race. Specifically, William alleges a manager at Centerfolds told her that she would have had to pay to get hired, and that she was "too dark" to work there. (Dkt. No. 23 at ¶ 10). She further alleges that the same manager accepted an application from a Caucasian dancer. (*Id.*). Short of her conclusory allegations and unsubstantiated assertions, there is no evidence on the record that Williams visited Centerfolds to apply for a dancer position, much less evidence that a manager told her she would have to pay, told her that her skin was too dark, or deny her application. Without such evidence, the Court must grant summary judgment. Defendants have attached evidence hereto proving that Defendants never intended and never have

discriminated against someone on the basis of race. (*See* Exhibit A, Declaration of Crystal Cowart). Centerfolds does not deny dancers an application based on their race, nor require a Black dancer to pay in order to receive access to the Club other than the standard fees that are applicable to all dancers. (*Id.* at ¶ 7).

Williams has failed as a matter of law to establish Centerfolds intentionally did not contract her to perform on the basis of her race. As such, Williams' § 1981 failure-to-hire claim fails.

**II.      Plaintiffs Ilori, Declouet, Smith, and Castros' § 1981 Claim Against Defendants Fails on the Merits.**

Similarly, Plaintiffs Ilori, Declouet, Smith, and Castro assert § 1981 failure-to-hire claims against Defendants. Again, to survive summary judgment, Plaintiffs bear the burden of proving that "(1) [they are] a member of a racial minority; (2) Defendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins*., 869 F.3d 381, 386 (5th Cir. 2017). A § 1981 claim also requires proof that "but for race" the plaintiff "would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

Plaintiffs Ilori, Declouet, Smith, and Castro have failed as a matter of law to establish the second element required to sustain a § 1981 claim for failure to hire against Defendants. Plaintiffs have not and cannot establish that Defendants intended to discriminate against Plaintiffs on the basis of race. Specifically, Plaintiffs have failed to establish that but for their race, they would not have been contracted by Defendants.

**a.    Ilori's § 1981 failure-to-hire claims against Centerfolds and Splendor fail as a matter of law because there is no evidentiary support to establish the required elements for her claims.**

Defendants now move for summary judgment on Ilori's failure to hire claim against Centerfolds and Splendor because the record shows that she lacks either direct evidence that race

-11-

was the "but for" reason for the denial, or sufficient circumstantial evidence to support a *prima facie* case of discrimination. *See Odubela*, 736 Fed. Appx. at 443 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Ilori alleges she went to Splendor three times to apply for a dancer position and that when she visited Splendor for the third time, the "hostess at the front of the premises told her that they had enough ebony dancers." (Dkt No. 23 at ¶ 13A). She further alleges she saw Caucasian dancers entering Splendor "in street clothes, apparently to start their shifts." (*Id.*). Ilori has provided zero evidence to support these conclusory statements and assumptions.

Ilori further alleges that between late 2021 and May 20, 2022, she applied for a dancer position at Centerfolds approximately eight times. (Dkt No. 23 at ¶ 13B). Ilori fails to give detail as to why she was not contracted at Centerfolds for the first seven times she applied. Instead, Ilori merely alleges that the last time she attempted to apply for a dancer position, on May 20, 2022, the hostess informed her "that they were not going to be hiring for a while." (*Id.*). Then, allegedly, the hostess immediately after gave a female Caucasian applicant for a dancer position an application form and allowed her to speak with the hiring manager. (*Id.*). Apparently, an unnamed employee, at some unknown time and unknown place, told Ilori that they only offer dancer positions to a limited number of Black dancers. (*Id.*). Again, Ilori has provided zero evidence to support these conclusory statements and assumptions.

