UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHANEL E.M. NICHOLSON, et al.,<br>Plaintiffs | §<br>§<br>§ | Civil Action 4:23–cv– 01025 |
| | § | JURY TRIAL DEMAND |
| v. | §<br>§ | |
| A.H.D. HOUSTON, INC. d/b/a CENTERFOLDS; W.L. YORK, INC. d/b/a COVER GIRLS; D WG FM, INC. d/b/a SPLENDOR; D HOUSTON, INC. d/b/a TREASURES; D. TEXAS INVESTMENTS, INC.,<br>Defendants | §<br>§<br>§<br>§<br>§ | |

**PLAINTIFFS' SECOND AMENDED COMPLAINT FOR HOSTILE WORK ENVIRONMENT, BREACH OF CONTRACT, AND "FAILURE TO HIRE"**

Plaintiffs LIOSHA WILLIAMS, DESTINY ILORI, JALAYCIA DECLOUET, LINDSEY SMITH, and CORINA CASTRO allege the following based upon personal knowledge, information and belief, deposition testimony by a long term manager at Defendants' establishments, interviews with current and former dancers at the Defendants' places of business; and, published documents.

I. NATURE OF THE ACTION

1. Plaintiff Liosha Williams alleges causes of action through violations of 42 U.S.C. § 1981 against D Texas Investments, Inc. and D. Houston, Inc. d/b/a Treasures ("Treasures"): (i) creating, promoting and subjecting her to a hostile work environment at Defendants' place of business, through racial harassment including race-related comments on the rarity of management allowing Black dancers at Treasures, causing severe emotional distress; and (ii) relegating her to less lucrative shifts or forcing her to come early and essentially work "double-shift" in order to stay on premises (while avoiding detection by managers) until the more lucrative night shift; and (iii) breach of contract and racial harassment from:

relegation to undesirable shifts, forced stage performances, and forced tipping of DJs and management at Treasures.

2. Plaintiff Liosha Williams also alleges causes of action through violations of 42 U.S.C. § 1981 against A.H.D. Houston, Inc. dba Centerfolds ("Centerfolds"), for refusal to enter an agreement to provide her access (like a "failure to hire" claim, had she been employed), notwithstanding proposed payment by her for access, and thereby preventing her from earning the same income she would have earned there.

3. Plaintiff Destiny Ilori alleges "failure to hire" causes of action through violations of 42 U.S.C. § 1981 against Centerfolds and D WG FM, Inc. d/b/a Splendor for refusal to enter an agreement to provide her access, notwithstanding proposed payment by her for access, and thereby preventing her from earning the same income she would have earned there; and for severe emotional distress and pain and suffering and resulting injury from the racist rejection at Centerfolds and Splendor (described below).

4. Plaintiffs Jalaycia Declouet, Lindsey Smith and Corina Castro allege "failure to hire" causes of action through violations of 42 U.S.C. § 1981 for refusal to enter an agreement to provide them access, notwithstanding payment as an access condition, to one or more of Defendants' premises; which prevented all these Plaintiffs from earning the higher income at Defendants' they would have earned there. These causes of action are each against one or more of: W.L. YORK, INC. d/b/a The Cover Girls ("Cover Girls"), Centerfolds, Splendor and Treasures (collectively referred to as "Defendants") as described below.

5. Defendants all had the same named officers and directors, and the same district manager, Bob Furey, at all relevant times. The same two named officers and directors operate Defendants collectively as adult entertainment establishments featuring female entertainers (also referred to as "dancers" herein). Treasures has the same two persons (Bob Furey and Jere Gibbons) designated as managers in an agreement with Plaintiff Williams, and it is known that these same two people are named as managers in agreements between other dancers and the other Defendants.

6. Bob Furey was the district manager responsible for all Defendants until about one year ago. Currently, the district manager is Hal Naumann, who was formerly the general manager at Defendant Cover Girls.

7. Refusing Plaintiffs' access or a dancer position resulted directly from Defendants' policy of limiting the total number of Black Dancers working the same shift at the same venue; and enforcing such limit by denying Black Dancers dancer positions or access rights, is referred to hereinafter referred to as "Defendants' Racist Policy."

