IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHANEL E.M. NICHOLSON, on behalf of herself and other similarly situated Plaintiffs,<br><br>*Plaintiff,*<br><br>v.<br><br>A.H.D. HOUSTON, INC. d/b/a CENTERFOLDS; W.L. YORK, INC. d/b/a THE COVER GIRLS; D WG FM, INC d/b/a SPLENDOR, D. TEXAS INVESTMENTS INC / AHD HOUSTON d/b/a TREASURES GENTLEMENS CLUB; ALI DAVARI and HASSAN DAVARI,<br><br>*Defendants.* | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:23-cv-01025<br><br>JURY TRIAL DEMANDED |

### **DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

TO THE HONORABLE JUDGE ALFRED H. BENNETT:

On July 29, 2024, the undersigned, on behalf of the Defendants, served Chanel E. M. Nicholson with a Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action. *See* Exhibit "A". The subpoena commanded Ms. Nicholson appear at 515 Rusk, Courtroom 9A, on August 19, 2024 at 9:00 a.m.[1] *Id.*

In preparation for the upcoming trial, Ms. Nicholson was contacted to again request her cooperation in providing her testimony and to again verify where a new subpoena could be served upon her. It was during those discussions that the following was learned:

---

[1] Trial in this matter was originally set for August 19, 2024. *See* Docket Entry 22. The matter was continued, and trial was reset, to November 18, 2024. *See* Docket Entry 44. The matter was subsequently continued, and the new trial setting is February 10, 2024. *See* Docket Entry 62.

1. Mr. Mirabel sent Ms. Nicholson written communications telling her to comply with the subpoena issued by trial counsel but then told her over the phone to "disobey the subpoena and don't go to Court."  Ms. Nicholson said she had recordings of this phone call.

*See* Exhibit "B".

2. Mr. Mirabel further explained to Ms. Nicholson the following, taken from a text sent by Ms. Nicholson to the undersigned:

> When you subpoenaed me Eric told me I'd BETTER NOT show up or he wasn't going to give me half of his earnings from the case. I know I didn't sell you anything but that's what his demented little mind thinks.  He yelled at me and called me everything in the book! But he said I better not EVER SHOW UP in "his 😂" courtroom. Because I told you a bunch a secrets. He's crazy. For a while liosha[2] backed out of the case Because he made her feel so uncomfortable by inviting her to his "office" that in the second story of his home and feeling her up and trying to kiss her, so she disappeared, y'all just didn't know it, he told me that she got killed by her boyfriend in Jamaica and that she was dead. I called her a few days after the TINY settlement offer and she picked right up and I talked with her and made her feel comfortable again, but that was before he told me not to come into his courtroom.

*See* Exhibit "C".

3. The text messages continued, with Ms. Nicholson again explaining how the "process" worked with Mr. Mirabel:

> All the time, [Mr. Mirabel] would say things like "your life is in my hands you're not smart enough to do this on your own" he would have me come over and shower with him. He was telling my case was worth millions, that could change my life, I can buy a house for me and my babies, that's all I wanted so at the time I did what he asked me to do because he made me feel like if I don't "obey" and be GRATEFUL then he will put certain things in the case to make it look crazy, but once I put my foot down (after 2-3 years) he put another girl in my place on the suit, so he can continue what he's doing, but the poor girl had one in counter with him that made her disappear for months. He grabbed and kissed her to the best of my knowledge. Since we're all black strippers… that's how he treats us. He thinks we're just dumb black strippers. And he has a black girl fetishized so now he's has all the women coming into his office IN

---

[2]    The reference to "liosha" is to Plaintiff Liosha Williams.

THE UPSTAIRS OF HIS HOUSE!  I kept advising him to only put the claim of what happened in 2021 and the sexual assault and breach of contract when the suit was filed because I KNEW that statute of limitations.  But he got mad at me for not coming to take a bath with him so he did whatever he wanted to do with the amendment complaints and everything thing else if I didn't cooperate, he would pop up at my apartment at times. I'm just so tired the justice system has completely failed me because my lawyer is the devil and it's his fault. Who tells a person "I can help you" just to harm me year after year . He doesn't even know A SINGLE thing about racist discrimination law. Which is great for your clients btw.  And you're a damn good lawyer! I honestly with it was you that could be my attorney in suing his low down dirty misogynistic narcissist asshole with my legal malpractice case.

*See* Exhibit "D".

