

Telephone  (713) 227-1744
Facsimile  (713) 600-0034

440 Louisiana Street, Suite 590
Houston, Texas 77002

**WALLACE & ALLEN**
— LLP —

October 14, 2024

The Honorable Judge Alfred H. Bennett
United States District Judge
515 Rusk, Room 8624
Houston, Texas 77002

*Via Email to*
*Lisa_Edwards@txs.uscourts.gov*
*Charisma_Nguepdo@txs.uscourts.gov*
*Taitum_Aland@txs.uscourts.gov*

Re:  Civil Action No. H-23-1025; *Chanel E.M. Nicholson, et al. v. A.H.D. Houston, Inc., et al.*; in the United States District Court for the Southern District of Texas – Houston Division.

Dear Judge Bennett:

It has come to the Defendants' attention that witnesses Defendants have listed in their Rule 26 Disclosures have been contacted, in writing, by Mr. Eric Mirabel, counsel for Plaintiffs. A copy of one of the letters sent to a witness is attached as Exhibit "A" to this letter.

In an attempt to intimidate the witnesses, and perhaps tamper with the witnesses, Mr. Mirabel directly (and wrongfully) accuses the witnesses of committing crimes that subject them to confinement in jail for up to one year and a $4,000.00 fine. In the attached letter, counsel accused the witness of violating the Regulations for Sexually Oriented Business in the Unincorporated Area of Harris County by providing entertainment at a club known as Treasures located at 5647 Westheimer, Houston, Texas. Among other accusations, Mr. Mirabel states "it is a Class A misdemeanor (punishable by up to one year in jail and a $4000 fine) to be a dancer at Treasures without a Class 2 permit." As section 1.3(a) of the Harris County Regulations provide "Pursuant to Section 243.003(c) of the Local Government Code, these Regulations apply to SOBs in the parts of Harris County outside the corporate limits of a municipality." *See* Exhibit "B" (Harris County Regulations). Treasures is within the corporate limits of the City of Houston. Clearly, the Regulations for Sexually Oriented Businesses in the **Unincorporated** Area of Harris County, Texas are not applicable to the entertainers who perform at Treasures, notwithstanding counsel's protestations to the contrary. Accusing the witnesses of a series of crimes is witness intimidation at the very least and potentially even witness tampering if the purpose of the communication was to influence the witness(es) to withhold testimony. The impression that the letter leaves the witness is clear: you better not testify because I'm going to accuse you of committing a crime, and you're going to go to jail.

Unfortunately, Mr. Mirabel's letter doesn't stop there. He goes on to inform the witness, wrongfully, that she is violating the City of Houston's sexually oriented business ordinance by (i) not having a permit, (ii) by not conspicuously displaying that permit, and (iii) by providing

EXHIBIT
F

entertainment to customers in a way that violates the City of Houston's Ordinance, and he again reminds the witness, wrongfully, that her conduct is a Class A misdemeanor with penalties of up to a year in jail and a $4,000.00 fine.

The Regulations that Mr. Mirabel cites the witness to are not applicable against the witnesses or the clubs in which they perform. As clearly spelled out in a Consent Decree between the City of Houston and sixteen clubs:

> [the] parties are not obligated to pay the fee required under Section 28-322 of the City of Houston Code of Ordinances, nor obtain a permit under Section 28-122 of the City of Houston Code of Ordinances, nor are persons required to obtain permits as managers and/or entertainers under Section 28-253 for their labor at the premises of the Clubs. In addition, it is expressly understood and agreed that the entertainers who perform in the Clubs may perform what is commonly referred to as lap dances or table dances, and that both the Clubs and the entertainers who perform in the Clubs shall not be required to comply with Section 28-258(a) and (b) of the City of Houston Code of Ordinances . . . "

*See* Exhibit "C" (Consent Decree at p. 10, § 12).

Mr. Mirabel's letter states none of this, but instead intimidates the witnesses into thinking that they have committed a crime -- and it is of greater importance because the intimidation comes from a licensed lawyer who should know better.

Mr. Mirabel's conduct is out of line. The remedy Defendant's seek is to strike the Plaintiffs' pleadings in their entirety and issue a judgment dismissing the suit in its entirety in favor of Defendants. It may very well be that witnesses will now choose not to testify because they have been wrongfully accused of committing crimes and will not want to forfeit their jeopardy by risking testifying, truthfully, in court.

Should the Court need additional information, I will be happy to provide it.

Sincerely,

Casey T. Wallace
Counsel for Defendants

CC    Eric P. Mirabel
emirabel@comcast.net
eric@emirabel.com

# ERIC P. MIRABEL, JD, LLM

eric@emirabel.com
www.emirabel.com
(281) 772-3794
3783 Darcus
Houston TX 77005

October 14, 2024

Alicia L. Robinson
1400 Memorial Dr.
Houston, Texas 77007
(936) 203-5159

> Re: Chanel Nicholson et al. v. AHD Houston, Inc. et al. dba Centerfolds, Cause No.
> Southern District of Texas, Houston Division

Dear Ms. Robinson:

Opposing counsel, Casey Wallace, has listed you as a potential witness in the matter above, which is in Federal Court. He has reported that you have worked at Treasures since 2021.

As counsel for Plaintiffs, I have the right to take your deposition before you testify. I would like to arrange a convenient time for you and me both to do the deposition, and ask that you contact me upon receipt of this letter to arrange it. If I don't hear from you by Monday, October 21,.2024, I will subpoena you for a time convenient for me.

In the subpoena for your deposition, I will include a demand that you produce certain relevant documents, including all documents relating to any application you filed for permits and licenses. Please note, if Mr. Wallace did not tell you, that dancers in the county are required to hold a valid Class 2 Sexually Oriented Business License, under THE REGULATIONS FOR SEXUALLY ORIENTED BUSINESSES IN THE UNINCORPORATED AREA OF HARRIS COUNTY, TEXAS. See https://www2.harriscountytx.gov/cmpdocuments/caoimages/sobregulationsoctober232018.pdf . Note that under Section 3.1 of these regulations, it is a Class A misdemeanor (punishable by up to one year in jail and a $4000 fine) to be a dancer at Treasures without a Class 2 permit. Also, if you have a Class 2 permit, be prepared to discuss how you displayed it on your person "at all times" under Section 6.2(a) of these regulations. Failing to do that is also a Class A misdemeanor. See Section 6.2(b) of these regulations.

The City of Houston, within which Treasures lies, requires a different permit for dancers. See Houston Ordinances, ARTICLE VIII. - SEXUALLY ORIENTED BUSINESS EMPLOYEES, CONDUCT AND OPERATIONS, Section 28-253. https://library.municode.com/tx/houston/codes/code_of_ordinances?nodeId=COOR_CH28MIOF

EXHIBIT
A

PR_ARTVIIISEORBUEMCOOP&showChanges=true . You are also required to "conspicuously display [your] personal card upon [your] person at all times while acting as an entertainer…" Section 28-256. Violations are a Class A misdemeanor.

I also will wish to discuss your compliance with Section 6.3(a) of THE REGULATIONS FOR SEXUALLY ORIENTED BUSINESSES IN THE UNINCORPORATED AREA OF HARRIS COUNTY, TEXAS, which provide that it is a Class A misdemeanor to "perform at an Adult Cabaret within six (6) feet of the nearest patron." And, I would like to discuss the related requirements in the Houston Ordinances, Section 28-258 (where violations are also Class A misdemeanors):

> (a) It shall be unlawful for any entertainer to touch a customer or the clothing of a customer while engaging in entertainment or while exposing any specified anatomical areas or engaging in any specified sexual activities.

> (b) It shall be unlawful for any entertainer to approach closer than three feet to any customer while engaging in entertainment or while exposing any specified anatomical areas or engaging in any specified sexual activities.

> (c) It shall be unlawful for any employee to engage in entertainment or to expose any specified anatomical areas or engage in any specified sexual activities in the presence of a customer in any separate area within an enterprise to which entry or access is blocked or obscured by any door, curtain or other barrier separating entry to such area from any other area of the enterprise. [This describes the VIP section of Centerfolds and Treasures]

I look forward to discussing these and other matters at your deposition, and afterwards, also in court, if you choose to testify.

Sincerely,

/Eric P. Mirabel, JD, LLM/



The Office of Vince Ryan
County Attorney

October 16, 2018

| Vote of the Court: | | | |
|---|---|---|---|
| | Yes | No | Abstain |
| Judge Emmett | ☐ | ☐ | ☐ |
| Comm. Ellis | ☐ | ☐ | ☐ |
| Comm. Morman | ☐ | ☐ | ☐ |
| Comm. Radack | ☐ | ☐ | ☐ |
| Comm. Cagle | ☐ | ☐ | ☐ |

Members of the Commissioners Court
1001 Preston, 9th Floor
Houston, Texas 77002

Attn: Court Members

Re: Request for approval of amendments to the Regulations for Sexually Oriented Businesses in the Unincorporated Area of Harris County

Dear Members of the Court:

This is to request that the following topic be placed on the Commissioners Court agenda for October 23, 2018 under the County Attorney portion of the agenda:

Request for approval of amendments to the Regulations for Sexually Oriented Businesses in the Unincorporated Area of Harris County

The Harris County Attorney has worked with the Harris County Sheriff and other county departments and agencies to amend the Regulations for Sexually Oriented Businesses in the Unincorporated Area of Harris County, which were originally adopted in 1996.

The revised regulations are attached along with a summary.

Thank you for your consideration of this request.

Presented to Commissioners' Court

OCT 2 3 2018
APPROVE___M|C___
Recorded Vol.____ Page____

Sincerely,
VINCE RYAN
County Attorney

By: _____
Robert Soard
First Assistant

**EXHIBIT
B**

1019 Congress, 15th Floor • Houston, Texas 77002 • Phone: 713-274-5101 • Fax: 713-755-8924

THE STATE OF TEXAS                    §

COUNTY OF HARRIS                      §

    The Commissioners Court of Harris County, Texas, met in regular session at its regular term at the Harris County Administration Building in the City of Houston, Texas, on __OCT 2 3 2018__, with all members present except _____none_____.

A quorum was present. Among other business, the following was transacted:

### ORDER ADOPTING AMENDMENTS TO REGULATIONS FOR SEXUALLY ORIENTED BUSINESSES IN THE UNINCORPORATED AREA OF HARRIS COUNTY

    Commissioner ___Morman___ introduced an order and moved that Commissioners Court adopt the order. Commissioner ___Cagle___ seconded the motion for adoption of the order. The motion, carrying with it the adoption of the order, prevailed by the following vote:

|                      | Yes | No  | Abstain |
|----------------------|-----|-----|---------|
| Judge Ed Emmett      | [√] | [ ] | [ ]     |
| Comm. Rodney Ellis   | [√] | [ ] | [ ]     |
| Comm. Jack Morman    | [√] | [ ] | [ ]     |
| Comm. Steve Radack   | [√] | [ ] | [ ]     |
| Comm. R. Jack Cagle  | [√] | [ ] | [ ]     |

    The meeting chair announced that the motion had duly and lawfully carried, and this order was duly and lawfully adopted. The order adopted follows:

    The County Attorney working with the Harris County Sheriff and other County Departments has drafted the attached amendments for Commissioners Court consideration pursuant to Chapters 234 and 243 of the Texas Local Government Code.

    The Commissioners Court finds that the unrestricted operation of certain sexually oriented businesses may be detrimental to the public health, safety, and welfare by contributing to the decline of residential and business neighborhoods and the growth of criminal activity. The attached regulations and the amendments are being adopted pursuant to that finding.

    Therefore, **IT IS ORDERED** as follows:

1. The Regulations for Sexually Oriented Businesses in the Unincorporated Area of Harris County are hereby amended such that the current Regulations adopted in 1996 are replaced in their entirety by the Regulations attached hereto and made a part hereof for all purposes.

2. The effective date for the amended Regulations is January 1, 2019.

3. All Harris County officials and employees are authorized to do any and all things necessary or convenient to accomplish the purpose of this Order.

Presented to Commissioners' Court

OCT 2 3 2018

APPROVE___M I C___

Recorded Vol._____ Page_____

# Summary of Harris County SOB Regs

**SECTION 1: GENERALLY**..............................................................................3-7

1.1 a Regulations are promulgated pursuant to Chapter 243 of the Local Government Code.

1.2 a Any peace officer may enforce

1.2 b The Sheriff is designated the SOB Permit Administrator.

1.2(c) An offense under SOB Regs is a Class A misdemeanor. (Possible $4,000 fine plus one year in jail)

1.2(e) Municipalities may execute interlocal agreements with the County.

**1.4 Definitions:**

Added to definitions for "SOB Owners" [1.4(o)] and "SOB Employees" [1.4(n)] of more specific. . Owners apply for Class 1 permits [1.4(o)(11)]; Employees apply for Class 2 permits [1.4(n)(11)].

**SECTION 2: CLASS 1 SOB PERMITS**.............................................................8-20
2.1(a) Owners must have a Class 1 permit.

2.1(b) Additional requirements for applications.
  Sets out notice timelines and requirements for denial, suspension and revocation of Class 1 permits.

2.11(a) Added the "Conduct of Employees, Independent Contractors and/or Customers" section prohibiting any person from engaging in "specialized sexual activities" or to use a "device," such as, a sex robot within a SOB.

2.12(b) Makes it a criminal violation if a SOB prohibits or prevents a peace officer or fire marshal from inspecting the SOB.

2.14 Added a "Prohibited Conduct" section setting making it a violation of the Regs if 3 or more of the following offenses occur within a 365-day period in the SOB.

  a. Prostitution, Promotion of prostitution, aggravated promotion of prostitution
  b. Compelling prostitution
  c. Employing a minor at a SOB
  d. Trafficking of Persons
  e. Sexual Conduct or performance by a child

Removed massage parlor language to be replaced with a separate Regulation to prohibit "Massage Parlors" as defined by the Local Government Code from operating in Harris County.

2.14 Added a "Prohibited Employment" section making it a violation for a SOB to hire or contract with anyone who has committed or is charged with certain crimes.

2.16 National Human Trafficking Hotline signs must be posted inside SOBs

**SECTION 3: CLASS 2 SOB PERMITS..........................................................21-27**

**SECTION 4: ADULT MOTELS...............................................................................28-29**

New Separate Section for Adult Motels.

4.1(b) Changed the definition for Adult Motels. Offers images "which are characterized by the depiction or description of "specified sexual activities" or "specified anatomical areas"; and has a sign visible from the public right-of-way which advertises the availability of this type of material;" or "regularly offers a sleeping room for rent for a period of time that is less than ten (10) hours."

4.5 Added Check-in Requirements for Adult Motels, requiring photocopy of photo id.

**SECTION 5: ADULT CABARETS..............................................................30-31**

New Separate Section for Adult Cabarets.

5.1(a) "Adult Cabaret" means a commercial establishment which has live performances which are characterized by the exposure of any portion of the areola of the breast and intended to provide sexual stimulation or gratification..

5.3 Added Hours of Operation section prohibiting Adult Cabarets from operating between 2am and 10am.

5.4 Added "Public Right-of-Way" section prohibiting an employee or owner of an Adult Cabaret from appearing in a state of nudity in a public right-of-way.

**SECTION 6: ADULT CABARET ENTERTAINERS...........................................32-33**

New Separate Section for Adult Cabaret Entertainers.

6.3 Added a "Six Feet Rule" Entertainer may not perform within six feet of a patron.

6.4(a) Added a "Prohibited Conduct" section prohibiting the following by Adult Cabaret Entertainers:

a. Exposing any portions of the pubic region, genitals, vulva and or anus on the premises of an Adult Cabaret,
b. Engaging in sexual intercourse, masturbation, sodomy, oral copulation, flagellation or any other public sexual acts on the premises on an Adult Cabaret,
c. Prostitution, promotion of prostitution, or aggravated promotion of prostitution,
d. Engaging in compelling prostitution,
e. Engaging in trafficking of persons;
f. Engaging in sexual conduct or performance by a child.

**SECTION 7: ADULT BOOKSTORES, THEATERS AND ARCADES.................34-36**
New Separate section Adult Bookstores, Adult Theaters and Adult Arcades.

7.1(a)(2) Adult Arcades now include businesses where the public is invited to interact with a device or object including an anthropomorphic device or object designed for one or many person to engage in specified sexual activities with the device or object. [Sex Robots]

7.4 Added an "Hours of Operation" section prohibiting Adult Bookstores, Theaters and Arcades from operating between the hours of 2am and 10am.

