IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHANEL E.M. NICHOLSON, et al. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| A.H.D. HOUSTON, INC. d/b/a | § | CIVIL ACTION NO. 4:23-cv-01025 |
| CENTERFOLDS; W.L. YORK, INC. | § | |
| d/b/a THE COVER GIRLS; D WG FM, | § | |
| INC d/b/a SPLENDOR, D. TEXAS | § | |
| INVESTMENTS INC / AHD HOUSTON | § | |
| d/b/a TREASURES GENTLEMENS | § | |
| CLUB; | § | |
| | § | |
| *Defendants.* | § | |

## Plaintiffs' Pre-Hearing Brief on Disqualification of Counsel

**TABLE OF CONTENTS**

**Page**

I. ISSUES FOR THE HEARING ON JANUARY 17TH                                          1

II. BACKGROUND                                                                     2

**1.** The Unsworn, Partial Text Messages and the Allen Declaration Do Not Support    2
the Contention that the Undersigned Suggested Ms. Nicholson Disobey Her
Subpoena

**2.** Defendants' Allegation That the Undersigned Was Harassing or Intimidating Ms.   3
Nicholson Was a Hoax

III. LEGAL STANDARDS IN THIS CIRCUIT FOR DISQUALIFICATION                           4
OF COUNSEL

IV. ARGUMENT                                                                        5

**1.** There Is No Statement by Ms. Nicholson That the Undersigned Ever Told Her to    5
Disobey a Subpoena

**2. Exhibit A,** Text Messages Between the Undersigned and Chanel Nicholson,          8
Shows That Opposing Counsel's Allegations of "Witness Intimidation" Were a
Hoax

**3.** There Is No Supporting Evidence for the Allegation That the Undersigned          11
Charged Ms. Nicholson "Couch Fees"

**4.** Plaintiffs' Evidence That No "Couch Fees" Were Ever Charged Ms. Nicholson       13

**5**. Ms. Nicholson Has Admitted She Was Going to Lie to Opposing Counsel About       14
Her Testimony in This Case, Has Claimed She Was Offered Payment by Opposing
Counsel for Her Testimony, and Has Claimed She Convinced a Plaintiff in This Case
to "Lie on the Stand**"**

V. CONCLUSION                                                                       14

APPENDIX (Exhibits Referenced)                                                      15

## I.    ISSUES FOR THE HEARING ON JANUARY 17TH

Plaintiffs seek to have the Court review this brief in connection with the hearing evidence, and rule: that Ms. Nicholson cannot offer any evidence at the hearing – the matter should be decided on the evidence filed with Defendants' motion (Dkt. 68) and supplement (Dkt. 69); and, the "no contact" order imposed on the undersigned should be removed so that the undersigned can depose Ms. Nicholson before the trial, scheduled for February 10, 2025.

At the hearing on Defendants' motion for protective order on December 20, 2024, the Court indicated that the miscellaneous hearing it set for January 17, 2025 would be to consider if Plaintiffs' counsel should be disqualified, if Defendants produced a recording of him telling Chanel Nicholson (formerly a co-plaintiff who, after her dismissal in March, 2024, became a witness claimed by Defendants) "don't obey your subpoena." This brief discusses the requirements for disqualification of counsel in this Circuit. Review of a disqualification motion must be exacting: "***All of the facts particular to a case must be considered***, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995). Plaintiffs fear there may be insufficient time at the hearing on January 17, 2025 to introduce and review, with the witness, all the relevant evidence that shows that the undersigned never told Ms. Nicholson not to obey her subpoena. Thus, Plaintiffs direct the Courts' attention to this briefing and the exhibits to this brief, so that this material is properly of record, should the hearing be truncated by other pressing business before the Court.