These alleged encounters do not create a fact issue. That is because, hostesses do not have hiring privileges. (*See* Exhibit A at ¶ 3). As a result, "the record does not contain evidence that would permit a reasonable fact finder to conclude that [hostess] had management and final decision making authority with [Splendor and Centerfolds] at a level that would permit [hostess's] alleged statements to be attributed to [Splendor and Centerfolds] for the purpose of a § 1981 claim." *Duhall v. Lennar Family of Builders*, 645 F. Supp. 2d 965, 968 (D. Colo. 2009); *DuHall v. Lennar Family*

*of Builders*, 382 Fed. Appx. 751, 755 (10th Cir. 2010) (affirming lower court's finding). Without more, Ilori's § 1981 claim against Splendor and Centerfold fails as a matter of law because there is no evidence that Splendor or Centerfolds did not contract her as a dancer due to her race.

Furthermore, Splendor and Centerfolds' policies regarding dancer conduct prohibits harassment of any type, including, but not limited to, harassment or discrimination based on race. (*See* Exhibit A at ¶ 5). Further, at no point in time has Splendor and Centerfolds ever adopted, condoned, or permitted any sort of racially discriminatory policy or practice, let alone any sort of quota system that limits the number of Black dancers who are allowed to perform at the clubs during any given year, month, week, or day. (*Id.* at ¶ 6). Splendor and Centerfolds do not deny a dancer an application based on her race, nor require a Black dancer to pay in order to receive access to the Club other than the standard fees that are applicable to all dancers. (*Id.* at ¶ 7).

As Ilori has failed as a matter of law to establish Splendor or Centerfolds intentionally did not contract her to perform on the basis of her race, her § 1981 failure-to-hire claims fail.

b. **Declouet's § 1981 failure-to-hire claim against Centerfold fails as a matter of law because there is no evidentiary support to establish the required elements of her claim.**

Defendants now move for summary judgment on Declouet's failure to hire claim against Centerfold because the record shows that she lacks either direct evidence that race was the "but for" reason for the denial, or sufficient circumstantial evidence to support a *prima facie* case of discrimination. *See Odubela*, 736 Fed. Appx. at 443 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Declouet alleges she went to Centerfolds to apply for a dancer position with a Caucasian acquaintance and that the acquaintance was given an audition and a dancer position, while Declouet was not, even though allegedly Declouet had been told on the phone earlier that day by someone at Centerfolds that they were hiring. (Dkt No. 23 at ¶ 15). Declouet claims she returned

-13-

to Centerfolds the next day and spoke with the front desk hostess who said they were not auditioning that day. (*Id.* at ¶ 16). Declouet then claims she returned the day after that, spoke with the hostess and a manager, and was given an application. (*Id.*). However, she alleged that after the manager and the hostess spoke privately, the hostess informed Declouet that the club had a limit on how many Black women they could hire, and they were all full. (*Id.*).

Here, Declouet's allegations that she was denied from Centerfolds multiple times and that she was told by a manager that the club had a limit on how many Black women they could hire, and they were all full are conclusory allegations and unsubstantiated assertions which are insufficient to survive a motion for summary judgment. Further, Declouet has provided no evidence in support of these allegations.

Centerfolds does not deny a dancer an application based on her race. (*See* Exhibit A, Declaration of Crystal Cowart). At no point in time has Centerfolds ever adopted, condoned, or permitted any sort of racially discriminatory policy or practice, let alone any sort of quota system that limits the number of Black dancers who are allowed to perform at the Centerfolds. (*Id.* at ¶ 6).

Declouet has failed as a matter of law to establish Centerfolds intentionally did not contract her to perform on the basis of her race. As such, her § 1981 failure-to-hire claims fail.

      **c. Smith's § 1981 failure-to-hire claim against Treasures fails as a matter of law because there is no evidentiary support to establish the required elements of her claim.**

Smith merely alleges she applied for a dancer position at Treasures one afternoon in July 2022, but the manager said there were "too many Black girls" on day shift and to come for night shift if she wanted to be given a dancer position. (Dkt. No. 23 at ¶ 18). She also alleged she saw Caucasian dancers inside Treasures at the time. (*Id.*).