8. Plaintiff Willliams was further subject (*see* para. 1 above) to a hostile work environment at Treasures from May, 2018 to 2022, by comments from managers that they limit the number of Black dancers, and by breach of her agreement with Treasures through: (i) relegating her to day shifts, and (ii) if she wanted to work nights, requiring her to start in the day and stay all day and into the night shift, without ever leaving the premises (and avoiding detection by managers); and (iii) extortion through forced "tips" for management and the DJ. She was forced to work at other adult entertainment establishments from May, 2018 to 2022 as she desired to work night shift; (and not have to stay from day shift to night shift, as required at Treasures). Nevertheless, she also worked at Treasures during this period, when she could tolerate the long hours required.

9. The causes of action herein also arise from Defendants' willful and intentional actions, by denying Plaintiff Williams access when she applied at Centerfolds on February 12, 2022, and again in April 2022 when she returned to Centerfolds to apply. At the April 2022 encounter, she was told by the manager that she would have had to pay to get hired, and that she was "too dark" to work there; while a Caucasian was accepted for a dancer position at the same time.

10. Defendants' Racist Policy was overseen by the same district managers common to all Defendants, and as explained further below, all Plaintiffs have causes of action arising from its enforcement against them.

11. In late 2021 and 2022, Plaintiff Destiny Ilori, who is Black, went to Splendor three times to apply for a dancer position, and the last time, on May 20, 2022, the hostess at the front of the premises told her, relaying a message from management, that they had

enough ebony dancers. She saw Caucasian dancers entering the premises in street clothes, apparently to start their shifts.

12. Between late 2021 and May 20, 2022, Plaintiff Destiny Ilori applied at Centerfolds about eight times. The last time, on May 20, 2022, the hostess refused to give her an application. She was told by the hostess that they were not going to be hiring for a while. But then, the hostess immediately granted a female Caucasian applicant for a dancer position an application form and let this person meet and speak directly with the hiring manager. Another employee told Ms. Ilori that they only grant dancer positions to a limited number of Black dancers.

13. Ms. Ilori frequently worked as a dancer/entertainer at Bucks Wild South following her rejection at Centerfolds. Prior to working there, she had experience as an entertainer at other adult-entertainment establishments, including Queen of Hearts, Chics, Crazy Bull, and Gold Diggers,..

14. Plaintiff Jalaycia Declouet, who is Black, went to Centerfolds to apply for a dancer position several times in 2022, but was always refused access. In July 2022, Ms. Declouet returned again and spoke with the front desk hostess, and was given an application. After a manager and the hostess spoke privately, however, the hostess told Ms. Declouet that she was sorry but the club had a limit on how many black dancers they could hire.

15. Ms. Declouet was an entertainer at Michaels Men's Club in Broussard, Louisiana in 2021. In 2022, before she auditioned at Centerfolds, she had moved to Houston.

16. Plaintiff Lindsey Smith, who is Black, applied for a dancer position at Treasures one afternoon in July 2022, but the manager said there were "too many Black girls" on day shift and to come for night shift if she wanted to be given a dancer position. She saw Caucasian dancers inside the premises.

17. Plaintiff Lindsey Smith had previously been an entertainer at Divas Bikini Bar, Crazy Horse and Houston Dolls. She has also worked at Heartbreakers.

18. Plaintiff Corina Castro, who is Black, applied at both Splendor and Cover Girls in April 2021 for a dancer position, but was told by both the manager and/or the hostess near the

front that because she was not white, they wouldn't hire her. She saw Caucasian dancers inside the premises on both occasions.

19. Plaintiff Corina Castro had previously been an entertainer at a number of other Houston adult entertainment establishments.

20. Defendants' Racist Policy is the root of all causes of action and all adverse "employment" actions complained of, including by Defendants creating and promoting a hostile work environment, excluding Plaintiff Williams at Treasures and Centerfolds in connection with it, and excluding all Plaintiffs from access to one or more of Defendants' premises. Defendants have violated 42 U.S.C. § 1981 because they violated Plaintiffs' rights as African-Americans to make and enforce contracts to the same extent "as is enjoyed by white citizens."

21. Denying access is a breach of the access rights in the agreement Plaintiff Williams (**Dkt. 13-3**, ¶3) entered with Treasures. Forcing Plaintiff Williams to dance on stage semi-naked is also a violation of the agreement Plaintiff Williams entered (**Dkt. 13-3**, ¶3). Forcing her to tip the DJ to avoid being called to the stage to perform semi-naked, and management extorting money as "tips" when she went to VIP with a customer, is also a violation of Plaintiff Williams' agreement (**Dkt. 13-3**, p. 10 ¶19). All violations of Plaintiff Williams' agreement are related to violations of Section 1981, which provides for equal enforcement of contracts for all citizens.