4.  Ms. Nicholson then disclosed more via text messages concerning Mr. Mirabel's behavior:

You're a very good lawyer , I'm trusting you over my own lawyer, KNOWING I shouldn't trust you . I'm sure you're using my words against Eric and I don't care. Eric is so misogynistic and disgusting and so unlikable - but he holds the pen ✏. He did alot of legal malpractice and to me personally and sexually also liosha Williams. She might deny it as anyone would because he looks like he's celebrating Halloween in the face. And I'm sure the father of her child will be in the courtroom but Eric told me EVERYTHING about her and what he did with her.

*See* Exhibit "E".

A court of the United States has the statutory authority to punish by fine or imprisonment, or both, at its discretion for misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice.  18 U.S.C. § 401.  Prior to the enactment of § 401, the Supreme Court had held that courts possessed the inherent power to punish for contempt.  *Ex parte Robinson*, 86 U.S. (19 Wall) 505, 510 (1873); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *In re First City Bancorporation*, 282 F.3d 864, 867 (5th Cir. 2002).  A court can sanction a person

for bad faith, willful disobedience of a court order, or fraud on the court. *Moench v. Marquette Transp. Co. Gulf-Inland, L.L.C.*, 838 F.3d 586, 595 (5th Cir. 2016).

Counsel's conduct as described by Ms. Nicholson is not only contemptable, but it amounts to tampering with a witness, defined by 18 U.S.C. § 1512 (a)(2) which provides, in pertinent part:

Whoever uses physical force or the threat of physical force against any person, or attempts to do so, with intent to—

(A) influence, delay, or prevent the testimony of any person in an official proceeding;

(B) cause or induce any person to—

(i) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(ii) alter, destroy, mutilate, or conceal an object with intent to impair the integrity or availability of the object for use in an official proceeding;

(iii) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

(iv) be absent from an official proceeding to which that person has been summoned by legal process; . . .

Shall be punished as provided [as provided by this statute.]

18 U.S.C. § 1512 (a)(2). By instructing Ms. Nicholson to disobey the subpoena and stay away from "his" courtroom, and to tell her that she had BETTER NOT show up and again telling Ms. Nicholson that she better not EVER SHOW UP is an attempt to prevent the testimony of a person in an official proceeding. *See* Exhibit "C". It is also an attempt to induce Ms. Nicholson to be absent from an official proceeding to which she has been summoned by legal process.

The Defendants have every right to subpoena a witness and should have every expectation that opposing counsel will not tamper with the witnesses. This is not the first time that Defendants have been forced to bring Mr. Mirabel's conduct toward witnesses to the Court's attention. In a letter addressed to the Court dated October 14, 2024, the Defendants alerted the Court to what they believed was witness intimidation and witness tampering. *See* Exhibit "F." Mr. Mirabel's misconduct has not stopped, and will not stop, without an order from this Court.

The Defendants respectfully pray that this Court protect it from the conduct of Plaintiffs' counsel and that due to the conduct described above that the Court dismiss this case in its entirety and to sanction counsel for his conduct, requiring him to pay for all costs and attorneys' fees associated with bringing this Motion. Defendants further pray for such other relief in law and in equity that they show themselves to be entitled.

Respectfully submitted,

**WALLACE & ALLEN, LLP**

 */s/ Casey T. Wallace*
Casey T. Wallace
State Bar No. 00795827
SDTX Bar. No. 20117
440 Louisiana, Ste. 590
Houston, Texas 77002
Telephone: (713) 227-1744
Facsimile: (713) 600-0034
cwallace@wallaceallen.com
**ATTORNEY IN CHARGE FOR DEFENDANTS**

**OF COUNSEL FOR DEFENDANTS:**

Benjamin W. Allen
State Bar No. 24069288
SDTX Bar No. 1058996
440 Louisiana, Ste. 590
Houston, Texas 77002
Telephone: (713) 227-1744
Facsimile: (713) 600-0034
ballen@wallaceallen.com

## CERTIFICATE OF CONFERENCE

I certify that I conferred with Mr. Mirabel via e-mail regarding his position on this Motion. Mr. Mirabel indicated he was opposed to the relief requested herein stating he did not believe Ms. Nicholson had been intimidated by his conduct, and then confirmed all of our worst fears by way of quoting Ms. Nicholson from a text message she sent Mr. Mirabel. *See* Exhibit "G."

*/s/ Casey T. Wallace*
Casey T. Wallace

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this pleading has been served on the following attorneys of record in accordance with the Federal Rules of Civil Procedure on December 6, 2024.

Eric P. Mirabel
3783 Darcus St.
Houston, Texas 77005
Tel: 281-772-3794
Fax: 713-667 4234
eric@emirabel.com
**ATTORNEY FOR PLAINTIFF**

*/s/ Casey T. Wallace*
Casey T. Wallace

- 6 -