7.5(a) Added a Viewing Rooms/Viewing Booths section prohibiting more than one individual in the room or booth at any time or the room or booth from being locked.

7.5(d) Live entertainment is prohibited in a viewing room or viewing booth.

**SECTION 8: ADDITIONAL REGULATIONS....................................37**

Includes a severance clause and states that these regulations are cumulative of "authority that Harris County and its incorporated municipalities have to regulate SOBs and does not limit that authority."

3

# THE REGULATIONS FOR
# SEXUALLY ORIENTED BUSINESSES
# IN THE UNINCORPORATED AREA OF
# HARRIS COUNTY, TEXAS



AS

ADOPTED ON AUGUST 6, 1996
REVISED ON OCTOBER 23, 2018
EFFECTIVE ON JANUARY 1, 2019

HARRIS COUNTY COMMISSIONERS COURT:

COUNTY JUDGE, ED EMMETT
COMMISSIONER PCT. 1, RODNEY ELLIS
COMMISSIONER PCT. 2, JACK MORMAN
COMMISSIONER PCT. 3, STEVE RADACK
COMMISSIONER PCT. 4, R. JACK CAGLE

## TABLE OF CONTENTS

SECTION 1: GENERALLY...................................................................3-7

SECTION 2: CLASS 1 SOB PERMITS.........................................................8-20

SECTION 3: CLASS 2 SOB PERMITS........................................................21-27

SECTION 4: ADULT MOTELS...............................................................28-29

SECTION 5: ADULT CABARETS..............................................................30-31

SECTION 6: ADULT CABARET ENTERTAINERS...........................................32-33

SECTION 7: ADULT BOOKSTORES, THEATERS AND ARCADES...................34-36

SECTION 8: MASSAGE PARLORS ..........................................................37-39

SECTION 9: ADDITIONAL REGULATIONS...................................................40

<div align="center">

**SECTION 1.**
**GENERALLY.**

</div>

## 1.1 AUTHORITY TO REGULATE.

(a) These Regulations are promulgated pursuant to and in conformity with Chapter 234 of the Local Government Code and Chapter 243 of the Local Government Code, as amended.

(b) It is the purpose of the Harris County Commissioners Court to exercise its police power, as established under Chapter 234 of the Local Government Code, to prohibit Massage Parlors in order to promote and protect the health, safety, and general welfare of the citizens of Unincorporated Harris County, and to prohibit business activities which merely serve as a front for criminal activities, including but not limited to, prostitution and the promotion of prostitution.

(c) It is the purpose of the Harris County Commissioners Court to exercise its police power, as established under Chapter 243 of the Local Government Code, to establish reasonable and uniform regulations of Sexually Oriented Businesses ("SOB" or "SOBs") to promote and protect the health, safety, and general welfare of the citizens of Unincorporated Harris County, and to prohibit business activities that merely serve as a front for criminal activities, including but not limited to, prostitution, human trafficking, and the promotion of prostitution.

(d) The provisions of these Regulations have neither the intent nor the effect of imposing limits or restrictions on the content of any communicative material, including sexually oriented material.

(e) The provisions of these Regulations have neither the intent nor the effect of imposing limits or restrictions on an adult's access to sexually oriented material protected by the First Amendment.

(f) These Regulations do not legalize anything prohibited under the Texas Penal Code and any other law(s) or regulation(s).

## 1.2 ADMINISTRATION.

(a) The Harris County Commissioners Court hereby designates and directs any law enforcement agency to investigate for violations of these Regulations. All Peace Officers certified by the State of Texas may enforce these Regulations.

(b) The Harris County Commissioners Court hereby designates the Harris County Sheriff, or his/her duly authorized agent, as the SOB Permit Administrator for Unincorporated Harris County. The SOB Permit Administrator shall supervise, control, and operate the SOB Permit Office. The SOB Permit Administrator shall investigate, deny, issue, attach

conditions to, administratively suspend, and/or revoke SOB Permits issued pursuant to these Regulations.

(c)     Pursuant to Section 243.010(b) of the Local Government Code—as amended—a person commits an offense if the person violates a county regulation adopted under Chapter 243. An offense under this Section is a Class A misdemeanor.

(d)     Pursuant to Section 243.010(a) of the Local Government Code, as amended, a county may sue in the district court for an injunction to prohibit the violation of a regulation adopted under Section 243.

(e)     The Harris County Commissioners Court allows incorporated cities or towns in Harris County that have executed interlocal agreements with Harris County to designate their own SOB Permit Administrator. The SOB Permit Administrator shall supervise, control, and operate the Permit Office. The SOB Permit Administrator shall investigate, deny, issue, attach conditions to, administratively suspend, and/or revoke SOB Permits issued pursuant to these Regulations.

## 1.3     AREAS COVERED BY THESE REGULATIONS.

(a)     Pursuant to Section 243.003(c) of the Local Government Code, these Regulations apply to SOBs located in the parts of Harris County outside the corporate limits of a municipality.

(b)     These Regulations apply to Massage Parlors located in unincorporated area of Harris County.

## 1.4     GENERAL DEFINITIONS.

(a)     "*Applicant*" means an individual, business, company, corporation, or other legal entity that is required to obtain—or has applied for—a Class 1 or Class 2 SOB Permit.

(b)     "*Child Care Facility*" means a facility, building, or portion of a building, whether situated within Harris County or not, used as a day nursery, children's boarding home, child placement agency, or other place for the care and/or custody of children under fifteen (15) years of age.

(c)     "*Church*" and/or "*Regular Place of Religious Worship*" means a facility, building, or portion of a building, whether situated within Harris County or not, in which person(s) regularly assemble for religious worship and said building or portion of said building is intended primarily for purposes connected with such worship or for propagating a particular form of religious belief.

(d) **"*Fire Safety Official*"** means the Harris County Fire Marshall or the department official having competent jurisdiction to conduct a fire and life safety inspection.

(e) **"*Harris County*"** means the parts of Harris County, Texas outside the corporate limits of a municipality.

(f) **"*Interlocal Agreement*"** and/or **"*Cooperative Agreement*"** means a cooperative agreement between Harris County and an incorporate municipality.

(g) **"*Live Entertainment*"** means any activity provided for pleasure, enjoyment, recreation, relaxation, diversion, or other similar purpose by a person or persons who are physically present when providing an activity to a patron or group of patrons who are physically present.

(h) **"*Nude*"** or **"*Nudity*"** means wearing no clothes; naked—a state of undress so as to expose the human male or female genitals, pubic area or buttocks with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple.

(i) **"*Regulations*"** or **"*the Regulations*"** or **"*these Regulations*"** means these Regulations of Harris County for the operation of SOBs.

(j) **"*Residential Neighborhood*"** means any home, house, or other structure, whether situated within Harris County or not, in which a person lives and/or resides.

(k) **"*School*"** means a facility, including all attached playgrounds, dormitories, stadiums, or other appurtenances that are part of the facility, whether situated within Harris County or not, used for the primary purpose of instruction or education, including primary and secondary schools, colleges, and universities, both public and private.

(l) **"*Sexually Oriented Business*"** ("SOB" or "SOBs") means a sex parlor, nude studio, modeling studio, love parlor, adult bookstore, adult movie theater, adult video arcade, adult movie arcade, adult video store, adult motel, or other commercial enterprise the primary business of which is the offering of a service or the selling, renting, or exhibiting of devices or any other items intended to provide sexual stimulation or sexual gratification to the customer.

(m) **"*SOB Customer*"** or **"*SOB Patron*"** means any person who:

    (1) is allowed to enter a SOB in return for the payment of an admission fee or any other form of consideration or gratuity;

    (2) enters a SOB and purchases, rents, or otherwise partakes in any merchandise, goods, entertainment, or other services offered therein; or,

    (3) is a member of, and on the premises of, a SOB.

(n)     **"*SOB Employee*"** means any person who does one (1) or more of the following at a SOB:

(1)     operates a cash register, cash drawer, virtual currency, or other depository on the premises of a SOB where cash funds or records of credit card or other credit transactions generated in any manner by the operation of the SOB or the activities conducted therein are kept;

(2)     displays or takes orders from any patron for any merchandise, goods, entertainment, or other services offered on the premises of the SOB;

(3)     delivers or provides to any patron any merchandise, goods, entertainment, or other services offered on the premises of the SOB;

(4)     offers a service or sells, rents, or exhibits devices or any other items intended to provide sexual stimulation or sexual gratification on the premises of the SOB;

(5)     acts as a door attendant to regulate entry of patrons or other persons onto the SOB;

(6)     provides security services at a SOB;

(7)     works as a cook, chef, kitchen worker, restroom attendant, parking lot attendant, or house mom at a SOB;

(8)     works as a dancer, entertainer, or other service provider at a SOB;

(9)     supervises or manages other persons in the performance of any of the foregoing activities on the premises of the SOB;

(10)    acts as an in-house accountant at a SOB; or,

(11)    applies for a Class 2 SOB Permit.

(o)     **"*SOB Owner*"** means an individual, business, company, corporation, or other legal entity that:

(1)     has an ownership interest in, or receives profits from, a SOB;

(2)     is a partner, director, designated agent, or officer of a business, company, corporation, or other legal entity that has an ownership interest in a SOB;

(3)     is a shareholder that holds more than ten (10) percent of the outstanding shares of a business, company, corporation, or other legal entity that has an ownership interest in a SOB;

(4)     has been issued by the County Clerk an assumed name certificate for a business that owns a SOB;

(5)    signs a lease for a SOB;

(6)    receives a certificate of occupancy for a SOB;

(7)    pays for advertising for a SOB;

(8)    signs an alarm permit for a SOB;

(9)    opens an account for utilities for a SOB;

(10)   signs for, or applies for, a license issued by the Texas Alcoholic Beverage Commission for a SOB; or,

(11)   applies for a Class 1 SOB Permit.

(p)    *"SOB Permit Administrator"* means the Sheriff of Harris County, the Sheriff's designated agent, or the designated official for a cooperating municipality.

(q)    *"SOB Permit Office"* means the location which has been designated by the SOB Permit Administrator where commercial businesses and/or individuals apply for Class 1 or Class 2 SOB Permit.

(r)    *"Specified Anatomical Areas"* means and includes any of the following:

(1)    human genitals, pubic region or pubic hair;

(2)    buttock;

(3)    areola of the breast; or

(4)    any combination of the foregoing.

(s)    *"Specified Sexual Activities"* means and includes any of the following:

(1)    the fondling or other erotic touching of another's or one's own human genitals, pubic region, pubic hair, perineum, buttocks, anus, or female breasts;

(2)    sex acts, actual or simulated, including intercourse, oral copulation, or sodomy;

(3)    masturbation, actual or simulated on oneself, or another; or,

(4)    excretory functions as part of or in connection with any of the activities set forth in (1)-(3) above.

(t)    *"State of Nudity"* or *"Semi-Nude"* means any state of dress which fails to cover a human buttock, anus, genitalia, and/or areola of the breast.

## SECTION 2.
## CLASS 1 SOB PERMITS.

**2.1    APPLICATION.**

(a)    It shall be unlawful for any person, individual, business, company, corporation, or other legal entity to operate a SOB in Harris County—for any period of time—that has not been issued a Class 1 SOB Permit pursuant to these Regulations. Pursuant to Section 243.010(b) of the Local Government Code, a person commits a Class A misdemeanor offense if the person operates a SOB in violation of this Subsection. Pursuant to Section 243.010(a) of the Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection against any SOB Owner, SOB Employee, or against any other person or entity who maintains, owns, uses, is a party to the use, or who owns the real property where the violation or threatened violation of this Subsection is occurring and/or has occurred.

(b)    A complete application shall be filed with the SOB Permit Administrator. The application shall be filed on the form provided by the SOB Permit Administrator. The SOB Permit Administrator shall establish the hours when an application can be submitted.

   (1)    The Applicant(s) shall apply in person.

   (2)    The Applicant(s) shall be the SOB's Owner(s).

   (3)    The SOB Permit Administrator shall provide the fee schedule to the Applicant(s). Pursuant to Section 243.009 of the Local Government Code, the fees must be based on the cost of processing the applications and investigating the applicants.

   (4)    Incomplete applications will result in denial of the application and forfeiture of the application fee.

   (5)    Once a complete application has been received, the SOB Permit Administrator shall conduct up to three (3) inspections of the Applicant(s)' proposed SOB to ensure compliance with these Regulations. The Applicant(s) must be present in person during these inspections. It shall be the responsibility of the Applicant(s) to provide an interpreter if necessary during these inspection(s).

      (i)    After the initial inspection, the Applicant(s) will be informed in writing of what corrections must be made to the proposed SOB in order to comply with these Regulations.

      (ii)    A second inspection will be performed if necessary. The Applicant(s) will again be informed in writing of what corrections must be made to the proposed SOB in order to comply with these Regulations.

(iii) If after the third and final inspection the Applicant(s)' proposed SOB fails to comply with these Regulations, the SOB Permit Administrator will deny the application.

(iv) If the proposed SOB passes inspection, the SOB Permit Administrator shall approve the application.

(6) The Applicant(s) has ninety (90) days from the initial inspection to complete the inspection process. Failure to complete the inspection process within these ninety (90) days shall result in denial of the application. It is the obligation of the Applicant to ensure the process is completed in the requisite ninety (90) days.

(7) Failure to provide any information required by this Section or a determination by the SOB Permit Administrator that inaccurate, erroneous, or incomplete information has been submitted, shall be grounds for denial of the application.

(c) In municipalities which have elected to adopt the Harris County SOB Regulations, and where Harris County Commissioners Court has approved an Interlocal Agreement between the municipality and Harris County, the municipality shall designate an entity to receive and process SOB Permit applications. The municipality shall adopt a common operating procedure with requirements and processes reasonably similar to those set out by these Regulations.

(d) Each complete Class 1 SOB Permit application shall be accompanied by:

(1) a current annual fire inspection report from a fire safety official showing compliance with all applicable fire safety codes and with all corrections ordered;

(2) a copy of the certificate of occupancy and/or certificate of compliance issued by the appropriate entity for the proposed SOB;

(3) a copy of the diagram and/or floorplan to include the designed occupancy load prepared by a licensed architect or engineer and approved by the entity with competent jurisdiction;

(4) a copy of the proposed SOB's TABC license(s) and/or permit(s) (if applicable);

(5) a true and correct copy of the assumed name certificate filed in the office of the Harris County Clerk, bearing the file mark or stamp that evidences its filing, if the SOB will be operating under an assumed name;

(6) a copy of the formative legal documents for the applicable legal entity(s) (e.g., the Articles of Incorporation);

(7) a non-refundable application fee (cashier's check or money order only) as determined by the SOB Permit Administrator;

(8)     a color photocopy of the Applicant's driver's license or government-issued photo identification;

(9)     proof that the proposed SOB is in compliance with, or exempt from, the applicable distance restriction which are set forth in the applicable Section(s) of these Regulations;

(10)     a complete and accurate list of all SOB Employees along with color photocopies of the individual(s) driver's license or government-issued identification papers;

(11)     proof, as required by Section 3 of these Regulations, that all SOB Owners and/or Employees of the Proposed SOB have applied for a valid Class 2 SOB Permit pursuant to these Regulations;

(12)     a copy of the current and valid lease agreement between the Applicant and the owner of the real property where the proposed SOB is planning to operate from, with the Applicant listed as the owner of the proposed SOB, or proof that the Applicant own the real property where the proposed SOB is planning to operate from; and,

(13)     a certification that all of the contents of the application, and the material presented above, are true and correct under the penalty of Perjury as defined by Section 37.02 of the Texas Penal Code. Additionally, any misrepresentation by the Applicant(s) on his/her application is a third degree felony offense as defined by Section 37.10 of the Texas Penal Code.

(e)     A Class 1 SOB Permit application shall be denied upon failure to produce all documents and information required by Subsection 2.1(d) (1)-(13). Failure to provide proof required by Subsection 2.1(d) (9) will result in denial of the distance exemption required by these Regulations.

(f)     A SOB SHALL NOT OPERATE DURING THE PENDENCY OF THE APPLICATION AND SHALL NOT OPERATE UNTIL THE CLASS 1 SOB PERMIT APPLICATION HAS BEEN APPROVED AND THE CLASS 1 SOB PERMIT ISSUED & DISPLAYED.

(g)     A Class 1 SOB Permit, in accordance with these Regulations, is not transferable, assignable, or divisible, and it is a violation of these Regulations for any person to attempt to do so. If ownership of a SOB changes, the SOB shall be deemed unpermitted and the new SOB Owner(s) must reapply and be issued a Class 1 SOB Permit before the SOB may operate.