1

## II.    BACKGROUND

### 1.    The Unsworn, Partial Text Messages and the Allen Declaration Do Not Support the Contention that the Undersigned Suggested Ms. Nicholson Disobey Her Subpoena

Defendants filed a motion for protective order (Dkt. 68) on December 6, 2024 and a Supplement to that motion (Dkt. 69) on December 12, 2024. Defendants' motion for protective order (Dkt. 68) rests on unsworn, undated text messages sent to opposing counsel by Chanel Nicholson, to support Defendants' allegation that the undersigned told Ms. Nicholson to "not obey her subpoena." Yet, in her text messages (Dkt. 68-3) cited to support Defendants' allegation, she does not say the undersigned said: "don't obey your subpoeana." Instead, in Dkt. 68-3 p.1, Ms. Nicholson's unsworn, undated text message to Mr. Wallace (opposing counsel) states: "When you subpoenaed me Eric told me I BETTER NOT show up or he wasn't going to give me half his earnings from the case….. But he said I better not EVER SHOW UP in 'his [**emoji inserted** 😂"]' courtroom."  The first statement is not "don't obey your subpoena," but instead is that the undersigned won't pay her if she "shows up." The second statement apparently was not taken seriously by Ms. Nicholson; thus she inserted a "laugh until I'm crying" emoji with it. Also, in context, it follows closely in the text, uses the same "better not … show up" language, and is thus apparently a reference to her statement that, if she showed up: "[H]e wasn't going to give me half his earnings from the case." But whether the laughing emoji is interpreted as an indication that this statement was a joke when stated, or it means it was taken as a joke by Ms. Nicholson, it is not an instruction to disobey a subpoena, and does not support Defendants' allegation that the undersigned so instructed Ms. Nicholson.

Defendants' motion for protective order (Dkt. 68) also references a declaration by opposing counsel Ben Allen (Dkt. 68-2) about a conversation with Ms. Nicholson. Mr. Allen claims that Ms.

2

Nicholson told him that the undersigned said "[D]isobey the subpoena and don't go to Court." See Dkt. 68-2 ¶6. Clearly this quoted statement is paraphrased from Ms. Nicholson's actual statement, and is notably different from her text message to Mr. Wallace, *i.e.*, "I BETTER NOT show up or he wasn't going to give me half his earnings from the case." The fact that her statement to Ben Allen is double hearsay makes it even less credible. She also admitted to Mr. Allen that the undersigned had sent her a written message to comply with the subpoena.[1]

Moreover, Mr. Allen (¶6) alleges that Ms. Nicholson also told him she had recordings of the undersigned making the "disobey your subpoena" statement. Burt no such recording was produced at the last hearing on Dec. 20, 2024, almost one month after Ms. Nicholson allegedly told Mr. Allen there was a recording (he says she called him on Nov. 23, 2024, *see* Dkt. 68-2 ¶2). Accordingly, the allegation that the undersigned stated "don't obey your subpoena" is not supported in Defendants' motion (Dkt. 68).

### 2. Defendants' Allegation That the Undersigned Was Harassing or Intimidating Ms. Nicholson Was a Hoax

At the Dec. 20, 2024 hearing, Defendants also relied on allegations in a "Supplement" (Dkt. 69) to their motion for protective order, to try to bolster their claims about the undersigned's misconduct. Defendants' counsel quoted two text messages the undersigned sent Ms. Nicholson in early December, claiming the texts showed he was "intimidating" Ms. Nicholson and impeding her from testifying in this case. Defendants failed to note that Ms. Nicholson circumvented phone communication blocks against her by the undersigned, and began a chain of texts where she asked to communicate "off the record" with the undersigned, after sending a violently angry and profane text message to the undersigned (**Exhibit A**, p. 1-2), accusing the undersigned of threatening

---

[1] An email on Aug 11, 2024 (**Exhibit B** hereto) from the undersigned to her, states exactly that (highlighted).

withholding legal services in her case unless Ms. Nicholson had sex with him. In this first angry text, Ms. Nicholson was also discussing a malpractice case and state bar grievance that she was working with another lawyer to bring against the undersigned – wherein opposing counsel was slated to be a witness for her. Nothing about *the present* case was mentioned by Ms. Nicholson or the undersigned in their text chain, which was excerpted by Defendants in Dkt. 69.[2]

Also, in this text chain, Ms. Nicholson pressed the undersigned for more comments after each allegedly offensive text was sent. She kept texting the undersigned even after the Court issued a "no contact" order at the hearing on December 20, 2024. She was not being harassed or intimidated, as she initiated the contact by using a different number to circumvent blocks by the undersigned, she said the texts would be "off the record," and she kept texting, and texting the undersigned even after he sent the allegedly offensive texts to her, and even after the Court's "no contact" order.