Once again, these allegations are conclusory allegations and unsubstantiated assertions which are insufficient to survive a motion for summary judgment. Further, Smith has provided no

evidence in support of these allegations.

As explained above, Treasures does not deny a dancer an application based on her race (*See* Exhibit A, Declaration of Crystal Cowart). Further, at no point in time has Treasures ever adopted, condoned, or permitted any sort of racially discriminatory policy or practice, let alone any sort of quota system that limits the number of Black dancers who are allowed to perform at Treasures. (*Id.* at ¶ 6).

As Smith has failed as a matter of law to establish Treasures intentionally did not contract her to perform on the basis of her race, her § 1981 failure-to-hire claim fails.

### d. Castro's § 1981 failure-to-hire claims against Splendor and Cover Girls fail as a matter of law because there is no evidentiary support to establish the required elements of her claims.

Lastly, Castro alleges she applied at both Splendor and Cover Girls in April 2021 for a dancer position but was told by both the manager and/or the hostess near the front that because she was not white, they wouldn't hire her. (Dkt. No. 23 at ¶ 22). She also alleges she saw Caucasian dancers inside the premises on both occasions. (*Id.*).

Castro's allegations are conclusory allegations and unsubstantiated assertions which are insufficient to survive a motion for summary judgment. Castro has also provided no evidence in support of these allegations.

Splendor and Cover Girls' policies regarding dancer conduct prohibit harassment of any type, including, but not limited to, harassment or discrimination based on race. (*Id.* at ¶ 5). Further, at no point in time has Splendor and Cover Girls ever adopted, condoned, or permitted any sort of racially discriminatory policy or practice, let alone any sort of quota system that limits the number of Black dancers who are allowed to perform at the clubs during any given year, month, week, or day. (*Id.* at ¶ 6). Splendor and Cover Girls do not deny a dancer an application based on her race, nor require a Black dancer to pay in order to receive access to the Club other than the standard fees

that are applicable to all dancers. (*Id.* at ¶ 7). If any employee, agent, or personnel affiliated with the clubs is found to have engaged in any racially discriminatory or criminal conduct at all, he or she would be subject to disciplinary measures, including immediate termination. (*Id.* at ¶ 8).

As Castro has failed as a matter of law to establish either Splendor or Cover Girls intentionally did not contract her to perform on the basis of her race, her § 1981 failure-to-hire claims fail.

### CONCLUSION

Defendants A.H.D. Houston, Inc., W.L. York, Inc., D WG FM, Inc., and D. Texas Investments, Inc., pray that the Court grant summary judgment against Plaintiffs Liosha Williams, Destiny Ilori, Jalaycia Declouet, Lindsey Smith, and Corina Castros' claims and be granted all relief, at law and in equity, to which they are entitled.

Respectfully submitted,

**WALLACE & ALLEN, LLP**

*/s/ Casey T. Wallace*
Casey T. Wallace
State Bar No. 00795827
SDTX Bar. No. 20117
440 Louisiana, Ste. 590
Houston, Texas 77002
Telephone: (713) 227-1744
Facsimile: (713) 600-0034
cwallace@wallaceallen.com
**ATTORNEY IN CHARGE FOR
DEFENDANTS**

**OF COUNSEL FOR DEFENDANTS:**
Benjamin W. Allen
State Bar No. 24069288
SDTX Bar No. 1058996
440 Louisiana, Ste. 590
Houston, Texas 77002
Telephone: (713) 227-1744
Facsimile: (713) 600-0034
ballen@wallaceallen.com

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of this pleading has been served on the following attorneys of record in accordance with the Federal Rules of Civil Procedure on May 16, 2024.

Eric P. Mirabel
3783 Darcus St.
Houston, Texas 77005
Tel: 281-772-3794
Fax: 713-667 4234
eric@emirabel.com

**ATTORNEY FOR PLAINTIFFS**

 */s/ Casey T. Wallace*
Casey T. Wallace