22. The various violations of Section 1981 caused Plaintiffs damages from: (i) the income they would have received (back pay) but instead who, under Defendants' Racist Policy, were excluded or denied access to Defendants' premises; (ii) front pay, as reinstatement of Plaintiffs is now impractical; (iii) compensation for the severe emotional distress, loss of income and related damages caused to Plaintiffs Williams by Defendants' hostile work environment; (iv) compensation for the severe emotional distress, caused to Plaintiff Ilori by Centerfolds' and Splendor's racist rejections of her, and similar compensation for such injuries to all other Plaintiffs for their respective racist rejections by Defendants; (v) pre- and post-judgment interest on such monies; (vi) punitive damages, (vii) attorneys' fees and (vi) other related relief including: declaring Plaintiff Williams' agreement unconscionable if Defendants seek to enforce any of it against her.

## II. PARTIES

23. Plaintiff Liosha Williams is African-American and is a resident of Harris County, Texas.

24. Plaintiff Destiny Ilori is African-American and was at all relevant times and is a resident of Harris County, Texas.

25. Plaintiff Jalaycia Declouet is African-American and was a resident of Harris County, Texas at the relevant time, and currently resides in Louisiana.

25. Plaintiff Lindsey Smith is African-American and was at all relevant times and is a resident of Harris County, Texas.

26. Corina Castro is African-American and was at all relevant times and is a resident of Harris County, Texas.

27. Defendant A.H.D. HOUSTON, INC. is a Texas for-profit corporation doing business as Centerfolds, at 6166 Richmond Avenue, Houston, Texas 77057, and has accepted service.

28. Defendant W.L. YORK, INC. is a Texas for-profit corporation doing business as Cover Girls at 10310 W. Little York, P.O. Box 570413, Houston, Texas 77257, and has accepted service.

29. Defendant D WG FM, Inc. is a Texas for-profit corporation doing business as Splendor and at 7440 W Greens Rd, Houston, Texas 77064, and has accepted service.

30. Defendant D HOUSTON, INC. is a Texas for-profit corporation doing business as Treasures at 5647 Westheimer Rd, Houston, TX 77056, and will be served once this Second Amended Complaint is entered by the Court.

31. Defendant D TEXAS INVESTMENTS INC. is a Texas for-profit corporation associated with the entity doing business as Treasures at 5647 Westheimer Rd, Houston, TX 77056, and has accepted service. The registered agent for D TEXAS INVESTMENTS INC. is opposing counsel Casey T. Wallace.

III. VENUE AND JURSIDICTION

32. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under 42 U.S.C. § 1981. The Court has pendent jurisdiction over Plaintiff Williams' breach of contract claims and claims of unconscionability of her agreement with Treasures.

33. Venue is proper in this District because all Defendants are located in Harris County, and all Plaintiffs' causes of action arose in Harris County.

IV. FACTS

Plaintiff Williams

34. Plaintiff Liosha Williams' claims for creating and promoting a hostile work environment at Treasures while she worked there from 2018 to 2022, by racial comments, breach of contract, racial harassment through denial of access, and by forced tipping at Treasures, and her claims for denial of access by Centerfolds, are all described above in paragraphs 1, 2, 8, 9 and 21.

35. In the event Treasures seeks to selectively enforce any part of their agreement with Ms. Williams (**Dkt. 13-3)**, Ms. Williams defends on the grounds of unconscionability and notes further, that her agreement was not reviewed with her at the time it was signed, and she was not given a copy of it.

36. The relationship between all Plaintiff Williams' claims and Defendants' Racist Policy is supported by paragraphs 5, 6, and 10, showing that all Defendants have the same directors, officers and managers, and by paragraphs 39-42 below, regarding certain managers' observed racist actions and the Defendants' racist reputation.

Plaintiff Ilori

37. Plaintiff Destiny Ilori's claims for denial of access are set forth in paragraph 11-13 above. The relationship between her claims and Defendants' Racist Policy is supported by paragraphs 5, 6, and 10, showing that all Defendants have the same directors, officers and managers, and by paragraphs 39-42 below, regarding certain managers' observed racist actions and the Defendants' racist reputation. Her claim for intentional infliction of

emotional distress is set forth in paragraphs 5, 6, 10 and 11-13 above, and is also related to Defendants' Racist Policy.

<u>Other Plaintiffs</u>

38. The Plaintiffs Jalacia Declouet, Lindsey Smith and Corina Castro ("Other Plaintiffs") claims for denial of access are set forth in paragraphs 14 to 19 above. The relationship between all Other Plaintiffs' claims and Defendants' Racist Policy is supported by paragraphs 5, 6, and 10, showing that all Defendants have the same directors, officers and managers, and by paragraphs 39-42 below, regarding certain managers' observed racist actions and the Defendants' racist reputation.