(1)     Pursuant to Section 243.010(b) of the Local Government Code, a person commits a Class A misdemeanor offense if the person transfers, assigns, or divides a Class 1 SOB Permit in violation of this Subsection.

(h)     Pursuant to Section 243.0075 of the Local Government Code, Applicant(s) seeking a Class 1 SOB Permit for a location not currently licensed or permitted shall, not later than the 60th day before the date the application is filed, prominently post an outdoor sign at the location stating that a SOB is intended to be located on the premises and providing the name and business address of the Applicant(s). The sign must be at least 24 by 36 inches in size and must be written in lettering at least two inches in size.

## 2.2     DENIAL OF A CLASS 1 SOB PERMIT.

(a)     A Class 1 SOB Permit shall be denied upon a finding by the SOB Permit Administrator of any of the following facts:

    (1)     the proposed SOB has violated, or is not in compliance with, any applicable Section or Subsection of these Regulations;

    (2)     the Applicant(s), or if the applicant is a corporation, partnership, limited liability company or other business entity, any officer, director, member, partner or participant required to be identified in the application, has been convicted of, entered a plea of nolo contendere or guilty, received deferred adjudication, or who is currently charged with, any of the following offenses:

        (i)     prostitution, promotion of prostitution, aggravated promotion of prostitution, compelling prostitution, obscenity, sale distribution, or display of harmful material to a minor, sexual performance by child, or possession of child pornography as described by Chapter 43 of the Texas Penal Code;

        (ii)     a criminal offense as described in Chapter 20 of the Texas Penal Code;

        (iii)     a criminal offense as described in Chapter 21 of the Texas Penal Code;

        (iv)     sexual assault or aggravated sexual assault as described in Chapter 22 of the Texas Penal Code;

        (v)     incest, solicitation of a child or harboring a runaway child as described in Chapter 25 of the Texas Penal Code;

        (vi)     gambling, gambling promotion, keeping a gambling place, communicating gambling information, possession of gambling devices or equipment, or possession of gambling paraphernalia as described in Chapter 47 of the Texas Penal Code;

        (vii)     forgery, credit card abuse or commercial bribery as described in a Chapter 32 of the Texas Penal Code;

(viii)    a criminal offense as described in Chapter 481 Subchapter D of the Health and Safety Code;

(ix)    a criminal offense as described in Chapter 34 of the Texas Penal Code;

(x)    a criminal offense as described in Chapter 352, Subchapter B of the Texas Local Government Code;

(xi)    a violation of Chapter 455 of the Texas Occupations code; or,

(xii)    criminal attempt, conspiracy, or solicitation to commit any of the foregoing offenses; or, any other offense to the laws of another state or of the United States that, if committed in this State, would have been punishable as one or more of the aforementioned offenses; and,

    A.    less than two (2) years has elapsed since the date of the violation, or of the conviction, or of the date of release from confinement imposed by the conviction, whichever is the later date, if the violation or conviction was a misdemeanor offense; or,

    B.    less than five (5) years has elapsed since the date of the violation, or conviction, or the date of release from confinement imposed by the conviction, whichever is the later date, if the violation or conviction was a felony offense.

(3)    the Applicant(s) made a misleading statement in the application for a SOB Permit, provided false, fraudulent, or untruthful information in the application for a SOB Permit, and/or withheld pertinent information in the application for a SOB Permit;

(4)    the Applicant(s) is under eighteen (18) years of age;

(5)    the Applicant(s) has had a Class 1 or Class 2 SOB Permit denied within the three hundred and sixty-five (365) day period immediately preceding the date the application was filed;

(6)    the Applicant(s) has had a Class 1 or Class 2 SOB Permit revoked within the three hundred and sixty-five (365) day period immediately preceding the date the application was filed;

(7)    the Applicant(s) is delinquent in the payment to the county of taxes, fees, fines, or penalties assessed or imposed regarding the operation of a SOB;

(8)    an application or renewal fee required by these Regulations has not been paid;

(9)    the inspection process was not completed within the ninety (90) day period described in Subsection 2.1 of these Regulations; and/or,

(10) the Applicant(s) has operated any business that has been sued, and judgment entered against the business, pursuant to Chapter 125 of the Texas Civil Practice and Remedies Code within five (5) years immediately preceding the date the application was filed.

(b) If any of the stated events or conditions providing a basis for denial of a Class 1 SOB Permit have occurred, the SOB Permit Administrator shall document the reason for denial in a denial letter, and provide notice to the Applicant(s) by posting a copy of the denial letter on an entrance door of the SOB within thirty (30) days from the date on which the denial letter was drafted by the SOB Permit Administrator. The denial letter shall provide the reason(s) for the action.

## 2.3 REVOCATION OR SUSPENSION OF A CLASS 1 SOB PERMIT.

(a) The Permit Administrator shall have the authority to revoke or suspend a permit for the following reasons:

(1) the SOB has violated, or is not in compliance with, any applicable Section or Subsection of these Regulations;

(2) the Applicant(s) made a misleading statement in the application for a Class 1 SOB Permit, provided false, fraudulent, or untruthful information in the application for a Class 1 SOB Permit, and/or withheld pertinent information in the application for a Class 1 SOB Permit; or,

(3) the Class 1 SOB Permit should not have been issued pursuant to these Regulations.

(b) If any of the stated events or conditions providing a basis for revocation or suspension of a Class 1 SOB Permit have occurred, the SOB Permit Administrator shall document the violation in a revocation or suspension letter, and provide notice to the SOB Owner(s) by posting a copy of the revocation or suspension letter on an entrance door of the SOB within thirty (30) days from the date on which the revocation or suspension letter was drafted by the SOB Permit Administrator. The revocation or suspension letter shall provide the reason(s) for the action. A revocation or suspension of a Class 1 SOB Permit by the SOB Permit Administrator shall become final on the seventh (7th) day after the revocation or suspension letter is posted on an entrance door of the SOB.

## 2.4 CLASS 1 SOB PERMIT APPEALS.

(a) If the SOB Permit Administrator denies a Class 1 SOB Permit Application, revokes a Class 1 SOB Permit, or suspends a Class 1 SOB Permit, the Applicant(s) or SOB Owner(s) shall have the opportunity to make a written request for a hearing before a hearing examiner appointed by the Harris County Commissioners Court. The hearing examiner shall not

have participated in any investigation of the alleged grounds for denial, revocation, or suspension of the Class 1 SOB Permit.

(b)     All requests for hearings must be in writing and delivered to the SOB Permit Administrator within thirty (30) days from the date when the denial, revocation, or suspension letter was posted at an entrance door of the SOB by the SOB Permit Administrator. The Applicant(s) or SOB Owner(s) waive the right to a Class 1 SOB Permit appeal hearing if the request is not timely received by the SOB Permit Administrator.

(c)     The Applicant(s) or SOB Owner(s) shall be provided an opportunity to present evidence, cross-examine witnesses, and be represented by legal counsel. The formal rules of evidence do not apply.

(d)     It shall be the responsibility of the Applicant(s) or SOB Owner(s) to provide a court reporter and an interpreter if necessary for the Class 1 SOB Permit appeal hearings before the hearing examiner.

(e)     The Applicant(s) or SOB Owner(s) shall be present in person at the Class 1 SOB Permit appeal hearings. If the Applicant(s) or SOB Owner(s) are not present in person at the Class 1 SOB Permit appeal hearing, the Class 1 SOB Permit shall be automatically denied or revoked.

(f)     The hearing examiner has the power to uphold or reverse the denial of a Class 1 SOB Permit.

(g)     The hearing examiner has the power to uphold, reverse, or modify the suspension of a Class 1 SOB Permit by ordering a shorter or longer suspension.

(h)     The hearing examiner has the power to uphold, modify or reverse the revocation of a Class 1 SOB Permit and instead order a suspension. However, if the hearing examiner finds that a violation of a particular Section or Subsection of these Regulations has occurred and that the specific violation calls for mandatory revocation, the hearing examiner shall strictly abide by that determination and shall not retroactively modify or change the status of that revocation.

(i)     The decision of the hearing examiner shall be final.

(j)     The hearing examiner shall issue a written order memorializing his/her decision within thirty (30) days from the date of the Class 1 SOB permit appeal hearing. The written order shall be distributed to the Applicant(s) or SOB Owner(s), and SOB Permit Administrator via certified mail or e-mail.

(k)     A SOB SHALL NOT OPERATE DURING THE PENDENCY OF AN APPEAL TO THE HEARING EXAMINER.

**2.5    DISTRICT COURT APPEALS FOR CLASS 1 SOB PERMITS.**

(a)    On final decision by the hearing examiner, the losing party may appeal the decision by filing a petition in a district court in the county with jurisdiction within thirty (30) days after the date of the decision by the hearing examiner.

(b)    Appeals to the district court shall be governed by the substantial evidence rule defined by Section 2001.174 of the Government Code.

(c)    If the Applicant(s) or SOB Owner(s) appeal to the hearing examiner is successful, the SOB may resume operation and may operate during the pendency of an appeal by the County to the district court. However, if the Applicant(s) or SOB Owner(s) appeal to the hearing examiner is unsuccessful, the SOB may not resume operation and may not operate during the pendency of an appeal by the SOB to the district court.

**2.6    REAPPLICATION FOR A CLASS 1 SOB PERMIT.**

(a)    After the hearing examiner's final ruling of the denial or revocation of a Class 1 SOB Permit, an Applicant(s) may reapply for a Class 1 SOB Permit after the expiration of three hundred and sixty-five (365) days from the date of the hearing examiner's ruling.

(b)    The application will be considered a new application in regard to the timelines and fee established in Subsection 2.1, and for any applicable distance requirements set forth in these Regulations.

**2.7    RENEWAL OF A CLASS 1 SOB PERMIT.**

(a)    A Class 1 SOB Permit may be renewed for the following year starting ninety (90) days before the expiration of the current permit by filing a complete application of a Class 1 SOB Permit and paying the applicable fee set forth in these Regulations.

(b)    A renewal application shall be subject to the same requirements in these Regulations as are required for a Class 1 SOB Permit application. As long as the completed renewal application was submitted within this ninety (90) day period, the previous Class 1 SOB Permit will remain in effect until the SOB Permit Administrator makes a determination in accordance with these Regulations as to whether the Class 1 SOB Permit will be renewed.

**2.8    CONTENTS OF A CLASS 1 SOB PERMIT.**

(a)    A Class 1 SOB Permit is valid for three hundred and sixty-five (365) days.

(b)    When the application process is complete and the proposed SOB has met all the requirements set forth in these Regulations, the SOB Permit Administrator shall issue the proposed SOB a Class 1 SOB Permit.

(c)    The Class 1 SOB Permit shall contain the following:

    (1)    the date the Permit was issued;

    (2)    the date the Permit expires;

    (3)    the name of the SOB;

    (4)    the type of commercial enterprise the SOB is operating as (e.g., "an Adult Motel");

    (5)    the physical address of the SOB;

    (6)    the name of the SOB Owner(s);

    (7)    indicate what exemptions, if any, the SOB was granted; and,

    (8)    the signature of the SOB Permit Administrator.

(d)    The SOB Permit Administrator shall keep a signed copy of the Class 1 SOB Permit for the SOB Permit Administrator's records.

**2.9    CLASS 1 SOB PERMIT DISPLAYED.**

(a)    A SOB shall post and display its current valid Class 1 SOB Permit conspicuously in plain sight in a common area accessible to the public and patrons.

(b)    Pursuant to Section 243.010(b) of the Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(c)    Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

(d)    A violation of this Subsection may be grounds for denial, revocation, or suspension of the Class 1 SOB Permit.

**2.10 DISTANCE RESTRICTIONS.**

(a)     A SOB shall not be located:

    (1)     within 1,500 feet from any existing or planned school, regular place of religious worship, child care facility, and/or residential neighborhood. "Planned" means that steps have been taken toward the facility's or structure's development including but not limited to a Permit received, a plat approved, design work started, a bond received, or an order approved by a governmental entity's governing body; or,

    (2)     within a distance of 2,000 feet from where two (2) or more SOBs are located.

(b)     For the purposes of this Subsection, measurements shall be made in a straight line from the nearest property line upon which the SOB sits to the nearest property line used for the purposes identified in Subsection (a) and Subsection (b) above.

(c)     A SOB are exempt from the distance restrictions upon proof that the Applicant continuously owned and operated the SOB at the same location and under the same name prior to October 23, 2018. If the SOB changes its name, its Owner, and/or adds another Owner after this date, or if the Class 1 SOB Permit is suspended or revoked, or if the Class 1 SOB Permit is denied renewal, or if the Class 1 SOB Permit is allowed to lapse, the SOB will be considered a new SOB and will not be exempt from the distance requirements outlined in this Subsection. All applications claiming a distance exemption under this Subsection must be submitted on or before December 31, 2018.

(d)     Pursuant to Section 243.010(b) of the Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(e)     Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

(f)     Any violation of this Subsection shall result in mandatory denial or revocation of the Class 1 SOB Permit.


**2.11 CONDUCT OF EMPLOYEES, INDEPENDENT CONTRACTORS, AND/OR CUSTOMERS.**

(a)     It shall be unlawful for the owner, operator or any agent or employee of a SOB to knowingly allow or permit any person to engage in specified sexual activities or to use the devices set out in Section 7.1(a)(2), within the SOB. This prohibition does not apply to an "Adult Motel" as defined in these regulations.

(b)     Pursuant to Section 243.010(b) of the Texas Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(c)     Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

(d)     Any violation of this Subsection shall be grounds for mandatory denial or revocation of the Class 1 SOB Permit.

## 2.12   INSPECTION BY LAW ENFORCEMENT.

(a)     Peace Officers and Fire Safety Officials are authorized to inspect a SOB to ensure compliance with these Regulations.  A Class 1 SOB Permit issued pursuant to these Regulations gives Peace Officers and Fire Safety Officials implied consent to enter and to inspect any SOB for violations of these Regulations.

(b)     It shall be unlawful for an SOB to exclude, prohibit or prevent any Peace Officer or Fire Marshal Official from conducting an inspection authorized by these Regulations.

(c)     Pursuant to Section 243.010(b) of the Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(d)     Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

(e)     Any violation of this Subsection shall result in mandatory denial or revocation of an Adult Motel's Class 1 SOB Permit.

## 2.13   AGE REQUIREMENTS.

(a)     It shall be unlawful for any individual(s) under the age of eighteen (18) to be on the premises of an SOB during business hours.

(b)     Pursuant to Section 243.010(b) of the Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(c)     Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

(d)     Any violation of this Subsection shall result in mandatory denial or revocation of the Class 1 SOB Permit.

## 2.14  PROHIBITED CONDUCT.

(a)  A SOB shall prevent and/or abate the following activities from occurring on the premises:

   (1)  prostitution, promotion of prostitution, or aggravated promotion of prostitution as defined by the Texas Penal Code;

   (2)  compelling prostitution as defined by the Texas Penal Code;

   (3)  employing a minor at a sexually oriented business as defined by Section 243.002 of the Local Government Code;

   (4)  trafficking of person(s) as described by Section 20A.02 of the Texas Penal Code; and/or,

   (5)  sexual conduct or performance by a child as described by Section 43.25 of the Texas Penal Code.

(b)  If three or more of the offenses listed in Subsection 2.14(a)(1)-(5) occur on the premises of the SOB within a period of 365 days, it shall constitute a violation of this subsection.

(c)  Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

(d)  Any violation of this Subsection shall result in mandatory denial or revocation of the Class 1 SOB Permit.