III.    **LEGAL STANDARDS IN THIS CIRCUIT FOR DISQUALIFICATION OF COUNSEL**

Although Defendants' motion (Dkt. 68) and Supplement (Dkt. 69) state they are "motion for protective order" in their respective titles, opposing counsel asked at the hearing that all plaintiffs' claims be dismissed, because of the undersigned's conduct. The Court indicated that a more appropriate sanction would include disqualification of Plaintiffs' counsel, rather than dismissal. The Court set a miscellaneous hearing for January 17, 2025 (Dkt. 79), ostensibly to hear the alleged recording of the undersigned saying "don't obey your subpoena." The Court also ordered the undersigned to have no contact with Ms. Nicholson.

---

[2] **Exhibit A** includes all text communications to date with Ms. Nicholson on her number ending with "5371." In August, 2024, the undersigned had blocked her from communicating with him on her regular cell phone number ending in "1756." She circumvented the block by using a different number.

The standards for disqualification of counsel in this circuit are strict, because: "Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." *In re Dresser Indus., Inc.,* 972 F.2d 540, 543 (5th Cir. 1992). "The moving party has the burden of proving that disqualification is proper." *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 646 F.2d 1020, 1028 (5th Cir. 1981). The Fifth Circuit has "made clear that 'disqualification cases are governed by state and national ethical standards adopted by the court." *FDIC v. U.S. Fire Ins. Co*., 50 F.3d 1304, 1311-12 (5th Cir. 1995) (quoting *In re Am. Airlines, Inc*., 972 F.3d 605, 610 (5th Cir. 1992).

The review required for attorney disqualification is extensive: "All of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *FDIC v. U.S. Fire Ins. Co*., 50 F.3d 1304, 1314 (5th Cir. 1995).

## IV.    ARGUMENT

### 1.    There Is No Statement by Ms. Nicholson That the Undersigned Ever Told Her to Disobey a Subpoena

The lack of supporting evidence in Defendants' motion (Dkt. 68) and Supplement (Dkt. 69) should be sufficient to deny the motion, without hearing from Ms. Nicholson. Pursuant to the Court's proclamation in *In re Dresser Indus., Inc.,* 972 F.2d at 543, the "standards developed under federal law" for a disqualification motion include the right for Plaintiffs (opposing party) to have sufficient time (21 days under the Court rules) to respond to the motion. If Ms. Nicholson is permitted to testify,[3] a ruling based on that testimony after the hearing would be tantamount to a denial of Plaintiff's normal motion response right. Nevertheless, if Ms. Nicholson is permitted to testify at the hearing, Plaintiffs should be permitted extensive examination of the veracity of all

---

[3] Plaintiffs' Motion in LImine, Dkt. 80, explains the many added reasons she should not be permitted to testify.

her statements, pursuant to the statement by the Court in *FDIC v. U.S. Fire Ins. Co.,* 50 F.3d at 1314: "'All of the facts particular to a case must be considered… with meticulous deference to the litigant's rights." Plaintiffs have attached hereto (see Appendix) some of the documents they intend to introduce at the hearing and use to impeach Ms. Nicholson's expected testimony. Plaintiffs expect that due to the cooperative cross-witnessing agreement between Ms. Nicholson and opposing counsel (as described in quoted portions of **Exhibit B**, below) and her interest in bringing a malpractice case or bar grievance against the undersigned (which would be materially aided by a favorable ruling or finding from this Court), Ms. Nicholson will now testify that the undersigned *did* in fact tell her to disobey her subpoena. Plaintiffs will rely, *inter alia*, on the following quoted portions of **Exhibit B**, and other attached exhibits (see appendix) to counter and impeach such testimony. Among her prior statements indicating that the undersigned did not say that, and her statements evidencing her cooperative testifying relationship with opposing counsel, are:

**EXHIBIT B: EMAILS** *from Chanel Nicholson with the responses from Plaintiffs' counsel (marked "undersigned") below, from Aug. 10, 2024 to Nov. 22, 2024*:

Bates No. DEC2024SUPPPRODN000112 (8/10/2024 at 11:31 AM):

> You threaten me 30 mins after you invite me to lunch ?!! If your going to threaten me THEN IM GOING TO THREATEN YOU ! I'm going to treat you just like your treating me ! *So if you want to say that your not going to pay me half of your fee*, because I switched sides is INSANE behavior!
>
> *And you tell me if I come to court to fight for MY RIGHTS that you aren't going to pay me* ?! What is wrong with you ?  [italicized emphasis added]

Bates No. DEC2024SUPPPRODN000112 (8/10/2024 at 11:36 AM): "I never told him [opposing counsel Casey Wallace] he could buy information from me. I told him I would cooperate with answering his questions."

Bates No. DEC2024SUPPPRODN000111 (8/10/2024 at 12:52 PM):

> So you said to ignore my subpoena? … I didn't give him [Casey Wallace] ANYTHING OF IMPORTANCE AND I DIDNT EVER SAY I WILL SELL MY TESTIMONY , I was very careful with my words what I said was , I'm will NOT COOPERATE UNLESS WE COME

6

TO AN AGREEMENT. COOPERATE MEANS to ME that - to associate with another or others for mutual benefit.

Bates No. DEC2024SUPPPRODN000110 (8/10/2024 at 2:28 PM **by undersigned**):

"I said no such thing."

Bates No. DEC2024SUPPPRODN000110 (8/10/2024 at 2:36 PM):

I know you don't care about anyone but yourself but you really need to think about what you asked me to do, it's not a good idea, casey [Wallace] will mention the subpoena and convince your jurors I didn't come because your a sick digusting old man that made me go to the club and get rejected, and these girls are making all of this up. Because I told him that on the phone!

Bates No. DEC2024SUPPPRODN000109 (8/11/2024 at 2:36 PM): "Me not being there HE CAN SAY ANYTHING, because I'm not there. *I also want to get paid as well* because you started this WITH ME every large milestone came from ME such as andy and the other girls." (emphasis added)

Bates No. DEC2024SUPPPRODN000108 (8/11/2024 at 4:04 PM, **by undersigned**):

I think that will be damaging to our case when you come in response to your subpoena and repeat it; or deny it, and then a witness for them says they heard it. You are now his witness, helping him; opposed to us; I will seek to get you off the witness stand as quickly as possible, and will not ask you any questions about your story.

Bates No. DEC2024SUPPPRODN000108 (8/11/2024 at 4:16 PM, **by undersigned**) "Please be sure to obey your subpoena, but please understand that I will be preparing for you as an adverse (enemy) witness. In view of that status, I won't discuss this further until after trial. We can talk again after that."

Bates No. DEC2024SUPPPRODN000107 (8/12/2024 at 2:43 PM): "I need you to unblock me because WE NEED TO TALK."

Bates No. DEC2024SUPPPRODN000104 (8/31/2024 at 4:20 PM): "This is a courtesy email to let you know that you will be being served soon. Thank you. All the best."

7

Bates No. DEC2024SUPPPRODN000104 (11/7/2024 at 1:42 PM): "Hi , I've spoken with Casey [Wallace], just giving you the courtesy of letting you know."

Bates No. DEC2024SUPPPRODN000104 (11/22/2024 at 3:40 PM): "Yes we need to talk, unblock me so I can call you."