39. At Cover Girls, the manager Bob Furey on one occasion, questioned why a Black Dancer on the premises had been given a position as a dancer, and then removed the responsible manager's (Andrew Skwera) authority to fill dancer positions, on the spot, once he was identified.

40. Bob Furey supervised a general manager (Hal Naumann) at Cover Girls who generally did not give Black dancers positions, While he was general manager, Hal Naumann was observed rejecting applicants for dancer positions unseen, once he learned they were Black. These events were observed and testified to by a former manager (Andrew Skwera) at Cover Girls,

41. Andrew Skwera also had, before managing at Cover Girls, managed at Splendor and Gold Cup. Gold Cup was closed in 2015 but had been owned and operated by the same brothers who are directors and officers of all Defendants.

42. Andrew Skwera also testified to the reputation of the Defendants in the industry for limiting the numbers of dancers, and generally not providing them with dancer positions.

<u>Unconscionability of Plaintiff Williams' Agreement</u>

43. Plaintiff William further alleges that the following sections of her agreements with Defendant Treasures (**Dkt. 13-3)** are unconscionable, and that the agreement is unenforceable.

Williams' Treasures Agreement (**Dkt. 13-3**) ¶12: THE DANCER SHALL INDEMNIFY, HOLD HARMLESS AND PAY FOR TREASURES' DEFENSE FROM AND AGAINST ANY AND ALL CLAIMS, LOSSES OR LIABILITY, INCLUDING ATTORNEYS' FEES, ARISING FROM OR RELATING TO THIS AGREEMENT OR THE DANCER'S RELATIONSHIP WITH TREASURES, INCLUDING LIABILITY ARISING FROM TREASURES' OWN NEGLIGENCE.

Williams' Treasures Agreement (**Dkt. 13-3**) ¶8: THE DANCER SHALL INDEMNIFY, HOLD HARMLESS AND PAY FOR CENTERFOLDS'S DEFENSE FROM AND AGAINST ANY AND ALL CLAIMS, LOSSES OR LIABILITY, INCLUDING ATTORNEYS' FEES, ARISING FROM OR RELATING TO THE DANCER'S RELATIONSHIP WITH TREASURES, INCLUDING LIABILITY ARISING FROM TREASURES' OWN NEGLIGENCE.

Williams' Treasures Agreement (**Dkt. 13-3**) ¶13(C): ANY AND ALL COVERED DISPUTES, CLAIMS AND CONTROVERSIES SHALL BE SUBMITTED TO THE AMERICAN ARBITRATION ASSOCIATION (THE "AAA") OR ITS SUCCESSOR, INITIALLY FOR MEDIATION.

Williams' Treasures Agreement (**Dkt. 13-3**) ¶13(H): NEITHER TREASURES NOR THE DANCER CAN FILE A CIVIL LAWSUIT IN COURT AGAINST THE OTHER PARTY RELATING TO ANY COVERED DISPUTES, CLAIMS AND CONTROVERSIES.

Williams' Treasures Agreement (**Dkt. 13-3**) ¶11: In the event any action is commenced to enforce or interpret the terms or conditions of this Agreement, Treasures shall, in addition to any costs or other relief, be entitled to recover its reasonable attorneys' fees.

Williams' Treasures Agreement (**Dkt. 13-3**) ¶14. WAIVER OF CLASS OR COLLECTIVE CLAIMS.

Williams' Treasures Agreement (**Dkt. 13-3**) ¶15: TREASURES AND THE DANCER AGREE THAT IF, UPON ANY RULING OR DECISION OF AN ARBITRATOR, COURT OR OTHER TRIBUNAL WITH JURISDICTION OVER THE MATTER THAT THE RELATIONSHIP BETWEEN SPLENDOR AND THE DANCER IS ONE OF EMPLOYER AND EMPLOYEE, THE DANCER SHALL SURRENDER, REIMBURSE AND PAY TO

SPLENDOR ALL MONEY RECEIVED BY THE DANCER AT ANY TIME SHE PERFORMED ON THE PREMISES OF TREASURES- ALL OF WHICH WOULD OTHERWISE HAVE BEEN COLLECTED AND KEPT BY TREASURES HAD THE PARTIES NOT ENTERED INTO THIS LICENSE AGREEMENT, AND THE DANCER SHALL IMMEDIATELY PROVIDE A FULL ACCOUNTING TO TREASURES OF ALL INCOME WHICH SHE RECEIVED DURING THE RELEVANT TIME PERIOD.