## 2.15  PROHIBITED EMPLOYMENT.

(a)  Sexually Oriented Businesses are prohibited from employing and/or contracting with any individual who has been convicted of, entered a plea of nolo contendere or guilty, received deferred adjudication, or who is currently charged with any of the following offenses:

   (1)  prostitution, promotion of prostitution, aggravated promotion of prostitution, compelling prostitution, obscenity, sale distribution, or display of harmful material to a minor, sexual performance by child, or possession of child pornography as described by Chapter 43 of the Texas Penal Code;

   (2)  a criminal offense as described in Chapter 20 of the Texas Penal Code;

   (3)  a criminal offense as described in Chapter 21 of the Texas Penal Code;

   (4)  sexual assault or aggravated sexual assault as described in Chapter 22 of the Texas Penal Code;

   (5)  incest, solicitation of a child or harboring a runaway child as described in Chapter 25 of the Texas Penal Code;

(6)    gambling, gambling promotion, keeping a gambling place, communicating gambling information, possession of gambling devices or equipment, or possession of gambling paraphernalia as described in Chapter 47 of the Texas Penal Code;

(7)    forgery, credit card abuse or commercial bribery as described in a Chapter 32 of the Texas Penal Code;

(8)    a criminal offense as described in Chapter 481 Subchapter D of the Health and Safety Code;

(9)    a criminal offense as described in Chapter 34 of the Texas Penal Code;

(10)    a criminal offense as described in Chapter 352, Subchapter B of the Texas Local Government Code;

(11)    a violation of Chapter 455 of the Texas Occupations code; or,

(12)    criminal attempt, conspiracy, or solicitation to commit any of the foregoing offenses; or, any other offense to the laws of another state or of the United States that, if committed in this State, would have been punishable as one or more of the aforementioned offenses; and,

    (i)    less than two (2) years has elapsed since the date of the violation, or of the conviction, or of the date of release from confinement imposed by the conviction, whichever is the later date, if the violation or conviction was a misdemeanor offense; or,

    (ii)    less than five (5) years has elapsed since the date of the violation, or conviction, or the date of release from confinement imposed by the conviction, whichever is the later date, if the violation or conviction was a felony offense.

(b)    Pursuant to Section 243.010(b) of the Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(c)    Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

(d)    A violation of this Subsection shall be grounds for mandatory denial or revocation of the Class 1 SOB Permit.

## 2.16    POSTING HUMAN TRAFFICING INFORMATION

(a)    Each SOB shall have the duty to post a sign containing educational information regarding human trafficking including the National Human Trafficking Hotline: 1(888)373-7888.

(b)    The signs must be posted at eye level adjacent to each entrance, in each public restroom and in any employee dressing room or breakroom.

(c)    The signs shall be obtained from the SOB Permit Administrator.

## SECTION 3.
## CLASS 2 SOB PERMITS.

**3.1  APPLICATION.**

(a)   It shall be unlawful for any person who has not been issued a Class 2 SOB permit pursuant to these Regulations to engage in any of the activities outlined in Subsection 1.4(n) (1)-(11) or 1.4(o) (1)-(11) in a SOB located in Harris County, regardless of whether that SOB has been issued a Class 1 SOB Permit pursuant to these Regulations.

(b)   Pursuant to Section 243.010(b) of the Local Government Code, a person commits a Class A misdemeanor offense if the person engages in any of the activities outlined in Subsection 1.4(n) (1)-(11) or 1.4(o) (1)-(11) in a SOB located in Harris County without being issued a Class  2 SOB Permit pursuant to these Regulations.

(c)   Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

(d)   A complete application shall be filed with the SOB Permit Administrator. The application shall be filed on the form provided by the SOB Permit Administrator.  The SOB Permit Administrator shall establish the hours when an application can be submitted.

   (1)   The Applicant shall apply in person.

   (2)   The Applicant shall be a SOB Owner and/or Employee.

   (3)   The SOB Permit Administrator shall provide the fee schedule to the Applicant. Pursuant to Section 243.009 of the Local Government Code, the fees must be based on the cost of processing the applications and investigating the applicants.

   (4)   Incomplete applications will result in denial of the application and forfeiture of the application fee.

(e)   Each complete Class 2 SOB Permit Application shall be accompanied by:

   (1)   a color copy of the Applicant's driver's license or government-issued photo identification;

   (2)   a color copy of the Applicant's social security card;

   (3)   a certification stating the Applicant has not violated, or been convicted of, any offense listed in Subsection 2.2(a)(2); and,

   (4)   a valid mailing address and e-mail address.

(f)     A Class 2 SOB Permit application shall be denied upon failure to produce all documents and information required by Subsection 3.1(e) (1)-(4).

(g)     A SOB OWNER AND/OR EMPLOYEE SHALL NOT WORK AT A SOB DURING THE PENDENCY OF THEIR APPLICATION AND SHALL WORK ONLY IF THEIR CLASS 2 SOB PERMIT APPLICATION HAS BEEN APPROVED AND THE CLASS 2 SOB PERMIT ISSUED.

(h)     Class 2 SOB Permit, in accordance with these Regulations, is not transferable, assignable, or divisible, and it is a violation of these Regulations for any person to attempt to do so.

     (1)     Pursuant to Section 243.010(b) of the Local Government Code, a person commits a Class A misdemeanor offense if the person transfers, assigns, or divides a Class 2 SOB Permit in violation of this Subsection 3.2(a) (1)-(2).

## 3.2     DENIAL OF A CLASS 2 SOB PERMIT.

(a)     A Class 2 SOB Permit shall be denied upon a finding by the SOB Permit Administrator of any of the following:

     (1)     the Applicant has violated, or is not in compliance with, any applicable Section or Subsection of these Regulations;

     (2)     the Applicant has been convicted of, entered a plea of nolo contendere or guilty, received deferred adjudication, or who is currently charged with, any of the following offenses:

          (i)     prostitution, promotion of prostitution, aggravated promotion of prostitution, compelling prostitution, obscenity, sale distribution, or display of harmful material to a minor, sexual performance by child, or possession of child pornography as described by Chapter 43 of the Texas Penal Code;

          (ii)     a criminal offense as described in Chapter 20 of the Texas Penal Code;

          (iii)     a criminal offense as described in Chapter 21 of the Texas Penal Code;

          (iv)     sexual assault or aggravated sexual assault as described in Chapter 22 of the Texas Penal Code;

          (v)     incest, solicitation of a child or harboring a runaway child as described in Chapter 25 of the Texas Penal Code;

          (vi)     gambling, gambling promotion, keeping a gambling place, communicating gambling information, possession of gambling devices or equipment, or

possession of gambling paraphernalia as described in Chapter 47 of the Texas Penal Code;

(vii)   forgery, credit card abuse or commercial bribery as described in a Chapter 32 of the Texas Penal Code;

(viii)  a criminal offense as described in Chapter 481 Subchapter D of the Health and Safety Code;

(ix)    a criminal offense as described in Chapter 34 of the Texas Penal Code;

(x)     a criminal offense as described in Chapter 352, Subchapter B of the Texas Local Government Code;

(xi)    a violation of Chapter 455 of the Texas Occupations code; or,

(xii)   criminal attempt, conspiracy, or solicitation to commit any of the foregoing offenses; or, any other offense to the laws of another state or of the United States that, if committed in this State, would have been punishable as one or more of the aforementioned offenses; and,

      A.   less than two (2) years has elapsed since the date of the violation, or of the conviction, or of the date of release from confinement imposed by the conviction, whichever is the later date, if the violation or conviction was a misdemeanor offense; or,

      B.   less than five (5) years has elapsed since the date of the violation, or conviction, or the date of release from confinement imposed by the conviction, whichever is the later date, if the violation or conviction was a felony offense.

(3)   the Applicant made a misleading statement in the application for a Class 2 SOB Permit, provided false, fraudulent, or untruthful information in the application for a Class 2 SOB Permit, and/or withheld pertinent information in the application for a Class 2 SOB Permit;

(4)   the Applicant is under eighteen (18) years of age;

(5)   the Applicant has had a Class 1 or Class 2 SOB Permit denied within the three hundred and sixty-five (365) day period immediately preceding the date the application was filed;

(6)   the Applicant has had a Class 1 or Class 2 SOB Permit revoked within the three hundred and sixty-five (365) day period immediately preceding the date the application was filed;

(7)     the Applicant has been sued pursuant to Chapter 125 of the Texas Civil Practice and Remedies Code within five (5) years immediately preceding the date the application was filed; or,

(8)     an application or renewal fee required by these Regulations has not been paid.

(b)     If any of the stated events or conditions providing a basis for denial of a Class 2 SOB Permit have occurred, the SOB Permit Administrator shall document the reason for denial in a denial letter, and provide notice the Applicant(s) by certified mail or e-mail within thirty (30) days from the date on which the denial letter was drafted by the SOB Permit Administrator. The denial letter shall provide the reason(s) for the action.

## 3.3     REVOCATION OR SUSPENSION OF A CLASS 2 SOB PERMIT.

(a)     A Class 2 SOB Permit shall be revoked or suspended upon a finding by the SOB Permit Administrator of any of the following facts:

(1)     a SOB Owner or Employee has violated, or is not in compliance with, any applicable Section or Subsection of these Regulations;

(2)     a SOB Owner or Employee failed to display on his/her person at all times while on the premises of a SOB, a current valid Class 2 SOB Permit issued pursuant to these Regulations;

(3)     a SOB Owner or Employee violated any of the offense described in Subsection 3.2(a) (2) of these Regulations;

(4)     a SOB Owner or Employee is found to be on the premises of a SOB in Harris County, and providing services to that SOB, without a Class 2 Permit for that location;

(5)     a SOB Owner or Employee made a misleading statement in the application for a Class 2 SOB Permit, provided false, fraudulent, or untruthful information in the application for a Class 2 SOB Permit, and/or withheld pertinent information in the application for a Class 2 SOB Permit; or,

(6)     the Class 2 SOB Permit should not have been issued pursuant to these Regulations.

(b)     If a SOB Owner or SOB Employee is found to be in violation of 3.3(a), revocation of his/her Class 2 SOB Permit is mandatory.

(c)     If any of the stated events or conditions providing a basis for revocation or suspension of a Class 2 SOB Permit have occurred, the SOB Permit Administrator shall document the violation in a revocation or suspension letter, and provide notice the SOB Owner or SOB Employee via certified mail or e-mail within thirty (30) days from the date on which the

revocation or suspension letter was drafted by the SOB Permit Administrator. The revocation or suspension letter shall provide the reason(s) for the action. A revocation or suspension of a Class 2 SOB Permit by the SOB Permit Administrator shall become final on the seventh (7th) day after the revocation or suspension letter is mailed via certified mail.

## 3.4    CLASS 2 SOB PERMIT APPEALS.

(a)     If the SOB Permit Administrator denies a Class 2 SOB Permit Application, revokes a Class 2 SOB Permit, or suspends a Class 2 SOB Permit, the Applicant or SOB Owner/Employees shall have the opportunity to make a written request for a hearing before a hearing examiner appointed by the Harris County Commissioners Court. The hearing examiner shall not have participated in any investigation of the alleged grounds for denial, revocation, or suspension of the Class 2 SOB Permit.

(b)     All requests for hearings shall be in writing and delivered to the SOB Permit Administrator within thirty (30) days from the date when the denial, revocation, or suspension letter was transmitted by the SOB Permit Administrator. The Applicant or SOB Owner/Employees waives the right to a Class 2 SOB Permit appeal hearing if the request is not timely received by the SOB Permit Administrator.

(c)     The Applicant or SOB Owner/Employee shall be provided an opportunity to present evidence, cross-examine witnesses, and be represented by legal counsel. The formal rules of evidence do not apply.

(d)     It shall be the responsibility of the Applicant or SOB Owner/Employee to provide a court reporter and an interpreter if necessary for the Class 2 SOB Permit appeal hearings before the hearing examiner.

(e)     The Applicant or SOB Owner/Employee shall be present in person at the Class 2 SOB Permit appeal hearings. If the Applicant or SOB Owner/Employee is not present in person at the Class 2 SOB Permit appeal hearing, the denial or revocation of the Class 2 SOB Permit shall be automatically upheld.

(f)     The hearing examiner has the power to uphold or reverse the denial of a Class 2 SOB Permit.

(g)     The hearing examiner has the power to uphold, reverse, or modify the suspension of a Class 2 SOB Permit by ordering a shorter or longer suspension.

(h)     The hearing examiner has the power to uphold, modify or reverse the revocation of a Class 2 SOB Permit and instead order a suspension. However, if the hearing examiner finds that a violation of a particular Section or Subsection of these Regulations has occurred and that the specific violation calls for mandatory revocation, the hearing examiner shall strictly abide by that determination and shall not retroactively modify or change the status of that revocation.

(i)     The decision of the hearing examiner shall be final.

(j)     The hearing examiner shall issue a written order memorializing his/her decision within thirty (30) days from the date of the Class 2 SOB permit appeal hearing. The written order shall be distributed to the Applicant or SOB Employee, and SOB Permit Administrator via certified mail or email.

(k)     AN APPLICANT OR SOB OWNER/EMPLOYEE SHALL NOT WORK AT ANY SOB DURING THE PENDENCY OF AN APPEAL TO THE HEARING EXAMINER.

## 3.5     DISTRICT COURT APPEALS FOR CLASS 2 SOB PERMITS.

(a)     On final decision by the hearing examiner, the losing party may appeal the decision by filing a petition in a district court in the county with jurisdiction within thirty (30) days after the date of the decision by the hearing examiner.

(b)     Appeals to the district court shall be governed by the substantial evidence rule defined by Section 2001.174 of the Government Code.

(c)     If the Applicant or SOB Owner/Employee appeal to the hearing examiner is successful, he/she may resume employment and may work at a SOB in Harris County during the pendency of an appeal to the district court.

(d)     An Applicant or SOB Owner/Employee may not work at a SOB in Harris County pending an appeal to the district court for denial of a Class 2 SOB Permit.

(e)     An Applicant or SOB Owner/Employee may not work at a SOB in Harris County pending an appeal to the district court for revocation of a Class 2 SOB Permit.

(f)     An Applicant or SOB Owner/Employee can resume employment pending an appeal to the district court for suspension of Class 2 SOB Permit only when the suspension that has been ordered by the hearing examiner has expired.

## 3.6     REAPPLICATION FOR A CLASS 2 SOB PERMIT.

(a)     After the hearing examiner's final ruling of the denial or revocation of a Class 2 SOB Permit, an Applicant(s) may reapply for a Class 2 SOB Permit after the expiration of three hundred and sixty-five (365) days from the date of the hearing examiner's ruling.

(b)     The application will be considered a new application in regard to the timelines and fee established in Subsection 3.1.

### 3.7 RENEWAL OF A CLASS 2 SOB PERMIT.

(a)     A Class 2 SOB Permit may be renewed for the following year starting ninety (90) days before the expiration of the current permit by filing a complete application of a Class 2 SOB Permit and paying the applicable fee set forth in these Regulations.

(b)     A renewal application shall be subject to the same requirements in these Regulations as are required for a Class 2 SOB Permit application. As long as the completed renewal application was submitted within this ninety (90) day period, the previous Class 2 SOB Permit will remain in effect until the SOB Permit Administrator makes a determination in accordance with these Regulations as to whether the Class 2 SOB Permit will be renewed.

### 3.8 CONTENTS OF A CLASS 2 SOB PERMIT.

(a)     A Class 2 SOB Permit is valid for three hundred and sixty-five (365) days.

(b)     When the application process is complete and the Applicant has met all the requirements set forth in these Regulations, the SOB Permit Administrator shall issue the Applicant a Class 2 SOB Permit.

(c)     The Class 2 SOB Permit shall contain the following:

    (1)     The date the Permit was issued;

    (2)     The date the Permit expires;

    (3)     The name of the SOB Owner/Employee;

    (4)     A color photo of the SOB Owner/Employee;

    (5)     The name and physical address of the SOB(s) the SOB Owner/Employee is permitted to work at; and,

    (6)     The signature of the SOB Permit Administrator.

(d)     The SOB Permit Administrator shall keep a signed copy of the Class 2 SOB Permit for the SOB Permit Administrator's records.

## SECTION 4.
## ADULT MOTELS.

### 4.1    DEFINED.

As used in this Subsection:

(a)    An "*Adult Motel*" means a hotel, motel, or similar commercial establishment which:

      (1)    offers accommodations to the public for any form of consideration; provides patrons with closed-circuit television transmissions, cable television transmissions, subscriber programming, any disk, or other physical medium that allows an image to be displayed on a computer or other video screen and any image transmitted to a computer or other video screen by telephone line, cable, satellite transmission, or other method, films, motion pictures, video cassettes, slides, or other photographic reproductions which are characterized by the depiction or description of "specified sexual activities" or "specified anatomical areas"; and has a sign visible from the public right-of-way which advertises the availability of this type of material; and,

      (2)    regularly offers a sleeping room for rent for a period of time that is less than ten (10) hours.

(b)    Evidence that a sleeping room in a hotel, motel, or similar commercial establishment has been rented and vacated two (2) or more times in a period of time that is less than ten (10) hours shall constitute prima facie evidence that the business is an Adult Motel.