**EXHIBIT M: TEXT** *from Chanel Nicholson to Plaintiff D. Ilori*

A text from Ms. Nicholson to Plaintiff Destiny Ilori (**Exhibit M**) also discusses her cooperation with Casey Wallace: "Girl he's telling me to not accept a LEGAL SUBPOENA!!! Cause he's scared of what Casey might say EVEN THOUGH I NEVER TOLD HIM SHIT OTHER THAN I WILL BE COOPERATIVE IF WE COME TO AN AGREEMENT ABOUT MY CASE."

**2. Exhibit A, Text Messages Between the Undersigned and Chanel Nicholson, Shows That Opposing Counsel's Allegations of "Witness Intimidation" Were a Hoax**

As noted above, Defendants' Supplement (Dkt. 69) quoted two texts from the undersigned to Ms. Nicholson, as evidence of witness intimidation. Opposing counsel read these two texts out at the hearing on December 20th, and implied they had been sent to Ms. Nicholson unsolicited and to harass her. In fact, communication from her was blocked by the undersigned in August 2024, but she circumvented the block by using another number. **Exhibit A** shows that a string of communication between the undersigned and Ms. Nicholson began following a violently angry, insulting and profane text from Ms. Nicholson, sent to the undersigned by Ms. Nicholson through her unblocked number. Ms. Nicholson had apparently been told by her counsel, Mr. Giddens, that a contemplated malpractice lawsuit against the undersigned would not proceed, because of pleadings (filed by opposing counsel) and other information, which the undersigned provided Mr. Giddens. **Exhibits G & H**. Opposing counsel, Casey Wallace, was expected by Ms. Nicholson to be her witness in this lawsuit, under her collaboration/cooperation with him. *See* **Exhibit A,**

8

mentions of "Casey" and my "Lawyers" throughout; **Exhibit B** pp. DEC2024SUPPPRODN000104; 111; 112; **Exhibits M&N.**

In **Exhibit A**, in messages sent on Dec. 2, 2024, Ms. Nicholson starts out accusing the undersigned of being a "lying ass b*tch," and continues with "I'm so happy to be standing on your neck right now. B*tch," adding further: "Why did you take on the [prior] case b*tch. I hate you and I wish I never met you." She ends with "You lied, your lying now b*tch. Evidencing the close relationship with opposing counsel, she sent another text immediately after, stating: "Casey [Wallace] is letting my lawyer know what's really going on." The undersigned did not respond to these messages.

Ms. Nicholson also alleged in the first message **in Exhibit A** that the undersigned used "my case as a meal ticket to my body for years," and he forced her "to having sex with" him.

Ms. Nicholson next called the undersigned on Dec. 7, 2024, and the undersigned sent her a text asking her to identify who was the caller. She did so, and indicated she wanted to talk "off the record." The undersigned refused stating her lawyer wouldn't allow it. She next accused him of lies and more lies. He continued to brush her off. She ended with "lmk ('let me know') if you have something to say."

Two days later, on Dec. 9, 2024, in view of her accusations that the undersigned was forcing sex on Ms. Nicholson "for years," the undersigned asked her about a text she had sent him in August 2024, where she praised his prowess at a sex act. She did not claim to be intimidated or even offended, but instead said: "I'll be putting out a protective order very soon," and adding in another text: "I'm sending this to my lawyer."

9

The next day, she sent a text saying: "Send something else for me to show my lawyer as you dig a deeper hole for yourself. Keep it coming." The undersigned kept asking questions relating to the sex act text, and she kept asking for more texts. Clearly, she was not offended or intimidated; or she would have stopped asking for more.

After the undersigned sent the second text quoted in Defendants' Supplement (Dkt. 69), she continued to goad him to "keep coming," and "keep it going." Again, clearly, she was not offended or intimidated. The next day, Mr. Wallace filed his Supplement, Dkt. 69, claiming the texts from undersigned were to intimidate his witness, about *the present* case. They were in fact, of course, about her cases against the undersigned, where Casey Wallace was to be a witness.