Williams' Treasures Agreement (**Dkt. 13-3**) ¶16. THE SUBMISSION OF AN APPLICATION, AUDITION AS A DANCER, ACCEPTANCE AS A DANCER OR THE CONTINUED PERFORMANCE AS A DANCER SHALL BE DEEMED TO BE ACCEPTANCE OF THIS ARBITRATION POLICY AND WAIVER OF CLASS OR COLLECTIVE ACTION CLAIMS. NO SIGNATURE SHALL BE REQUIRED FOR THE ARBITRATION POLICY TO BE APPLICABLE.

V. CAUSES OF ACTION

44. The effect of Defendants' Racist Policy has been to deprive Plaintiffs of the same right to make and enforce contracts as Caucasian female entertainers: who were not subject to any numerical limitation at any Defendant based on their race. As such, Defendants' Racist Policy and its application against Plaintiffs which led to not entering agreements with Plaintiffs, and denying them access to Defendants' premises, is in violation of 42 U.S.C. § 1981. Defendants' enforcement of Defendants' Racist Policy and exclusion and denial of access to Plaintiff Williams at Treasures at times of her choosing, is also a material breach of the License and Access agreement (**Dkt. 13-3**) which Plaintiff Williams entered.

45. In violation of 42 U.S.C. § 1981, Defendants' Racist Policy, the harassment, exclusion and forced tipping, created a hostile work environment at Treasures and subjected Plaintiff Williams to severe emotional distress.

46. Plaintiff Williams' agreement with Defendant Treasures (**Dkt. 13-3**), was breached by excluding her from night shift, forcing her to "tip" management and the DJ, and causing her periodic constructive discharge because the hostile environment was so manifestly unreasonable, as described in paragraphs 1, 8 and 21 above.

47. Plaintiffs seek a declaratory judgment that the provisions in Plaintiff Williams' agreement with Treasures (**Dkt. 13-3**), are unconscionable and unenforceable because they include unconscionable provisions (see paragraph 43) and are required to be executed by dancers under circumstances where the unconscionable provisions were not explained, or reviewed, and where later review was impossible as no copy of the agreement is provided to the dancer (*see* paragraph 35).

48. The unlawful practices enacted under Defendants' Racist Policy and the hostile environment created were intentional and when they are established at trial, make punitive damages appropriate as they can provide an exemplary penalty for Defendants' intentional and outrageous conduct.

VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

49. Grant a Declaratory Judgment that the agreement between Plaintiff Williams and Treasures (**Dkt. 13-3**) is unconscionable and unenforceable against Plaintiff Williams;

50. Order Defendants to make whole Plaintiffs Williams and Ilori, by awarding them compensation for severe emotional distress, pain and suffering, and otherwise including compensation for loss of income resulting therefrom;

51. Order Defendants to make whole all Plaintiffs by awarding them appropriate back pay, with prejudgment interest in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful practices;

52. Award Plaintiff Williams damages under 42 U.S.C. § 1981 for lost income resulting from her exclusion from Treasures, except during designated hours, and for breach of her agreement with Defendant Treasures;

53. Order the reinstatement of all Plaintiffs as entertainers/dancers with access, or award them front pay in the amounts to be determined at trial if reinstatement is impractical;

54. Order Defendants to make all Plaintiffs whole by providing compensation for past and future pecuniary losses resulting from the unlawful practices described above;

55. Award punitive damages to all Plaintiffs for Defendants' intentional, outrageous and malicious conduct described above, in amounts to be determined at trial;

56. Award all Plaintiffs' Attorneys' fees and costs associated with this action, as provided in TEXAS CIVIL PRACTICE AND REMEDIES CODE, Section 38.001 and 42 U.S.C. § 1981 & 1988;

57. Award pre-judgment and post-judgment interest on all amounts recovered as permitted by law; and

58. Grant such further relief as the Court deems necessary and proper in the public interest.

VII. JURY TRIAL DEMAND

Plaintiffs request a jury trial.

Respectfully Submitted,

By: /s/*Eric P. Mirabel*

Eric P. Mirabel
Texas State Bar No. 14199560
Southern District ID No. 9708
eric@emirabel.com
3783 Darcus St.
Houston, Texas 77005
Tel: 281 772-3794

**ATTORNEY FOR PLAINTIFFS**