### 4.2    CLASS 1 SOB PERMIT REQUIRED.

(a)    It shall be unlawful for a person to operate an Adult Motel in Harris County that has not been issued a valid Class 1 SOB Permit pursuant to these Regulations.

(b)    Pursuant to Section 243.010(b) of the Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(c)    Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

### 4.4    CLASS 2 SOB PERMIT REQUIRED.

(a)    It shall be unlawful for any SOB Owner or Employee to work at, be employed by, and/or provide service to an Adult Motel without being issued a valid Class 2 SOB Permit pursuant to these Regulations.

(b)     Pursuant to Section 243.010(b) of the Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(c)     Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

(d)     A violation of this Subsection shall result in mandatory denial or revocation of an Adult Motel's Class 1 SOB Permit.


## 4.5     CHECK-IN REQUIREMENTS.

(a)     Adult Motels shall not provide lodging to any guest/customer who does not present a valid government issued photo identification confirming the identity of the guest/customer. This requirement extends to all guests/customers, including individuals who intend to lodge in the same room.

(b)     Adult Motels shall make a photocopy of every guest's/customer's valid government issued photo identification and maintain the information for one (1) calendar year. These records shall be organized by the day the guest/customer was provided lodging at the Adult Motel. These records shall be made available to law enforcement upon request.

(c)     Pursuant to Section 243.010(b) of the Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(d)     Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

(e)     A violation of this Subsection may be grounds for denial, revocation, or suspension of an Adult Motel's Class 1 SOB Permit.


## 4.6     APPLICATION OF GENERAL SOB REQUIREMENTS

(a)     The requirements and provisions for Adult Motels are in addition to the requirements in Section 2 of these Regulations.

## SECTION 5.
## ADULT CABARETS.

### 5.1 DEFINED.

As used in this Subsection:

(a)   An *"Adult Cabaret"* means a commercial establishment which has live performances which are characterized by the exposure of any portion of the areola of the breast and intended to provide sexual stimulation or gratification.

### 5.2 CLASS 1 SOB PERMIT REQUIRED.

(a)   It shall be unlawful for a person to operate an Adult Cabaret in Harris County that has not been issued a Class 1 SOB Permit pursuant to these Regulations.

(b)   Pursuant to Section 243.010(b) of the Texas Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(c)   Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

### 5.2 CLASS 2 SOB PERMIT REQUIRED.

(a)   It shall be unlawful for any SOB Owner or Employee to work at, be employed by, and/or provide service to an Adult Cabaret without being issued a Class 2 SOB Permit pursuant to these Regulations.

(b)   Pursuant to Section 243.010(b) of the Texas Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(c)   Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

(d)   A violation of this Subsection shall result in mandatory denial or revocation of an Adult Cabaret's Class 1 SOB Permit.

### 5.3 HOURS OF OPERATION.

(a)   It shall be unlawful for an Adult Cabaret to operate between the hours of 2:00 a.m. and 10:00 a.m.

(b)     Pursuant to Section 243.010(b) of the Texas Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(c)     Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

(d)     Any violation of this Subsection may be grounds for denial, revocation, or suspension of an Adult Cabaret's Class 1 SOB Permit.

## 5.4     PUBLIC RIGHT-OF-WAY.

(a)     It shall be unlawful for an Adult Cabaret to allow a SOB Owner, SOB Employee, or any other person who provides service to an Adult Cabaret to appear in a state of nudity in an area of the Adult Cabaret which can be viewed from the public right-of-way.

(b)     Pursuant to Section 243.010(b) of the Texas Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(c)     Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

(d)     Any violation of this Subsection may be grounds for denial, revocation, or suspension of an Adult Cabaret's Class 1 SOB Permit.

## 5.5     APPLICATION OF GENERAL SOB REQUIREMENTS

(a)     The requirements and provisions for Adult Cabarets are in addition to the requirements in Section 2 of these Regulations.

## SECTION 6.
## ADULT CABARET ENTERTAINERS.

### 6.1   DEFINED

As used in this Subsection:

(a)   An *Adult Cabaret Entertainer* means an employee and/or independent contractor of an Adult Cabaret who offers a service and/or sells, rents, or exhibits devices or other items intended to provide sexual stimulation or sexual gratification.


### 6.2   CLASS 2 SOB PERMIT DISPLAYED.

(a)   Adult Cabaret Entertainers shall at all times display on their person their Class 2 SOB Permit issued to them pursuant to the Regulations while on the premises of an Adult Cabaret.

(b)   Pursuant to Section 243.010(b) of the Texas Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(c)   Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

(d)   A violation of this Subsection may be grounds for denial, revocation, or suspension of an Adult Cabaret Entertainer's Class 2 SOB Permit.


### 6.3   SIX (6) FEET RULE.

(a)   It is prohibited for any Adult Cabaret Entertainer to perform at an Adult Cabaret within six (6) feet of the nearest patron.

(b)   Pursuant to Section 243.010(b) of the Texas Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(c)   Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

(d)   Any violation of this Subsection may be grounds for denial, revocation, or suspension of an Adult Entertainer's Class 2 SOB Permit.

**6.4    PROHIBITED CONDUCT.**

(a)    Adult Cabaret Entertainers are prohibited from:

   (1)    exposing any portions of the pubic region, genitals, vulva, and or anus on the premises of an Adult Cabaret;

   (2)    engaging in sexual intercourse, masturbation, sodomy, oral copulation, flagellation or any other public sexual acts on the premises of an Adult Cabaret;

   (3)    engaging in prostitution, promotion of prostitution, or aggravated promotion of prostitution as defined by the Texas Penal Code;

   (4)    engaging in compelling prostitution as defined by the Texas Penal Code;

   (5)    engaging in trafficking of person(s) as described by Section 20A.02 of the Texas Penal Code; or,

   (6)    engaging in sexual conduct or performance by a child as described by Section 43.25 of the Texas Penal Code.

(b)    Pursuant to Section 243.010(b) of the Texas Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(c)    Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

(d)    Any violation of this Subsection shall result in mandatory denial or revocation of an Adult Entertainer's Class 2 SOB Permit.

## SECTION 7.
## ADULT BOOKSTORES, ADULT THEATERS AND ADULT ARCADES.

**7.1    DEFINED.**

As used in this Subsection:

(a)    *"**Adult Arcades**"* means a commercial business to which the public is permitted or invited to interact with a device as follows:

(1) coin-operated or slug-operated or electronically, electrically, or mechanically controlled still or motion picture machines, projectors, or other image-producing devices are maintained to show images to five (5) or fewer persons per machine at any one time, and where the images so displayed are distinguished or characterized by the depiction or description of "specified sexual activities" or "specified anatomical areas;" or,

(2) a device or object including an anthropomorphic device or object designed for one or more persons to engage in specified sexual activities with the device or object.

(b)    *"**Adult Bookstore**"* means a commercial business to which the public is permitted or invited which, as its principal business purpose, offers for sale or rental for any form of consideration any one (1) or more of the following:

(1)    books, magazines, periodicals, or other printed matter, or photographs, films, motion pictures, video cassettes, or video reproductions, slides, or other visual representations which depict or describe "specified sexual activities" or "specified anatomical areas."

(c)    *"**Adult Theater**"* means a commercial establishment that regularly shows, for any form of consideration, films, motion pictures, video cassettes, slides or similar photographic reproductions which are characterized by the depiction or description of specified sexual activities or specified anatomical areas.

**7.2    CLASS 1 SOB PERMIT REQUIRED.**

(a)    It shall be unlawful for a person to operate an Adult Bookstore, Adult Theater or an Adult Arcade in Harris County that has not been issued a Class 1 SOB Permit pursuant to these Regulations.

(b)    Pursuant to Section 243.010(b) of the Texas Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(c)    Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

### 7.3 CLASS 2 SOB PERMIT REQUIRED.

(a) It shall be unlawful for any Adult Bookstore, Adult Theater or an Adult Arcade SOB Owner, SOB Employee, employee, and/or any other person otherwise offering a service and/or selling, renting, or exhibiting devices or any other items intended to provide sexual stimulation or sexual gratification to work at, be employed by, and/or provide service to an Adult Bookstore or an Adult Arcade without being issued a Class 2 SOB Permit pursuant to the Regulations.

(b) Pursuant to Section 243.010(b) of the Texas Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(c) Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

(d) A violation of this Subsection shall result in mandatory denial or revocation of an Adult Bookstore, Adult Theater or an Adult Arcade's Class 1 SOB Permit

### 7.4 HOURS OF OPERATION.

(a) It shall be unlawful for an Adult Bookstore, Adult Theater or an Adult Arcade to operate between the hours of 2 a.m. and 10:00 a.m.

(b) Pursuant to Section 243.010(b) of the Texas Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(c) Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

(d) Any violation of this Subsection may be grounds for denial, revocation, or suspension of an Adult Bookstore's, Adult Theater's or an Adult Arcade's Class 1 SOB Permit.

### 7.5 VIEWING ROOMS/VIEWING BOOTHS

(a) Viewing rooms and/or viewing booths within an Adult Bookstore or an Adult Arcade shall be occupied by no more than one (1) person at any time.

(b) Viewing rooms and/or viewing booths within an Adult Bookstore or an Adult Arcade shall not be locked at any time.

(c) Viewing room(s) and/or viewing booth(s) within an Adult Bookstore or an Adult Arcade shall not have holes and/or openings between adjacent and/or adjoining viewing rooms and/or viewing booths.

(d)     Live Entertainment is prohibited in any viewing room and/or viewing booth within an Adult Bookstore or an Adult Arcade.

(e)     Pursuant to Section 243.010(b) of the Texas Local Government Code, a person commits a Class A misdemeanor offense if the person operates in violation of this Subsection.

(f)     Pursuant to Section 243.010(a) of the Texas Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Subsection.

(g)     Any violation of this Subsection may be grounds for denial, revocation or suspension of an Adult Bookstore or an Adult Arcade's Class 1 SOB Permit.

## 7.6   APPLICATION OF GENERAL SOB REQUIREMENTS

(a)     The requirements and provisions for Adult Bookstores, Adult Theaters and Adult Arcades are in addition to the requirements in Section 2 of these Regulations.

## SECTION 8.
## MASSAGE PARLORS

**8.1    AUTHORITY TO REGULATE.**

(a)    The regulations on Massage Parlors are promulgated pursuant to and in conformity with Chapter 234 of the Local Government Code, as amended.

(b)    It is the purpose of the Harris County Commissioners Court to exercise its police power, as established under Chapter 234 of the Local Government Code, to prohibit Massage Parlors in order to promote and protect the health, safety, and general welfare of the citizens of Unincorporated Harris County, and to prohibit business activities which merely serve as a front for criminal activities, including but not limited to, prostitution and the promotion of prostitution.

(c)    The regulations on Massage Parlors have neither the intent nor the effect of imposing limits or restrictions on the content of any communicative material, including sexually oriented material.

(d)    The regulations on Massage Parlors have neither the intent nor the effect of imposing limits or restrictions on adult's access to sexually oriented material protected by the First Amendment.

(e)    These Regulations do not legalize anything prohibited under the Texas Penal Code and any other law(s) or regulation(s).

**8.2    AREAS COVERED BY THESE REGULATIONS.**

(a)    These regulations apply to Massage Parlors located in unincorporated area of Harris County.

**8.3    DEFINITIONS.**

(a)    *"Harris County"* means the parts of Harris County, Texas outside the corporate limits of a municipality.

(b)    *"Massage Parlor"* means a business establishment that purports to provide services and that allows:

    (1)    a nude person to provide massage service to a customer;

    (2)    a person to engage in sexual contact for compensation; or,

---

(3)    a person to provide massage services in clothing intended to arouse or gratify the sexual desire of any person.

(c)    "*Nude*" means a person who is:

(1)    entirely unclothed; or,

(2)    clothed in a manner that leave uncovered or visible through less than fully opaque clothing any portion of the breasts below the top of the areola of the breasts or any portion of the genitals or buttocks..

(d)    "*Sexual Contact*" means:

(1)    any touching of any part of the genitalia or anus;

(2)    any touching of the breasts of a female without the written consent of the female;

(3)    any offer or agreement to engage in any activity described in Paragraph (1) or (2);

(4)    kissing without the consent of both persons;

(5)    deviate sexual intercourse, sexual contact, sexual intercourse, indecent exposure, sex assault, prostitution, and promotions of prostitution as described in Chapter 21, 22, and 43 of the Texas Penal Code, or any offer or agreement to engage in such activities;

(6)    any behavior, gesture, or expression that may reasonably be interpreted as inappropriately seductive or sexual; or,

(7)    inappropriate sexual comments about or to a client, including sexual comments about a person's body.

## 8.4    MASSAGE PARLORS STRICTLY PROHIBITED

(a)    It shall be unlawful for any person, individual, business, company, corporation, or other entity to operate a Massage Parlor in Harris County.

(b)    Pursuant to section 234.105 of the Local Government Code, a person commits an offense if the person intentionally or knowingly operates a Massage Parlor in Harris County. An offense under this section is a Class A misdemeanor.

(c)    Pursuant to section 234.104 of the Local Government Code, a person who operate a Massage Parlor in Harris County is liable to the county for a civil penalty of not more than $1,000 for each violation. Each day a violation continues is considered a separate violation

for purposes of assessing the civil penalty. Harris County may bring suit in district court to recover a civil penalty authorized by these Regulations.

(d)     Pursuant to section 234.103 of the Local Government Code, Harris County may sue in district court for an injunction to prohibit the violation of this Section or Subsection against any person or entity who maintains, owns, uses, is a party to the use, or who owns the real property where the violation or threatened violation of this Subsection is occurring and/or has occurred.

## SECTION 9.
## ADDITIONAL REGULATIONS.

**9.1     SEVERANCE CLAUSE.**

The Commissioners Court hereby declares the adoption of these Regulations and each separate part hereof.  Any part of these Regulations held to be invalid shall not affect the validity of the remaining portions.

**9.2     CUMULATIVE EFFECT.**

Authority under these Regulations is cumulative of other authority that Harris County and its incorporated municipalities have to regulate SOBs and does not limit that authority.

CAUSE NO. 2010-19522

| | | |
|---|---|---|
| THE CITY OF HOUSTON, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ICE EMBASSY, INC., ET AL., | § | |
| | § | |
| *Defendants.* | § | 152ND JUDICIAL DISTRICT |

**FILED**
Chris Daniel
District Clerk

DEC 13 2013

Harris County, Texas

Deputy

## CONSENT DECREE

Today this Court considered the above-titled and numbered cause. RCI Dining Services (Imperial Valley), Inc. d/b/a Jaguars, RCI Dining Services (Hobby) Inc. 9009 Airport, Trumps, Inc. d/b/a Club Onyx, RCI Entertainment (Texas), Inc. d/b/a/ XTC North, Mangum Restaurant Corporation d/b/a Sunset Strip, Texas Richmond Corporation d/b/a The Men's Club, SSD Enterprises, Inc. d/b/a Ritz Houston; Duncan Burch, Inc. d/b/a Michael's International; MD II Entertainment, Inc. d/b/a Chicas Locas, ICE Embassy, Inc. d/b/a Colorado Bar & Grill, A.H.D. Houston, Inc. d/b/a Centerfolds, D.N.W. Houston, Inc. d/b/a Gold Cup, D WG FM, Inc. d/b/a Splendor, D. Rankin, Inc. d/b/a Trophy Club, D. Houston, Inc. d/b/a Treasures, W.L. York, Inc. d/b/a Cover Girls, and the City of Houston are parties to this Consent Decree. All parties appeared through their attorneys of record, made the following stipulations, and agreed not to contest this Consent Decree.

It is stipulated that the parties have compromised and settled all claims stated by Plaintiff, Defendants or Plaintiff-Intervenors in this lawsuit. Effective the 27th day of November 2013, the parties executed a Settlement Agreement, the terms of which the parties agreed to be judicially enforceable by this Consent Decree. It is therefore

ORDERED that the Settlement Agreement executed by the parties to this lawsuit and

Unofficial Copy Office of Marilyn Burgess District Clerk

-5-

EXHIBIT
C

attached to this Consent Decree as <u>Exhibit A</u> is incorporated into a Consent Decree as fully set forth verbatim. It is further

ORDERED that the parties fulfill each and all of their obligations as set forth in the Settlement Agreement. It is further

ORDERED that all costs of court expended or incurred in this lawsuit shall be the sole responsibility of the party incurring them.

All relief not expressly granted in this Consent Decree is denied.

This is a final judgment.

Signed _____DEC 1 3 2013_____, 2013.