Ms. Nicholson's texts quoted above regarding "putting out a protective order," "sending this to my lawyer," "Send something else for me to show my lawyer as you dig a deeper hole for yourself. Keep it coming," *etc*. show that the claims of witness intimidation in Defendants' supplement (Dkt. 69) are a hoax. Opposing counsel had *all the texts* (as some were exhibits Dkt. 70-17 and Dkt. 70-25 to Plaintiffs' Response, Dkt. 70, and the remainder were produced by the undersigned on Dec. 17, 2024) when he stood in Court on December 20th and said his witness was being intimidated by the undersigned. All Ms. Nicholson needed to do to stop texts from the undersigned was to stop texting the undersigned; and stop circumventing the blocks on her phone numbers to badger him with her texts. She did not need protection from the Court.

At the hearing, if Ms. Nicholson is examined by Plaintiffs, Plaintiffs will demonstrate that Defendants' motion (Dkt. 68) is wholly lacking in evidentiary support on its face, as noted above, and further, that Defendants' Supplement (Dkt. 69) is a full-throated hoax on the Court. Defendants are at a minimum engaging in improper dilatory tactics, and are further seeking to improperly interfere with Plaintiffs' choice of counsel. In Texas, disqualification is considered a "severe

10

remedy." *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 399 (Tex. 1989); *Henry v. City of Sherman, Texas*, 2017 WL 6268744, *3-4 (E.D. Tex. 2017). The United States Supreme Court has similarly expressed its "concerns about the tactical use of disqualification motions to harass opposing counsel." *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436 (1985). Justice Brennan observed that "[t]he tactical use of attorney-misconduct disqualification motions is a deeply disturbing phenomenon in modern civil litigation." *Id.* at 441 (Brennan J., concurring); … "A court should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely chosen counsel." *Woods v. Covington Cty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976), citing *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562, 564--65 (2d Cir. 1973).

Based on opposing counsel's hoax, the Court imposed an order on the undersigned to not have any contact with Ms. Nicholson. The order should be vacated so that the undersigned can depose Ms. Nicholson before trial.

### 3. There Is No Supporting Evidence for the Allegation That the Undersigned Charged Ms. Nicholson "Couch Fees"

The allegation that the undersigned charged Ms. Nicholson "couch fees" also lacks evidentiary support. Ms. Nicholson's unsworn texts (Dkt. 68-4) state, in one instance, in support of the "couch fees" allegation that:

> I kept advising him to only put the claim of what happened in 2021 and the sexual assault and breach of contract when the suit was filed because I KNEW that statute of limitations. But he got mad at me for not coming to take a bath with him so he did whatever he wanted to do with the amendment complaints and everything thing else if I didn't cooperate, he would pop up at my apartment at times.

Whether or not the undersigned "got mad at [Ms. Nicholson] for not coming to take a bath with him," the undersigned has authority to make decisions on pleadings in the case. *See* Tex. R. Disc.

11

P. 1.02, comment 1: "The lawyer should assume responsibility for the means by which the client's objectives are best achieved. Thus, a lawyer has very broad discretion to determine technical and legal tactics, subject to the client's wishes regarding such matters as the expense to be incurred and concern for third persons who might be adversely affected." No violation of any disciplinary rule is supported by this texted statement by Ms. Nicholson.

Ms. Nicholson's unsworn texts (Dkt. 68-4) further state, in support of the "couch fees" allegation that: "All the time, [Mr. Mirabel] would say things like 'your life is in my hands you're not smart enough to do this on your own' he would have me come over and shower with him." This allegation does not support the "couch fees" allegation because Ms. Nicholson does not allege that the undersigned threatened to withdraw as counsel, or fail to take a required action in the case, if Ms. Nicholson **did not** come to shower with.