12·13·13

_____
JUDGE PRESIDING

**AGREED AS TO FORM AND SUBSTANCE:**

_____
David M. Feldman
City Attorney
City of Houston Legal Department
900 Bagby Street
Houston, Texas 77002
Telephone: (832) 393-6454
Facsimile: (832) 393-6259

Attorney for the City of Houston

Unofficial Copy Office of Marilyn Burgess District Clerk

_____

Casey T. Wallace
Benjamin W. Allen
JOHNSON, TRENT, WEST & TAYLOR, L.L.P.
919 Milam, Suite 1700
Houston, Texas 77002
Telephone: (713) 860-0517
Facsimile: (713) 222-2226

Attorneys for A.H.D. Houston, Inc. d/b/a
Centerfolds, D N.W. Houston, Inc. d/b/a
Gold Cup, D WG FM, Inc. d/b/a Splendor,
D. Rankin, Inc. d/b/a Trophy Club,
D. Houston, Inc. d/b/a Treasures, and
W.L. York, Inc. d/b/a Cover Girls.

_____

James V. Pianelli
PIANELLI LAW FIRM
112 East 4th Street
Houston, Texas 77007
Telephone: (713) 864-3333
Facsimile: (800) 637-1955

_____

John H. Weston
G. Randall Garrou
WESTON, GARROU & MOONEY
12121 Wilshire Boulevard, Suite 525
Los Angeles, California 90025
Telephone: (310) 442-0072

Attorneys for RCI Dining Services (Imperial Valley), Inc.
d/b/a Jaguars; RCI Dining Services (Hobby) Inc,, 9009 Airport;
Trumps, Inc. d/b/a Club Onyx; RCI Entertainment,(Texas)
Inc. d/b/a XTC North; Mangum Restaurant Corporation d/b/a Sunset
Strip; Texas Richmond Corporation d/b/a The Men's
Club; SSD Enterprises, Inc. d/b/a Ritz Houston;
Duncan Burch, Inc. d/b/a Michael's International; MD II
Entertainment, Inc., d/b/a Chicas Locas; and
ICE Embassy, Inc. d/b/a Colorado Bar & Grill

275227.1-12042013

## SETTLEMENT AGREEMENT

This Settlement Agreement (hereafter "Agreement") is entered into by and between the City of Houston ("City") and the following sixteen entities (individually referred to as a "Club" and collectively as the "Clubs"):

1. RCI Dining Services (Hobby) Inc.
   9009 Airport, Houston, Texas;

2. RCI Dining Services (Imperial Valley) Inc. d/b/a Jaguars
   410 N. Sam Houston Parkway, Houston, Texas;

3. Trumps Inc. d/b/a Club Onyx
   3113 Bering, Houston, Texas;

4. RCI Entertainment (Texas) Inc. d/b/a XTC North
   11415 North Freeway, Houston, Texas;

5. Mangum Restaurant Group, Inc. d/b/a Sunset Strip
   2425 Mangum Road, Houston, Texas;

6. Texas Richmond Corporation d/b/a The Men's Club
   3303 Sage Road, Houston, Texas;

7. SSD Enterprises, Inc. d/b/a Ritz Houston
   10520 Gulf Freeway, Houston, Texas;

8. Duncan Burch, Inc. d/b/a Michael's International
   6440 Southwest Freeway, Houston, Texas;

9. ICE Embassy, Inc. d/b/a Colorado Bar & Grill
   6710 Southwest Freeway, Houston, Texas;

10. D Houston, Inc. d/b/a Treasures
    5647 Westheimer, Houston, Texas;

11. A.H.D. Houston, Inc. d/b/a Centerfolds
    6166 Richmond Ave., Houston, Texas;

12. D.N.W. Houston, Inc. d/b/a Gold Cup
    12747 Northwest Freeway, Houston, Texas;

1                    Exhibit A to Consent Decree

13.   D WG FM, Inc. d/b/a Splendor
      7440 W. Greens Road, Houston, Texas;

14.   D. Rankin, Inc. d/b/a Trophy Club
      1050 Rankin Road, Houston, Texas;

15.   W. L. York, Inc. d/b/a Cover Girls
      10310 West Little York Road, Houston, Texas; and

16.   MD II Entertainment, Inc. d/b/a Chicas Locas
      8100 North Freeway, Houston, Texas

All parties to this Agreement shall collectively be known as the "Parties."

WHEREAS, the Clubs brought suit or have intervened in the suit against the City in

Cause No. 2012-60353; *Hospitality Executives of Houston, Inc. v. The City of Houston*; in the

269th Judicial District Court of Harris County, Texas (the "S.A.F.E. Suit");

WHEREAS, the City brought suit against certain of the Clubs in Cause No. 2010-19512;

*The City of Houston v. A.H.D. Houston, Inc., et al.*; in the 295th Judicial District Court of Harris

County, Texas (the "Stipulation Suit");

WHEREAS, the City brought suit against certain of the Clubs in Cause No. 2010-19522;

*The City of Houston v. ICE Embassy, Inc., et al.*; in the 152nd Judicial District Court of Harris

County, Texas (the "Stipulation Suit II");

WHEREAS, bona fide disputes and controversies exist between the Clubs on the one

hand, and the City on the other hand, both as to liability and damages, if any, by reason of such

disputes and controversies, and without making any admission of liability or damages, the Clubs

and the City desire to compromise and settle all causes of action pending between the Clubs and

the City in the S.A.F.E. Suit, the Stipulation Suit and the Stipulation Suit II; and

WHEREAS, during the pendency of the aforementioned litigation and in the course of

ongoing settlement discussions, the Clubs and the City have recognized their common interest in

combating human trafficking, and also that the public interest would be well served by the

2

Parties working together to combat human trafficking, and while the City currently expends law enforcement resources in the war against human trafficking, the Clubs likewise have an interest in combating this scourge – and have determined they can do so by engaging in certain preventive measures and contributing sums to fund increased police activity aimed at combating human trafficking, and, toward that end, the Clubs will adopt certain measures and contribute to a Human Trafficking Abatement Fund as described in Section 4 below.

ACCORDINGLY, in consideration of the above recitals and the consideration listed below, the Parties agree as follows:

1.  **Framework and Purpose.**  The City has enacted municipal ordinances regulating adult entertainment establishments.  A component of that complex regulatory framework has been directed towards human trafficking.  The City desires to expand its efforts against human trafficking and to increase the number of law enforcement personnel focusing on anti-trafficking efforts.  Toward that end, the City has enlisted the Clubs which are Parties to this Agreement to provide assistance in the effort to combat human trafficking within the City.

In support of the City's increased law enforcement efforts against trafficking, the Clubs which are Parties to this Agreement will contribute to a Human Trafficking Abatement Fund established to assist the Houston Police Department in creating a squad dedicated to combating human trafficking in the City.

2.  **Consent Decrees and Ongoing Enforceability.**  This Agreement shall be in full force and effect and subject to judicial enforcement and injunctive relief upon the effective date. The Parties desire that a Consent Decree(s) consistent with the terms herein be issued by a Harris County District Court.  In the interest of judicial efficiency, the Parties will seek to consolidate their claims and causes of action in the three lawsuits identified above into one Court for the

3

entry of a Consent Decree. The Parties shall execute the Consent Decree(s), in the forms contained in Exhibits A, B, and C to this Agreement as to the S.A.F.E. Suit, the Stipulation Suit, and the Stipulation Suit II, respectively, within thirty (30) days of the effective date of this Agreement. The executed Consent Decrees shall be held in trust by Casey Wallace and shall be filed in the appropriate court(s) at a time agreed to by the Parties but in no event later than December 31, 2013. All courts in which the Parties have filed a Consent Decree shall have jurisdiction to enforce the Consent Decree and the Agreement. In the event that the Consent Decree(s) does not receive judicial approval, this Agreement remains in full force and effect and subject to enforcement by injunctive relief.

3. **Mutual Release.** The City and the Clubs, including their successors and assigns, and all agents, servants, and employees, and all persons, natural or corporate, in privity with them, or any of them, mutually RELEASE, ACQUIT AND FOREVER DISCHARGE one another, including their successors, assigns and all agents, servants, and employees, and all persons, natural or corporate, in privity with them, from any and all claims or causes of action of any kind whatsoever, at common law, statutory or otherwise, known or unknown, accrued or that may accrue, past, present, or future, that the Parties have or might have which in any way relate to the facts alleged in, or are in any way connected to, the S.A.F.E. Suit, the Stipulation Suit, or the Stipulation Suit II, including but not limited to all claims that were or could have been asserted in those suits.

4. **Human Trafficking Abatement Contributions.** Each Club that is a party to this Agreement shall pay a sum upon the effective date of this Agreement and annually thereafter for the duration of this Agreement, into a Human Trafficking Abatement Fund. These payments shall be referred to as "Human Trafficking Abatement Contributions." The City agrees to use

the monies in the Human Trafficking Abatement Fund exclusively to investigate and combat human trafficking in and around the City of Houston. Monies in the Human Trafficking Abatement Fund shall not be used for general law enforcement or vice investigation at the participating Clubs. Notwithstanding the limitation on the Human Trafficking Abatement Fund, nothing in this Agreement is intended to nor shall impede the Houston Police Department Vice Division's investigation and enforcement of the law at any location in the City of Houston. Each Club's annual Human Trafficking Abatement Contribution shall be:

  a.  An equal amount for each Club participating in the Agreement which aggregately totals $800,000; plus

  b.  1.1% of the contributing Club's gross liquor, beer, and wine sales, plus door fees collected during recognized happy hours, for the preceding calendar year as reported by the Texas State Comptroller.

The City of Houston's fiscal year runs July 1 through June 30. Except for the first year, payment shall be made on June 1 of each year, calculated on the basis of each Club's sales for the previous calendar year as described above. The agreed upon first year's contribution of 50% shall be due upon the effective date of this Agreement based upon the Total Contribution amount reflected below:

Unofficial Copy Office of Harris County District Clerk

| Club | Gross Liquor Sales for 2012 | Contribution |
|---|---|---|
| Treasures | $4,124,205.00 | $95,366.26 |
| The Men's Club | $3,436,205.00 | $87,798.26 |
| Michael's International | $2,496,261.00 | $77,458.87 |
| Centerfolds | $2,358,348.00 | $75,941.83 |
| Ritz Houston | $2,311,197.00 | $75,423.17 |
| Splendor | $2,120,242.00 | $72,322.66 |
| Gold Cup | $1,735,297.00 | $69,088.27 |
| Club Onyx | $1,641,589.00 | $68,057.48 |
| Colorado Bar & Grill | $1,486,280.00 | $66,349.08 |
| Cover Girls | $1,349,471.00 | $64,844.18 |
| Sunset Strip | $829,969.00 | $59,129.66 |
| Rick's North | $720,115.00 | $57,921.27 |
| Rick's Sports Cabaret | $0.00 | $50,000.00 |
| Trophy Club | $0.00 | $50,000.00 |
| XTC North | $0.00 | $50,000.00 |
| Chicas Locas | $0.00 | $50,000.00 |
| **Total** | **$24,609,179.00** | **$1,070,700.99** |

In no event shall the total amount of contribution set forth above be decreased for ensuing fiscal years, regardless of any reduction in the number of Clubs participating in this Agreement. Any potential shortfall in the total required contribution from the Clubs in the aggregate in any year caused by any reason shall not reduce the Clubs' total required contribution to the Human Trafficking Abatement Fund but shall be made up by equal pro-rata contributions from all Clubs totaling the amount of the shortfall and payable along with each Club's ordinary required amount on or before June 1st of the relevant year. Notwithstanding the foregoing, no individual Club shall be required to pay more than $135,000 in total contribution in any fiscal year, except to the extent that increases in its annual Gross Liquor Sales mandate a greater annual contribution pursuant to Section 4(b) of this Agreement.

     5.   **Policies.**  In furtherance of their efforts to prevent human trafficking, the Clubs additionally agree to formally institute the following policies:

- The Clubs will not knowingly allow any person under the age of 18 years to enter their establishments during hours of operation.

- The Clubs will not knowingly employ, hire or contract for the services of an entertainer or dancer who appears to be accompanied by another person who speaks for her, holds her identification, collects her pay for "safekeeping" or appears to exercise control, force, or coercion over the person. The Clubs will not knowingly employ, hire, or contract for the services of a person for whom a background check reveals a conviction within sixty (60) months for delivery, possession, manufacture, or use of a controlled substance in violation of Chapter 481 of the Health and Safety Code, or prostitution, promotion of prostitution, aggravated promotion of prostitution or compelling prostitution.

- No Club will allow any operator or manager to permit any entertainer to provide any entertainment to any customer in any private or separate area on its premises which is blocked or obscured by any wall, door, curtain, blind system or other barrier. The City recognizes that the Clubs may operate areas within the establishments commonly referred to as VIP Rooms or Champagne Rooms, but no Club will operate a private room or private rooms of any kind or description. If a Club chooses to operate a VIP Room or Champagne Room, it must not be blocked or obscured by any wall, door, curtain, blind system or other barrier regardless of whether entry to such separate area is by invitation, lease, admission fee, club membership fee or any form of gratuity or consideration. Seating areas within a VIP room or Champagne room may be divided by a partition no more than 36" in height and 36" in length, on its side, but may have no barrier of any kind to its front, by partition or other barrier, or by furniture configuration of any kind so that any activity taking place in the seating area must be completely visible to any person facing the front of such seating area and any wall facing such seating area may be no closer than ten (10) feet to the area, with the space between the wall and the seating area freely accessible to patrons and Club personnel. Any private rooms or private areas in existence in any of the Clubs at the time of the effective date of this Agreement, and which are identified in Addendum "A" to this Agreement, shall cease operation, upon the effective date of this agreement, and shall be remodeled in accordance with this paragraph within 120 days of the effective date of this Agreement.

- No Club shall allow the merchandise or activities of the Club to be visible from any point outside the Club. Exterior signage shall be in accordance with the provisions of this Agreement. Exterior portions of said premises shall be painted and maintained in a color scheme consistent with the structures of the surrounding neighborhood that does not provide any obvious characteristics of or references to an adult business establishment.

- The premises of each Club shall be equipped with lighting fixtures of sufficient intensity to illuminate every place to which customers are permitted access at an illumination of not less than one (1.0) foot-candle as measured at four feet above

floor level. Such lighting shall be utilized during all hours of Club operations, except that during times of on-stage dance entertainment the lighting that must be used in the Club shall be no less than one lux.

- The exterior of the Club and area surrounding the Club shall be inspected by Club personnel daily for abatement of graffiti and litter.

6. **Response.** Knowledge by a manager or higher Club official of evidence of delivery, possession, manufacture, or use of a controlled substance in violation of Chapter 481 of the Health and Safety Code, or prostitution, promotion of prostitution, aggravated promotion of prostitution, compelling prostitution, public lewdness, or indecent exposure on Club premises by an independent contractor or employee of a Club will result in the offender's immediate suspension or termination. Any individual convicted of delivery, possession, manufacture, or use of a controlled substance in violation of Chapter 481 of the Health and Safety Code, or prostitution, promotion of prostitution, aggravated promotion of prostitution, compelling prostitution, public lewdness, or indecent exposure while at premises operated by a Club shall be permanently banned from working for any Club who is a party to this Agreement.

7. **Reporting.** In the event any illegal conduct described in the preceding paragraph is observed by or reported to a manager of a Club, it shall be reported to higher management, and the Club where the activity occurred shall be required to take remedial measures to ensure the activity is not repeated, including, but not limited to, suspension or termination of the offender.

Each Club shall submit a written report ("Report") to the City Attorney's Office detailing any remedial action taken in response to any illegal activity observed and/or reported to have occurred on Club premises within 72-hours of the action taken. No Report, in whole or in part, may be (a) used or admitted into evidence in any proceeding pursuant to Chapter 125 of the Texas Civil Practice & Remedies Code against any Club, (b) provided to any other governmental entity for any purpose (except as required by law), (c) used as evidence that the reporting Club

8

materially breached the Agreement, or (d) used against the reporting Club for any purpose other than for impeachment purposes or to rebut a Club's denial of illegal activities established by evidence other than through a Report.

8. **Signs.** The Clubs agree not to erect, construct, or maintain any advertising sign beyond that which currently exists at the Club locations. In the event that any such existing signage is damaged or destroyed, a Club may repair the damage or erect a replacement sign that duplicates that which was damaged or destroyed. With respect to Clubs impacted by the expansion of US Highway 290 (Sunset Strip and Gold Cup), these impacted Clubs shall be allowed to erect outdoor signs in conformance with the Houston Code of Ordinances excluding those provisions which establish restrictions on sexually oriented businesses, but which are consistent with signage that currently exists at the nearest participating Club.