The other support relied on for the allegation that the undersigned charged "couch fees" is the declaration of Ben Allen (Dkt. 68-2 ¶4), which states: "First, she informed me that Mr. Mirabel received or attempted to receive compensation for legal services in the form of sexual favors in this matter. The term she used with me was 'couch fees' and she confirmed that she knew that term's common meaning to be accepting sexual favors for legal services." Even in the re-telling of her statement in Ben Allen's declaration, Ms. Nicholson does not specify from whom the undersigned extracted or attempted to extract *quid pro quo* fees for sex, or how it was done. In a contingent fee case, which was the basis for the undersigned's representation of Ms. Nicholson, there are no fees charged. So without explaining the mechanism by which additional fees for sex were charged, these allegation are inadequate to support a charge of "couch fees." Moreover, Ms. Nicholson does not even say if the undersigned ever actually received "couch fees," as the statement is open to it only having been "attempted."

12

Mr. Allen's declaration (Dkt. 68-2 ¶4) further includes a statement with no explanation of how Ms. Nicholson came to knowledge of the events she described to Mr. Allen: "She informed me that Mr. Mirabel had threaten [*sic*.] to stop representing Plaintiffs in this matter if they did not 'pay couch fees.'" This statement is not credible due to the apparent lack of personal knowledge of Ms. Nicholson (or the declarant, Mr. Allen).

**4.  Plaintiffs' Evidence That No "Couch Fees" Were Ever Charged Ms. Nicholson**

Plaintiffs' response (Dkt. 70) to Defendants' motion for protective order included a text message from Ms. Nicholson to the undersigned (Exhibit P, Dkt. 70- 19) which the Court found particularly offensive.  This exhibit showed that Ms. Nicholson soliciting loan funding from the undersigned for sexual favors. Exhibit O, Dkt. 70- 18 to Plaintiffs' response is a text where Ms. Nicholson statement to the undersigned further confirms that it was he who was *paying her*: "So a man that HAS F***ED ME MULTIPLE TIMES AND GAVE ME LARGE AMOINTS OF MONEY CAN SIT BACK AND CIROSS HIS LEGS AND LET ME BE HOMELESS …" **Exhibit I** hereto completes the story of why the misconduct allegations in Defendants' motion (Dkt. 68) arose. **Exhibit I** hereto shows payments by the undersigned to Ms. Nicholson starting from April 2021.  **Exhibit I** hereto shows that in May 2024, payments to Ms. Nicholson from the undersigned stopped; and her collaboration with opposing counsel began immediately (**Exhibit L**). Her allegations of misconduct arose in connection with her later retaining counsel to bring malpractice claims against the undersigned. *See* **Exhibit G,** p. DEC2024SUPPPRODN000185; **Exhibit N**; **Exhibit B**, p. DEC2024SUPPPRODN000104.

13

**5. Ms. Nicholson Has Admitted She Was Going to Lie to Opposing Counsel About Her Testimony in This Case, Has Claimed She Was Offered Payment by Opposing Counsel for Her Testimony, and Has Claimed She Convinced a Plaintiff in This Case to "Lie on the Stand"**

**Exhibit M** is a text exchange between Ms. Nicholson and Plaintiff Destiny Ilori on Aug. 10, 2024, where Ms. Nicholson states: "And I was still going to lie for Eric's [Undersigned's] creepy *ss to Casey [opposing counsel C. Wallace]." **Exhibit Z** is a text exchange between Ms. Nicholson and the Undersigned where, in the last text, she states: "And you trusted liosha [Plaintiff Liosha Williams] and she contacted Casey and Davaris paid her off because they gave me the same deal but I didn't sabotage you like they wanted me to." In **Exhibit B,** in an email to the undersigned, at p. DEC2024SUPPPRODN000111, she states: "I had to convince liosha TO LIEEEEEEEE on the f***ing stand FOR YOU !!"