9. **Security.** Each Club agrees to have in its interior premises no fewer managers than the staffing levels identified in Addendum B to this Agreement, and, in addition, at least one certified and licensed security guard shall be on duty from 6:00 p.m. until one-half hour after the Club's closing to provide security for the Club's exterior premises.

10. **Decision Makers.** Each Club agrees to designate a responsible representative and provide contact information to the City Attorney for prompt receipt of information or concerns and serve as an ongoing liaison between the respective Parties.

11. **Human Trafficking Awareness.** All Club employees shall be required to take human trafficking awareness training annually. Any entertainer who works at a Club after the effective date of this Agreement shall be immediately provided with materials regarding human trafficking awareness and furnished a briefing on human trafficking awareness issues within fourteen days of executing an independent contractor agreement with the Club. Each Club will

9

use best efforts consistent with the work status of each entertainer to encourage the participation by independent contractors and entertainers in awareness training. The Clubs shall post a sign in the facility that addresses human trafficking awareness with a hotline number(s) prominently displayed for help and assistance which includes both a Club contact and the name and contact information of an attorney employed by the Club to offer additional assistance. Each Club will participate in the Club Operators Against Sex Trafficking ("COAST") program.

12. **Certain Provisions of Municipal Ordinances.** Clubs that were in existence as of the adoption of the City of Houston Code of Ordinances number 97-75, or who have secured a location that would qualify for a Sexually Oriented Business Permit or have subsequently secured a valid Sexually Oriented Business Permit, shall be permitted to remain in the same location (and shall enjoy the benefits and be subject to the burdens of this Agreement) so long as they are Parties to this Agreement. Those Parties are not obligated to pay the fee required under Section 28-322 of the City of Houston Code of Ordinances, nor obtain a permit under Section 28-122 of the City of Houston Code of Ordinances, nor are persons required to obtain permits as managers and/or entertainers under Section 28-253 for their labor at the premises of the Clubs. In addition, it is expressly understood and agreed that the entertainers who perform in the Clubs may perform what is commonly referred to as lap dances or table dances, and that both the Clubs and the entertainers who perform in the Clubs shall not be required to comply with Section 28-258(a) and (b) of the City of Houston Code of Ordinances, but in no event shall any act of public lewdness or indecent exposure be permitted.

Public lewdness as defined by Chapter 21 of the Texas Penal Code includes:

(a)     an act of sexual intercourse;

(b)     an act of deviate sexual intercourse; or

10

(c)    an act of sexual contact.

For purposes of application of Section 14 of this Agreement, any incidental contact or touching that occurs in connection with what is commonly referred to as a lap dance or table dance may be presumed to be without intent to arouse or gratify the sexual desire of any person.

Indecent exposure as defined by Chapter 21 of the Texas Penal Code includes:

(a)    exposure of the anus or any part of the genitals with intent to arouse or gratify the sexual desire of any person; and

(b)    is reckless about whether another is present who will be offended or alarmed by the act.

Notwithstanding the definitions in Chapter 28 of the City of Houston Code of Ordinances, including the definition of "Enterprise" and "Specified Anatomical Areas," it is expressly understood and agreed that the entertainers who perform in the TABC licensed Clubs may entertain while topless and wearing what is commonly referred to as a G-string, or other form of dress, as was permitted prior to the adoption of the Ordinance. Similarly, the entertainers who perform in non-TABC licensed Clubs may be attired as was permitted/customary at those Clubs prior to the adoption of the Ordinance.

**13.    Industry Prequalification.** The Clubs shall verify identity, appropriate age, and immigration status of employees, entertainers, and independent contractors. Each employee, entertainer, and independent contractor who works at a Club included in this Agreement shall be subjected to a criminal background check. Information gathered as part of this internal pre-qualification process shall be maintained by the Club and available for inspection by the City upon request.

**14.    Materiality of Breach.** A Club will be deemed to have materially breached the Agreement if and only if:

11

a.  it fails to make Human Trafficking Abatement Contributions pursuant to Section 4 of this Agreement;

b.  it operates private room(s) or private areas in contravention of Section 5 of this Agreement;

c.  any of the following activities, in the aggregate occur at the Club four (4) or more times in a three month period:

- delivery, possession, manufacture, or use of a controlled substance in violation of Chapter 481 of the Health and Safety Code; or

- public lewdness, indecent exposure, engaging in sexual conduct for a fee, promotion of prostitution, aggravated promotion of prostitution or compelling prostitution.

- with respect to incidents of possession of a controlled substance, by a patron, in violation of Chapter 481 of the Health and Safety Code, public lewdness or indecent exposure, if a Club demonstrates that it took documented, pro-active steps to prevent and abate the occurrence of any such activities as alleged as part of a Material Breach, such step(s) shall be material to whether such activities should count for purposes of determining Material Breach;

d.  it fails to terminate and permanently ban an individual the Club knows to have been convicted of possession, manufacture, or use of a controlled substance in violation of Chapter 481 of the Health and Safety Code, or prostitution, promotion of prostitution, aggravated promotion of prostitution or compelling prostitution while at premises operated by a Club.

15.  **Remedy for Breach.**  In the event a Club is found to have Materially Breached the Agreement as provided in Section 14 of this Agreement, the following shall apply:

a.  Should a Club fail to timely remit the sum it is required to pay under Section 4 of this Agreement, the City shall give written notice of the deficiency to the breaching Club, and the Club shall have 10 days within which to pay the deficiency. If the Club does not pay the full amount within 10 days of the City's notice, the City, in its sole discretion, may suspend the Club's benefits under Section 12 of this Agreement until such time as the Club pays the delinquent sum plus 10 percent interest *per annum* on the deficiency from the original due date. If the Club does not cure the deficiency within 30 days of being suspended, hereunder, the City, in its sole discretion, may revoke the Club's participation in this Agreement pursuant to Section 16 of this Agreement.

b.   Should a Club maintain one or more "private rooms" (deemed "private" by constructively creating a private room by blocking admission to others in a specific area thereby creating a barrier) or "private areas" by which actions are hidden from view and/or by virtue of a barrier in violation of Section 5 of this Agreement, the City shall give written notice of violation including a five day notice to cure ("Notice") the alleged violation. The Notice shall set forth the alleged violation in sufficient detail to permit the recipient Club to fairly evaluate it. The recipient Club may either cure or contest (by submitting a written explanation to the City of why it believes it is not in violation) within the allotted five day "Cure Period." If timely contested, the matter will be dealt with as set forth in Section 16 of this Agreement. If the Club's contest is resolved adversely to the Club, the Club shall have five working days after the adverse determination to cure the subject violation. If resolved in favor of the Club, or if timely cured without contest, the matter shall result in no penalty. If a second violation (after a prior adverse determination or a non-contested violation) occurs, the City, in its sole discretion, may revoke the participation of the Club in this Agreement pursuant to Section 18 of this Agreement.

c.   Should a Club be determined to be in Material Breach of Section 14(c) of this Agreement, the Club shall, within ten (10) days of notice of the breach, or if arbitration is sought pursuant to Section 16, the arbitrator's final notice of an adverse resolution against the Club, subject all managers, employees, and shall use its best efforts to subject its entertainers to a retraining program jointly presented by industry and City of Houston representatives that will address standards of conduct, legal obligations, permissible activities, and policies to prevent future occurrences of material breach ("Retraining") and pay a fine in the amount of 20% of its Annual Human Trafficking Abatement Contribution to the Human Trafficking Abatement Fund contemplated in Section 4 of this Agreement. In the event a Club is determined to have Materially Breached the Agreement a second time within six months of the completion of Retraining, then that Club shall within ten (10) days of notice of the breach, or if arbitration is sought pursuant to Section 16, the arbitrator's final notice of an adverse resolution against the Club, pay a fine in the amount of 40% of its annual Human Trafficking Abatement Contribution to the Human Trafficking Abatement Fund contemplated in Section 4 of this Agreement, and the Club's benefits under this Agreement shall be suspended for 30 days. In the event a Club is determined to have Materially Breached the Agreement a third time within six months of the date of completion of suspension for a second Material Breach, or if a Club fails to fulfill its remedial obligations following a first or second Material Breach, the City, in its sole discretion, and after having given ten (10) days written notice, may revoke the Club's benefits under this Agreement. In the event of a suspension or revocation pursuant to this Section 15, the Club shall have no right to seek reimbursement for contributions to the Human Trafficking Abatement Fund. Solely for purposes of Sections 14 and 15 of this Agreement, all violations known to the City and which the City might deem to be components of a Material Breach (under Section 14), must be included within its notice of Material Breach

to a Club, and collectively treated as a single Material Breach within that relevant time period, any violations not included in the Notice may not subsequently be utilized as components of a Material Breach.

16. **Conflict Resolution Regarding Whether a Club Materially Breached Pursuant to Section 14 and Generally.** Should the City contend that a Club has Materially Breached this Agreement, the City shall give written notice of the perceived violation to the Club asserted to be in breach. Such notice shall set forth the alleged violation(s) in sufficient detail so the Club asserted to be in breach may fairly evaluate, investigate, assess and be fully apprised of the perceived violation(s) including dates, times, and, if known, the alleged violator(s). Such notice shall be delivered as provided below. Counsel for the Parties shall then confer in a good faith effort to resolve the matter. Any unresolved disputes shall be subject to the dispute resolution procedures of this Section.

Request for arbitration must be made within ten (10) days of the notice of violation, during which time the Parties shall meet and confer in a good faith attempt to resolve the dispute. The arbitration hearing must be held within 30 days of the request for arbitration and the decision must be issued within 15 days of the close of the hearing. If delay of the decision is the result of a request for continuance, failure to meet a deadline imposed by the Arbitrator or other cause attributable to the Club, failure to issue a decision within 15 days of the close of the hearing may, in the City's sole discretion, be treated as a decision in the City's favor. Each Party shall bear its own attorney's fees but the cost of arbitration shall be borne by the non-prevailing Party. The Parties agree and covenant that any and all disputes regarding the determination of whether a Club Materially Breached this Agreement shall be submitted to Alvin Zimmerman for final and binding arbitration. In the event Mr. Zimmerman is unavailable or unable to participate in the

14

binding arbitration, it shall be heard by an arbitrator mutually agreed to by the Parties and if the Parties are unable to agree on the choice of an arbitrator, it shall be submitted to Nancy Huston.

A Club may submit any dispute arising under this Agreement that does not involve a Material Breach to mediation. A Club wishing to do so shall give a written notice of the issue to be resolved in sufficient detail so the other Party(ies) may fairly evaluate, investigate, assess and be fully apprised of the dispute. Counsel for the Parties shall then confer in a good faith effort to resolve the matter. In the event of unresolved disputes, the Parties may seek binding mediation to resolve the dispute(s). Binding mediation shall be submitted to Alvin Zimmerman. In the event Mr. Zimmerman is unavailable or unable to participate in the binding mediation, it shall be heard by a mediator mutually agreed to by the Parties and if the Parties are unable to agree on the choice of a mediator, it shall be submitted to Nancy Huston. Each Party shall bear its own attorney's fees but the mediator's fee shall be borne by the Party requesting same.

Any notices or other communications concerning this Agreement shall be delivered by Certified Mail, Return Receipt Requested, as follows:

To:     RCI Entertainment, Inc. d/b/a Rick's Sports Cabaret
        c/o Mr. James Pianelli
        The Civil Justice Center
        112 East 4th Street
        Houston, Texas 77007-2502
        and
        c/o Mr. John H. Weston
        Weston, Garrou & Mooney
        12121 Wilshire Blvd., Suite 525
        Los Angeles, CA 90025

To:     RCI Entertainment, Inc. d/b/a Rick's Cabaret North
        c/o Mr. James Pianelli
        The Civil Justice Center
        112 East 4th Street
        Houston, Texas 77007-2502
        and
        c/o Mr. John H. Weston
        Weston, Garrou & Mooney
        12121 Wilshire Blvd., Suite 525
        Los Angeles, CA 90025

To:     RCI Entertainment, Inc. d/b/a Club Onyx
        c/o Mr. James Pianelli
        The Civil Justice Center
        112 East 4th Street
        Houston, Texas 77007-2502
        and
        c/o Mr. John H. Weston
        Weston, Garrou & Mooney
        12121 Wilshire Blvd., Suite 525
        Los Angeles, CA 90025

To:     RCI Entertainment, Inc. d/b/a XTC North
        c/o Mr. James Pianelli
        The Civil Justice Center
        112 East 4th Street
        Houston, Texas 77007-2502
        and
        c/o Mr. John H. Weston
        Weston, Garrou & Mooney
        12121 Wilshire Blvd., Suite 525
        Los Angeles, CA 90025

To:     Mangum Restaurant Group, Inc. d/b/a Sunset Strip
        c/o Mr. James Pianelli
        The Civil Justice Center
        112 East 4th Street
        Houston, Texas 77007-2502
        and
        c/o Mr. John H. Weston
        Weston, Garrou & Mooney
        12121 Wilshire Blvd., Suite 525
        Los Angeles, CA 90025

To:     Texas Richmond Corporation d/b/a The Men's Club
        c/o Mr. James Pianelli
        The Civil Justice Center
        112 East 4th Street
        Houston, Texas 77007-2502
        and
        c/o Mr. John H. Weston
        Weston, Garrou & Mooney
        12121 Wilshire Blvd., Suite 525
        Los Angeles, CA 90025

To:     SSD Enterprises, Inc. d/b/a Ritz Houston
        c/o Mr. James Pianelli
        The Civil Justice Center
        112 East 4th Street
        Houston, Texas 77007-2502
        and
        c/o Mr. John H. Weston
        Weston, Garrou & Mooney
        12121 Wilshire Blvd., Suite 525
        Los Angeles, CA 90025

To:     Duncan Burch, Inc. d/b/a Michael's International and
        MD II Entertainment, Inc. d/b/a Chicas Locas
        c/o Mr. James Pianelli
        The Civil Justice Center
        112 East 4th Street
        Houston, Texas 77007-2502
        and
        c/o Mr. John H. Weston
        Weston, Garrou & Mooney
        12121 Wilshire Blvd., Suite 525
        Los Angeles, CA 90025

17

To:    ICE Embassy, Inc. d/b/a Colorado Bar & Grill
c/o Mr. James Pianelli
The Civil Justice Center
112 East 4th Street
Houston, Texas 77007-2502
and
c/o Mr. John H. Weston
Weston, Garrou & Mooney
12121 Wilshire Blvd., Suite 525
Los Angeles, CA 90025

To:    D. Houston, Inc. d/b/a Treasures
c/o Mr. Casey Wallace
Johnston, Trent, West & Taylor, LLP
919 Milam, Suite 1700
Houston, Texas 77002

To:    A.H.D. Houston, Inc. d/b/a Centerfolds
c/o Mr. Casey Wallace
Johnston, Trent, West & Taylor, LLP
919 Milam, Suite 1700
Houston, Texas 77002

To:    D.N.W. Houston, Inc. d/b/a Gold Cup
c/o Mr. Casey Wallace
Johnston, Trent, West & Taylor, LLP
919 Milam, Suite 1700
Houston, Texas 77002

To:    D WG FM, Inc. d/b/a Splendor;
c/o Mr. Casey Wallace
Johnston, Trent, West & Taylor, LLP
919 Milam, Suite 1700
Houston, Texas 77002

To:    D. Rankin, Inc. d/b/a Trophy Club
c/o Mr. Casey Wallace
Johnston, Trent, West & Taylor, LLP
919 Milam, Suite 1700
Houston, Texas 77002

To:    W.L. York, Inc. d/b/a Cover Girls
c/o Mr. Casey Wallace
Johnston, Trent, West & Taylor, LLP
919 Milam, Suite 1700
Houston, Texas 77002

To:   To the City of Houston:
      City Attorney
      City of Houston
      Legal Department
      P. O. Box 368
      Houston, Texas 77001- 0368

**17.    Effective Date.** This Agreement is deemed effective, for all purposes, on the 27th

day of November 2013.

**18.    Revocation and Withdrawal.** This Agreement shall be binding on all Parties

(subject only to the revocation provisions set forth below) for an initial period of five (5) years.

Thereafter, the City may terminate any one or more Clubs from this Agreement, without cause,

by providing the affected Club(s) with one (1) year advance notice of the intent to terminate.