Thus, Ms. Nicholson has admitted she was going to lie to opposing counsel about her testimony, even though they are actively cooperating in cross-testifying relationship. Ms. Nicholson also claimed (**Exhibit Z**) that she was offered payment for her testimony by opposing counsel, and that she convinced Plaintiff Liosha Williams to "lie on the stand." Ms. Nicholson's own statements show she proposes lying, was offered payment for testimony by opposing counsel, and has counseled others to commit perjury. Mr. Wallace and Ms. Nicholson are not credible. Her further testimony should not be permitted.

## V.    CONCLUSION

Defendants' allegations of misconduct by the undersigned have no support, because the only written supporting statements by the only witness, Ms. Nicholson, are that the undersigned threatened ***non-payment to her*** if she "showed up" for her subpoena, and the other statement about "Better not show up in his courtroom" includes a laughing emoji; meaning a joke or nonserious

14

comment. The allegations that the undersigned was "intimidating" Ms. Nicholson as a witness were a hoax by opposing counsel; as she was circumventing communication blocks and goading him to comment, even after he sent the allegedly offensive comments. Nevertheless, this resulted in the Court issuing a "no contact" order, which hampered the undersigned's discovery of evidence needed in defense of these allegations of misconduct. He could not even accept offers by Ms. Nicholson to provide him the materials from her, to be used at the hearing. She offered him these materials in a text after the Dec. 20th hearing. *See* **Exhibit A,** p. ENDDEC2024SUPPPRODN000247 ("[W]ould you like to listen to any of the recordings, or text or emails?")

Ms. Nicholson has now had additional time from the last hearing to produce an alleged recording of the undersigned stating "don't obey your subpoena," and will be unable to do so – unless she has had a "deep fake" engineered. There is no basis in motion practice in this circuit, and particularly in motions for disqualification of counsel where the standards are particularly strict, to permit oral testimony to rectify a deficient motion. She should not be permitted to testify.

**APPENDIX** – summary of exhibits attached with this brief

**EXHIBIT B:** EMAILS between Chanel Nicholson and Undersigned, from Aug. 10, 2024 to Nov. 22, 2024:

**EXHIBIT C**: Undersigned's Cell Phone Invoice showing calls with Chanel Nicholson on Aug. 10-11, 2024.

**EXHIBIT D**: Undersigned's Cell Phone Invoice showing calls and texts with Chanel Nicholson, and her counsel, in late November and early December 2024.

**EXHIBIT E**: EMAIL from Chanel Nicholson to Undersigned, on Nov. 23, 2024.

**EXHIBIT F:** Still from a video of Undersigned filmed by Chanel Nicholson and produced by Defendants on Nov. 27, 2024.

**EXHIBIT G:** EMAILS between Chanel Nicholson's counsel and Undersigned on Nov. 25, 2024.

**EXHIBIT L:** EMAILS between Undersigned and Casey Wallace on May 21-22, 2024

**EXHIBIT M**: TEXT MESSAGES (undated) between Chanel Nicholson and Destiny Ilori (Plaintiff) on Aug. 10, 2024.

**EXHIBIT N**: TEXT MESSAGES between Chanel Nicholson and Destiny Ilori (Plaintiff), Nov. 2, 2024 and Nov. 7, 2024

**EXHIBIT X**: Letter from Ben Allen to Supreme Court Clerk, dated Nov. 7, 2024

**EXHIBIT Y**: Letter from Ben Allen to Supreme Court Clerk dated Nov. 23, 2024

**EXHIBIT** Z: TEXT MESSAGES (undated) from Chanel Nicholson to Undersigned, in August 2024.

Respectfully submitted,

By: */s/ Eric P. Mirabel*
Eric P. Mirabel
Southern District ID No. 9708
3783 Darcus St.
Houston, Texas 77005
Telephone: (281) 772-3794
eric@emirabel.com

A**TTORNEY FOR PLAINTIFFS**

CERTIFICATE OF SERVICE

On this 14th day of January, 2025, I hereby certify that a true and correct copy of the foregoing document was served via the Clerk of the Court through the ECF system. /Eric Mirabel/

/s/*Eric P. Mirabel*

16