After the initial period of five (5) years, any participating Club may withdraw from the

Agreement without cause by providing the City with one (1) year advance notice of the intent to

terminate.  A termination without cause or a voluntary withdrawal of any Party pursuant to this

Section 18 shall be effective at the end of the fiscal year one year after the notice to withdraw is

given.  The City may revoke or abrogate the Agreement as to any Club as set forth in Section 15,

or for Cause, by terminating its participation in the Agreement after providing thirty (30) days

written notice.  For purposes of this Section, "Cause" may include the occurrence at a Club of

any offense under Chapters 19, 20 or 20A of the Texas Penal Code or conduct by a Club that

undermines the express purposes of this Agreement such as refusal to reasonably cooperate in a

disclosed investigation of human trafficking or overtly thwarting such investigation.  At the end

of the 30 day notice period, the pro rata share of that Club's contribution to the Human

Trafficking Abatement Fund for the year shall be returned.

**19.    Confidentiality.** The Parties and their counsel agree that the terms of this

Agreement, including but not limited to, the amount and nature of the settlement, shall be and

remain CONFIDENTIAL, to the extent permitted by law, and shall not be disclosed to any person or entity, except as may be required by law. The Parties may disclose the terms of this Agreement as required by the Parties' respective accounting and tax obligations, regulators, as provided elsewhere in this Agreement, or as required by law. The Parties further agree that they will not make, in any form or medium whatsoever, public disparaging statements concerning any other Party or Parties. No statements published in a judicial or quasi-judicial proceeding between the Parties shall be considered disparaging.

20. **Execution of Agreement.** To the extent any document is required to be executed or any act is required to be performed by any of the Parties to effectuate this Agreement, the Parties agree to execute and deliver such document and perform such act.

21. **Full Agreement.** This Agreement constitutes the entire agreement of the Parties. No prior or subsequent oral agreement can modify the terms of this Agreement. This Agreement is binding on and shall both burden and benefit the Parties and their respective heirs, personal representatives, successors, legal representatives, assigns, principals, officers, directors, shareholders and partners.

22. **Waiver of Reliance.** Each Party represents and warrants that it has been fully informed of the terms, contents, conditions, and effect of this Agreement; that the terms, contents, and conditions of this Agreement were negotiated between the Parties and were a product of an arm's length transaction; that each Party was knowledgeable in the business matters discussed in this Agreement; that the release language in this Agreement was clear; that in making this Agreement each Party had the benefit of counsel of its own choosing; and that no promise or representation of any kind has been made except as expressly stated in this Agreement and that no Party is relying upon any such promise or representation in executing this

Agreement. Each Party has relied solely and completely upon its own judgment and the advice of its counsel in making this Agreement. Each Party expressly waives any claim for fraud or fraudulent inducement in entering into this Agreement.

**23.** **Multiple Originals.** This Agreement may be executed in multiple originals.

**24.** **Severability.** If any provision of this Agreement or the application shall be determined invalid or unenforceable to any extent, the remainder of this Agreement and the application of the remaining provisions shall not be affected and shall be enforced.

**25.** **Transferability and Assignability.** In the event any Club or Business Entity that operates such Club is sold, in whole or in part, this Agreement shall, with the reasonable consent of the City, inure to the benefit of the transferee or assignee. The City shall be notified prior to the sale or assignment and will not unreasonably withhold consent and approval of the sale or assignment. Further, should any participating Club be impacted by eminent domain or involuntary dislocation not the result of any breach, misconduct, or malfeasance on the part of a Club, the Parties agree to permit the impacted business to relocate and allow for the continued operation of the Club under the terms of this Agreement, and subject to its benefits and burdens.

**READ, AGREED, AND ACCEPTED:**

DAVID M. FELDMAN

_(signature)_           Date: 11/25/13

For the City of Houston

SUBSCRIBED AND SWORN TO BEFORE ME, on the 25th day of November 2013.

_(signature)_

Notary Public, State of Texas
My Commission Expires: _____

ANGELA DINWIDDIE
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
11-04-2014

Unofficial Copy Office of Marilyn Burgess District Clerk

**READ, AGREED, AND ACCEPTED:**

ALI DAVARI



Date: <u>November 27, 2013</u>

For D. Houston, Inc., d/b/a Treasures;
A.H.D. Houston, Inc., d/b/a Centerfolds;
D.N.W. Houston, Inc., d/b/a Gold Cup;
D. Rankin, Inc., d/b/a Trophy Club;
W.L. YORK, Inc. d/b/a Cover Girls; and
D WG FM, Inc. d/b/a Splendor

SUBSCRIBED AND SWORN TO BEFORE ME, on the 27th day of November 2013.

KAREN LOVELY
Notary Public, State of Texas
My Commission Expires
April 11, 2016

Notary Public, State of Texas
My Commission Expires: <u>4-11-16</u>

Unofficial Copy Office of Marilyn Burgess District Clerk

23

**READ, AGREED, AND ACCEPTED:**

Eric Langan

_(signature)_

Date: 11-27-2013

For RCI Dining Services (Imperial Valley) Inc.
d/b/a Jaguars.; Trumps Inc. d/b/a Club Onyx;
RCI Entertainment (Texas) Inc. d/b/a
XTC North; and RCI Dining Services (Hobby) Inc.

SUBSCRIBED AND SWORN TO BEFORE ME, on the 27 day of November, 2013.

JAMES V PIANELLI
My Commission Expires
April 15, 2014
NOTARY PUBLIC
STATE OF TEXAS

Notary Public, State of Texas
My Commission Expires:_____

Unofficial Copy Office of Marilyn Burgess District Clerk

24

**READ, AGREED, AND ACCEPTED:**

David Fairchild

_(signature)_

Date: _11-27-13_

For Texas Richmond Corporation d/b/a
The Men's Club and Mangum Restaurant
Group, Inc. d/b/a Sunset Strip

SUBSCRIBED AND SWORN TO BEFORE ME, on the _27_ day of _Novale_ 2013.

```
+--------------------------+
|      JAMES V PIANELLI     |
|   My Commission Expires   |
|       April 15, 2014      |
+--------------------------+
```

_(signature)_

Notary Public, State of Texas
My Commission Expires: _____

Unofficial Copy Office of Marilyn Burgess District Clerk

**READ, AGREED, AND ACCEPTED:**

Stephen C. Saxenian or Tom Saxenian

_____     Date: _11 - 27 - 2013_

For SSD Enterprises, Inc. d/b/a Ritz Houston

SUBSCRIBED AND SWORN TO BEFORE ME, on the 27 day of _November_ 2013.

JAMES V PIANELLI
My Commission Expires
April 15, 2014

_____
Notary Public, State of Texas
My Commission Expires: _____

Unofficial Copy Office of Marilyn Burgess District Clerk

26

**READ, AGREED, AND ACCEPTED:**

Duncan Burch or Scott Burch

_Scott Burch_
_____
For Duncan Burch, Inc. d/b/a Michael's
International and MD II Entertainment, Inc.,
d/b/a Chicas Locas

Date: ___14/27/13___

SUBSCRIBED AND SWORN TO BEFORE ME, on the 27 day of _November_ 2013.

JAMES V PIANELLI
My Commission Expires
April 15, 2014

_____
Notary Public, State of Texas
My Commission Expires:_____

Unofficial Copy Office of Marilyn Burgess District Clerk

**READ, AGREED, AND ACCEPTED:**

Frank Kent

_FKent_ (signature)

For ICE Embassy, Inc. d/b/a Colorado Bar
& Grill

Date: 11/25/13

SUBSCRIBED AND SWORN TO BEFORE ME, on the **25**th day of _November_ 2013.

_Nan Newell Evanich_ (signature)

Notary Public, State of Texas
My Commission Expires: 7/15/2016

NOTARY PUBLIC
NAN NEWELL EVANICH
My Commission Expires
July 15, 2016
STATE OF TEXAS

Unofficial Copy Office of Marilyn Burgess District Clerk

## ADDENDUM "A"

The following areas identified by the City of Houston are deemed to be "private rooms" or "private areas" as that term is used in Section 5 of the Settlement Agreement, and upon the effective date of the Settlement Agreement they (a) may not be utilized; (b) shall cease operations immediately; and (c) shall within 120 days be remodeled to comply with the requirements of this Agreement.

1.  Rick's Sports Cabaret:       Any and all private areas/rooms and booths including but not limited to the seven booths in the private area/room. Upon the effective date of the Settlement Agreement this area and these booths (a) may not be utilized; (b) shall cease operations immediately; and (c) shall, within 120 days, be remodeled to comply with the requirements of this Agreement.

2.  Rick's Cabaret North:       Ensure that wall partitions of the elevated area off the main stage are not high enough to or configured in such a way as to, create a private area.

3.  Club Onyx:       None.

4.  XTC North:       Any and all private areas/rooms including but not limited to the private area/room at the far end of the Club, close to the area that looks like a bar. Upon the effective date of the Settlement Agreement this area (a) may not be utilized; (b) shall cease operations immediately; and (c) shall, within 120 days, be remodeled to comply with the requirements of this Agreement.

5.  Sunset Strip:       Any and all private booths and private areas/rooms including but not limited to the five private booths in the private area/room. Additionally, at the back of the Club there are high-back couches facing the wall that obscure visual inspection and serve to operate as a private area. Upon the effective date of the Settlement Agreement these areas and these booths (a) may not be utilized; (b) shall cease operations immediately; and (c) shall, within 120 days, be remodeled to comply with the requirements of this Agreement.

6.  The Men's Club:       Any and all private areas and booths including but not limited to the Champagne Room located in front of the area identified as the side bar and the nine private booths contained in that room. Upon the effective date of the Settlement Agreement this area and these booths (a) may not be utilized; (b) shall cease operations immediately; and (c) shall, within 120 days, be remodeled to comply with the requirements of this Agreement.

7.  Ritz Houston:       Any and all private areas including but not limited to private areas within what has been identified as the "Mancave" behind the main stage as well as the private area that was in the process of being constructed behind the stage. Upon the effective date of the Settlement Agreement the private areas within the "Mancave" and the area under construction (a) may not be utilized; (b) shall cease

operations immediately; and (c) shall, within 120 days, be remodeled to comply with the requirements of this Agreement.

8.    Michael's International:    The area behind the buffet station is obscured by a partition or wall and creates a private area. Upon the effective date of the Settlement Agreement this area (a) may not be utilized; (b) shall cease operations immediately; and (c) shall, within 120 days, be remodeled to comply with the requirements of this Agreement.

9.    Colorado Bar & Grill:    Any and all private areas/rooms including but not limited to the seven private areas and all rooms along the perimeter of the exterior walls and the private area/room adjacent to the Sports Bar. Upon the effective date of the Settlement Agreement these areas (a) may not be utilized; (b) shall cease operations immediately; and (c) shall, within 120 days, be remodeled to comply with the requirements of this Agreement.

10.    Treasures:    Any and all private rooms including but not limited to the Library on the first floor and the eight private rooms on the second floor behind a locked door. Upon the effective date of the Settlement Agreement these areas and any booths in these areas (a) may not be utilized; (b) shall cease operations immediately; and (c) shall, within 120 days, be remodeled to comply with the requirements of this Agreement.

11.    Centerfolds:    None.

12.    Gold Cup:    Any and all private booths including but not limited to the sixteen private booths on the second floor. Upon the effective date of the Settlement Agreement this area and these booths (a) may not be utilized; (b) shall cease operations immediately; and (c) shall, within 120 days, be remodeled to comply with the requirements of this Agreement.

13.    Splendor:    None.

14.    Trophy Club:    Any and all private rooms including but not limited to the four private rooms in the back of the Club. Upon the effective date of the Settlement Agreement these rooms (a) may not be utilized; (b) shall cease operations immediately; and (c) shall, within 120 days, be remodeled to comply with the requirements of this Agreement.

15.    Cover Girls:    Any and all private rooms and booths including but not limited to the three private rooms and fourteen booths on the second floor. Upon the effective date of the Settlement Agreement these rooms and booths (a) may not be utilized; (b) shall cease operations immediately; and (c) shall, within 120 days, be remodeled to comply with the requirements of this Agreement.

## ADDENDUM "B"

Each Club agrees to have in its interior premises no fewer than the managers that are identified below:

1.  RCI Dining Services (Hobby) Inc., 9009 Airport: One manager shall be on duty from 11 a.m. until 7 p.m. and no fewer than two managers shall be on duty from 7 p.m. until closing. Three managers shall be on duty during high traffic weekends and special events from 11 a.m. until closing.

2.  Jaguars: One manager shall be on duty from 11 a.m. until 7 p.m. and no fewer than two managers shall be on duty from 7 p.m. until closing. Three managers shall be on duty during high traffic weekends and special events from 11 a.m. until closing.

3.  Club Onyx: One manager shall be on duty from 11 a.m. until 7 p.m. and no fewer than two managers shall be on duty from 7 p.m. until closing. Three managers shall be on duty during high traffic weekends and special events from 11 a.m. until closing.

4.  XTC North: One manager shall be on duty from 11 a.m. until 7 p.m. and no fewer than two managers shall be on duty from 7 p.m. until closing. Three managers shall be on duty during high traffic weekends and special events from 11 a.m. until closing.

5.  Sunset Strip: At least one manager shall be on duty during all hours of operation.

6.  The Men's Club: This Club shall have no fewer than one manager on duty during all hours of operation of each day shift, opening until 7 p.m., and no fewer than two managers on duty during all hours of operations during each night shift, 7 p.m. until closing, except Sundays, Mondays and Tuesdays in which case only one manager will be on duty during all hours of operation.

7.  Ritz Houston: This Club shall have no fewer than one manager on duty during all hours of operation of each day shift, opening until 7 p.m., and no fewer than two managers on duty during all hours of operations during each night shift, 7 p.m. until closing, except Sundays in which case only one manager will be on duty during all hours of operation.

8.  Michael's International: This Club shall have no fewer than two managers on duty during all hours of operation of each day shift, opening until 7 p.m., and no fewer than two managers on duty during all hours of operations during each night shift, 7 p.m. until closing.

9.  Colorado Bar & Grill: This Club shall have no fewer than one manager on duty during all hours of operation of each day shift, opening until 7 p.m., and no fewer than two managers on duty during all hours of operations during each night shift, 7 p.m. until closing, except Mondays and Sundays in which case only one manager will be on duty during all hours of operation (note closed during day hours Saturday and Sunday).

10. Treasures: This Club shall have no fewer than one manager on duty during all day shifts, opening until 7 p.m. Each night of the week, except Sunday and Monday, this Club shall

31

10. Treasures: This Club shall have no fewer than one manager on duty during all day shifts, opening until 7 p.m. Each night of the week, except Sunday and Monday, this Club shall have no fewer than three managers on duty during all hours of operations and on Sunday and Monday shall have at least one manager on duty during the night shift, 7 p.m. until closing.

11. Centerfolds: This Club shall have no fewer than one manager on duty during all hours of operation of each day shift, opening until 7 p.m., and, except for Sunday night shift, no fewer than two managers on duty during all hours of operations during each night shift, 7 p.m. until closing, except and unless the second floor is in operation, at which time the Club shall have no fewer than three managers on duty during such hours of operation.

12. Gold Cup: This Club shall have no fewer than one manager on duty during all hours of operation of each day shift, opening until 7 p.m., and no fewer than two managers on duty during all hours of operations during each night shift, 7 p.m. until closing, except Sundays and Mondays in which case only one manager will be on duty during all hours of operation.

13. Splendor: This Club shall have no fewer than one manager on duty during all hours of operation of each day shift, opening until 7 p.m., and no fewer than two managers on duty during all hours of operations during each night shift, 7 p.m. until closing, except Sundays and Mondays in which case only one manager will be on duty during all hours of operation.

14. Trophy Club: This Club shall have no fewer than one manager on duty during all hours of operation of each day shift, opening until 7 p.m., and no fewer than one manager on duty during all hours of operations during each night shift, 7 p.m. until closing.

15. Cover Girls: This Club shall have no fewer than one manager on duty during all hours of operation of each day shift, opening until 7 p.m., and no fewer than two managers on duty during all hours of operations during each night shift, 7 p.m. until closing, except Sundays and Mondays in which case only one manager will be on duty during all hours of operation.

16. Chicas Locas: This club shall have no fewer than one manager on duty during all hours of operation during each day shift, opening until 7 p.m., and no fewer than two managers on duty during all hours of operations during each night shift, 7 p.m. until closing.

Unofficial Copy Offices of Marilyn Burgess District

32