UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LIOSHA WILLIAMS, *et al.*,       §
                                 §
         Plaintiffs,             §
                                 §
VS.                              §   CIVIL ACTION NO. 4:23-CV-01025
                                 §
AHD HOUSTON INC, *et al.*,       §
                                 §
         Defendants.             §

## ORDER

Before the Court are (1) Defendants' Motion for Summary Judgment (Doc. #33) and Plaintiffs' Response (Doc. #34); and (2) Plaintiffs' Amended Motion for Leave to Add Defendant and Change DBA Name (Doc. #64), Defendants' Response (Doc. #73), and Plaintiffs' Reply (Doc. #75). [1] Having considered the parties' arguments and the applicable legal authorities, the Court grants the Motion for Summary Judgment in part and grants the Amended Motion for Leave to Join Defendant and Change DBA Name in part.

## I.    Background

### a.    Factual Background

Plaintiffs Liosha Williams ("Williams"), Destiny Ilori ("Ilori"), Jalaycia Declouet ("Declouet"), Lindsey Smith ("Smith"), and Corina Castro ("Castro") (collectively, "Plaintiffs") are African American women who currently or previously danced at adult entertainment clubs in

---

[1] Also before the Court is Plaintiffs' Motion for Leave to File Declaration of Williams in Support of Plaintiffs' Response (the "Motion for Leave"). Doc. #42. The Court hereby GRANTS the Motion for Leave (Doc. #42) and deems the Declaration properly filed as of August 14, 2024, and incorporated into Plaintiffs' Response. Also before the Court is Plaintiffs' Motion for Leave to File Plaintiffs' Opposition to Defendants' Emergency Motion to Enforce Settlement Agreement (the "Motion for Leave"). Doc. #52. The Court resolved Defendants' Emergency Motion at a hearing on August 13, 2024. The Court hereby DENIES Plaintiffs' Motion for Leave as MOOT.

Houston, Texas.  Doc. #34.  Defendants A.H.D. Houston, Inc., d/b/a Centerfolds ("Centerfolds"), W.L. York, Inc., d/b/a Cover Girls ("Cover Girls"), D WG FM, Inc., d/b/a Splendor ("Splendor"), D Texas Investments, Inc., d/b/a Treasures Gentlemen's Club ("Treasures") (collectively, the "Defendants") are adult entertainment clubs where Plaintiffs worked or applied to work.  *Id.* Plaintiffs generally allege that they were racially discriminated against in some capacity by Defendants, but the factual bases for their respective allegations slightly differ.  As such, the Court will briefly summarize each Plaintiff's allegations in turn.

Williams began working at Treasures in 2018 and signed a Dancer License and Access Agreement ("DLAA") that states that tip sharing among dancers, management, and other employees is not mandatory.  Doc. #33, Ex. B.  However, Williams testifies that during her time at Treasures, managers required her to pay them a portion of her tips; otherwise, she would be denied access to the establishment.  Doc. #34 at 9.  Williams also asserts that managers told her that she was "too dark" and that they do not hire "too many Black girls."  Doc. #42, Ex. A. Williams claims that Treasures breached the DLAA by requiring her to share tips with managers. Doc. #34 at 9.  In February and April of 2022, Williams sought employment at Centerfolds, and a manager told her that "she would have to pay to get hired" and that Williams was "too dark" to work there.  Doc. #42, Ex. A.  As such, Williams brings breach of contract and Section 1981 hostile work environment claims against Treasures and Section 1981 failure-to-hire claims against Centerfolds.  42 U.S.C. § 1981.

Ilori testifies she applied to work at Splendor and Centerfolds on multiple occasions in 2021 and 2022.  Doc. #34, Ex. I.  During one of her attempts to apply at Splendor, a hostess told her that "they had enough ebony dancers."  *Id.*  Similarly, Ilori states that when she asked for an application at Centerfolds, a hostess refused to give her one because Centerfolds would not be

hiring for "a while." *Id.* Ilori claims that the same hostess immediately granted a female Caucasian dancer an application form and let the Caucasian applicant speak directly with the hiring manager. *Id.* As such, Ilori asserts failure-to-hire claims against Splendor and Centerfolds pursuant to Section 1981.

Declouet also sought to apply for a dancer position at Centerfolds in 2022, and she alleges that she was told by a hostess, who spoke with a manager, that "the club had a limit on how many [B]lack women they could hire, and they were 'all full.'" Doc. #34, Ex. H. Smith testifies she attempted to apply to dance at Treasures, but she was told by a manager that there were "'too many Black girls' on [the] day shift and to come for [the] night shift" if she wanted to dance there. Doc. #34, Ex. J. Finally, Castro claims that when she applied to dance at both Splendor and Cover Girls, she was told by both clubs that she would not be hired because she is not white. Doc. #34, Ex. K. Declouet, Smith, and Castro each bring Section 1981 failure-to-hire claims against Defendants.

### b.   Procedural History

This lawsuit commenced on March 21, 2023, when Plaintiffs filed their Complaint against Defendants alleging claims for unlawful discrimination under 42 U.S.C. § 1981 and breach of contract. Doc. #1. Plaintiffs filed their First Amended Complaint on August 1, 2023. Doc. #23. On March 15, 2024, the Court granted in part Defendants' Motion to Dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Doc. #31. As a result, the remaining claims in this case are: (1) Williams' breach of contract and Section 1981 hostile work environment claims against Treasures, (2) Williams' Section 1981 failure-to-hire claim against Centerfolds, (3) Ilori's Section 1981 failure-to-hire claims against Splendor and Centerfolds, (4) Declouet's Section 1981 failure-to-hire claim against Centerfolds, (5) Smith's Section 1981 failure-to-hire claim against Treasures, and (6) Castro's Section 1981 failure-to-hire claims against Splendor and

3

Cover Girls. Defendants have moved for summary judgment on all claims. Doc. #33. Additionally, Plaintiffs have moved for leave to join a necessary party, change an existing Defendant's DBA name, and clarify their damages theory. Doc. #64.

## II. Legal Standards

### a. Federal Rule of Civil Procedure 56

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). "Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial. All reasonable inferences must be viewed in the light most favorable to the party opposing summary judgment, and any doubt must be resolved in favor of the non-moving party." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020) (cleaned up). Self-serving affidavits and declarations are sufficient to create a genuine issue of material fact so long as the statements are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021). But the facts contained therein "must be particularized, not vague or conclusory." *Id.*

### b. Joinder of Parties

Rule 19 of the Federal Rules of Civil Procedure requires a person to be joined as a party if (1) in that person's absence, the court cannot accord complete relief or (2) that person claims an interest in the matter and disposing of the action in that person's absence may impair his or her ability to protect the interest, or will leave an existing party open to a substantial risk of multiple

4

or inconsistent obligations. FED. R. CIV. P. 19(a)(1).

### c.  Leave to Amend

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, pleadings may be amended "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "In exercising its discretion, the trial court should consider whether permitting the amendment would cause undue delay in the proceedings or undue prejudice to the nonmoving party, whether the movant is acting in bad faith or with a dilatory motive, or whether the movant has previously failed to cure deficiencies in his pleadings by prior amendments." *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982). In the absence of any of these reasons, leave should be "freely given." *Shih v. Blue Cross & Blue Shield of Tex. Inc.*, No. 4:21-cv-1530, 2022 WL 444476, at *6 (S.D. Tex. Feb. 10, 2022).

### III.  Analysis

The Court will first consider Defendants' Motion for Summary Judgment. Then, the Court will turn to Plaintiffs' Motion for Leave.

### a.  Williams

Defendants move for summary judgment on Williams' breach of contract and Section 1981 hostile work environment claims against Treasures, as well as her Section 1981 failure-to-hire claim against Centerfolds. Doc. #33. The Court will address each of Williams' claims in turn.

### 1.  Breach of Contract: Treasures

In Plaintiffs' First Amended Complaint, Williams argues that Treasures breached the Dancer License and Access Agreement ("DLAA"), which explicitly states that tip sharing among dancers, management, and other employees is not mandatory. Doc. #33, Ex. B at 11. Williams alleges that Treasures' managers required tips from her "under threat of denial of access if not

5

paid, [and] they would also target Ms. Williams and other Black [d]ancers for more money more often than other races of dancers." Doc. #23 at 4. Defendants contend that Williams' breach of contract claim against Treasures is time-barred by Texas' four-year statute of limitations. Doc. #33 at 9–10.

Under Texas law, a breach of contract claim accrues when the contract is breached or when the breaching party has notice of facts sufficient to place them on notice of the breach. *Taub v. Houston Pipeline Co.*, 75 S.W.3d 606, 618 (Tex. App.—Texarkana 2002, pet. denied). Williams began working for Treasures on May 16, 2018. Doc. #42, Ex. A. This lawsuit was filed nearly five years later, on March 21, 2023. Doc. #33 at 9–10. Thus, Defendants argue Williams' breach of contract claim is time-barred. *Id.* In response, Williams fails to advance any argument to rebut Defendants' statute of limitations defense.

The Court finds that Williams' breach of contract claim against Treasures is time-barred because it accrued in approximately May 2018, when Williams was hired at Treasures. *In re Monumental Life Ins. Co.*, 365 F.3d 408, 420 (5th Cir. 2004) (noting that the accrual period "commences when the plaintiff either has actual knowledge of the violation or has knowledge of facts that, in the exercise of due diligence, would have led to actual knowledge"). Therefore, the statute of limitations period expired around May 2022, ten months before Williams filed this lawsuit. Accordingly, Defendants' Motion for Summary Judgment as to Williams' breach of contract claim against Treasures is granted.

### 2. Hostile Work Environment: Treasures

Next, Defendants move for summary judgment on Williams' Section 1981 hostile work environment claim against Treasures.

6

### i.　Section 1981's Time Limitations

Defendants first argue that Williams' hostile work environment claim is time-barred. Doc. #33 at 8. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981. The Supreme Court initially interpreted Section 1981 to apply only to contract formation, not discriminatory conduct in the execution of a contract. *Patterson v. McLean Credit Union*, 491 U.S. 164, 183-85 (1989). In response to that decision, in 1991, Congress amended § 1981 to clarify that it applied to the "performance" of a contract as well as the "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Civil Rights Act of 1991 § 101 (codified at 42 U.S.C. § 1981(b)). Defendants argue that a "post-formation" claim under Section 1981 is subject to a four-year limitations period. Doc. #33 at 9. In response, Williams counters that her hostile work environment claim under Section 1981 is subject to the continuing violation doctrine. Doc. #34 at 10-11.

Under the continuing violation doctrine, a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period. *Pegram v. Honeywell*, Inc., 361 F.3d 272, 279 (5th Cir. 2004), *abrogated on other grounds* by *Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023). The Fifth Circuit has made clear that the continuing violation doctrine applies to hostile work environment claims. *See Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017) ("Hostile environment claims are 'continuing' because they involve repeated conduct, so the 'unlawful employment practice' cannot be said to occur on any particular day."). Williams testifies she worked at Treasures between 2018–2022 and was subjected to racial discrimination throughout her employment. Doc.

7

#42, Ex. A. Accordingly, Williams' hostile work environment claim is not time-barred.

### ii. **Prima Facie Case**

Defendants next argue that Williams has failed to provide enough evidence of a hostile work environment to survive summary judgment. Doc. #33 at 5. Courts consider "racial discrimination and retaliation claims based on Title VII and 42 U.S.C. § 1981 under the same rubric of analysis." *Johnson v. PRIDE Industries, Inc.*, 7 F.4th 392, 399 (5th Cir. 2021). To assert a hostile work environment claim, a plaintiff must demonstrate that she (1) belongs to a protected group, (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on her membership in the protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Johnson*, 7 F.4th 392, 399 (5th Cir. 2021).

Williams is a member of a protected group as an African American woman. Doc. #42, Ex. A. With respect to the second and third elements, Williams has submitted a sworn declaration stating that Treasures told her "she was only allowed to work [the] day shift, from 11 AM to 7 PM, because [she] was considered 'too dark' to work at night." Doc. #42, Ex. A. In addition, managers frequently told Williams that she was "too dark-skinned and they don't 'hire Black girls,' or they don't 'hire too many Black girls.'" *Id.* This evidence is sufficient to raise a fact issue as to whether Williams, an African American woman, was subjected to unwelcome harassment at her place of work because of her race.

To satisfy the fourth element and demonstrate that the harassment affected a term, condition, or privilege of employment, "the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *West*

*v. City of Hous., Tex.*, 960 F.3d 736, 741–42 (5th Cir. 2020). The alleged harassment must be "objectively hostile or abusive—meaning . . . that a reasonable person would find hostile or abusive—and is subjectively perceived by the victim as abusive." *Johnson*, 7 F.4th at 400 (cleaned up). "To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 401 (5th Cir. 2007). "Although no single factor is determinative, pertinent considerations are (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *West*, 960 F.3d at 742. "An egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment." *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007). "The inverse is also true: Frequent incidents of harassment, though not severe, can reach the level of 'pervasive.'" *Id.* Thus, "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Id.*

Here, Williams' summary judgment evidence includes her own sworn declaration, the declaration of co-Plaintiff Smith, and the deposition testimony of Andrew Skwera ("Skwera"), who worked as a long-time manager of various adult entertainment businesses owned by Ali and Hassan Davari (the "Davari brothers"), the owners of Treasures. Doc. #34 at 2–3. Specifically, Skwera testifies that (1) clubs owned and operated by the Davari brothers have a reputation for not offering positions to Black women, and (2) managers in the Davari brothers' clubs have refused to hire dark-skinned women and upheld a long-established racist policy of excluding Black dancers. Doc. #34 at 5 ¶¶ 6–9. In addition, Smith testifies that when she applied for a job at

9

Treasures, a manager said there were "too many Black girls" on the day shift and to come for the night shift if she wanted to work there.  Doc. #34, Ex. J.

Considering the totality of circumstances, the Court finds that Williams has presented sufficient evidence to create an issue of fact as to whether the allegedly racist shift schedules, derogatory remarks, and open exclusion of Black dancers based on their race constituted objectively offensive harassment that was sufficiently severe or pervasive to alter the conditions of her employment and create a hostile or abusive work environment. *See Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000) (holding that African American employees who were subjected to a variety of racial slurs every few months over three years raised a fact issue as to whether slurs were sufficiently severe or pervasive), *abrogated on other grounds* by *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006).

With respect to the fifth element of a hostile work environment claim, that the employer knew or should have known of the harassment and failed to take remedial action, Treasures argues that it has policies and procedures in place that prohibit and discipline racial harassment.  Doc. #33 at 5–6.  Treasures further denies that it refuses Black applicants based on race or requires Black dancers to pay more to receive access to the club.  *Id.* at 6.  However, Williams is not required to prove this element to establish a hostile work environment claim.   "[W]here the harassment is allegedly committed by a supervisor . . . [of] the harassment victim, the plaintiff employee needs to satisfy only the first four of the elements" of a hostile work environment claim.  *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 353 (5th Cir. 2001), *abrogated on other grounds* by *Vance v. Ball State Univ.*, 570 U.S. 421 (2013).  "[A]n employee is a 'supervisor' . . . if he or she is empowered by the employer to take tangible employment actions against the victim." *Vance*, 570 U.S. at 424.

10

In the present case, Williams presents evidence of derogatory racial remarks and racist practices perpetrated by direct managers and executive management of Treasures. Doc. #34 at 5 ¶¶ 6–9. For instance, she provides evidence that Bob Furey ("Furey"), the regional manager overseeing Treasures, had asked "who hired her," when referring to a Black dancer. *Id.* ¶¶ 2, 7. Furey was also heard saying that there were "too many [B]lack girls" and revoked a manager's hiring authority after discovering that the manager had hired a Black dancer. *Id.*

In light of the management positions these individuals held, a reasonable jury could conclude that each of them was empowered to take tangible employment actions against Williams. Consequently, to survive Defendants' motion for summary judgment, Williams need not produce evidence that Treasures knew or should have known of the harassment. As such, the Court finds Plaintiff has presented sufficient evidence for her claim of a hostile work environment to survive summary judgment. Therefore, Defendants' Motion for Summary Judgment is denied as to Williams' Section 1981 hostile work environment claim against Treasures.

### 3. Failure to Hire: Centerfolds

Next, Defendants move for summary judgment on Williams' Section 1981 failure-to-hire claim against Centerfolds. "Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII." *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n. 2 (5th Cir.1996). Thus, "to succeed on a claim of intentional discrimination under Title VII . . . or Section 1981, a plaintiff must first prove a prima facie case of discrimination." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996). A plaintiff may prove employment discrimination through direct or circumstantial evidence. *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015). If the plaintiff presents only circumstantial evidence, she must prove

11

discrimination inferentially using the *McDonnell Douglas* burden-shifting framework. *Id.* However, if the plaintiff presents direct evidence, "the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." *Id.* (*quoting Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)).

To determine whether comments in the workplace constitute "direct evidence" or only "stray remarks," courts look to four factors: whether the comments are (1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision. *Id.* at 476. In applying this test, the ultimate focus is whether the comments prove "without inference or presumption, that race was a basis in employment decisions" in the plaintiff's workplace. *Id.* (quoting *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005). When the proximity of the comments to the employment decision is challenged, the Fifth Circuit has found the proximity-in-time factor to be satisfied when the comments were "routine" or "made over a lengthy period of time." *Id.*

According to Williams, she applied to Centerfolds on February 12, 2022, and again in April 2022. Doc. #42, Ex. A. Williams testifies that when she applied in April 2022, the manager told her she would have to pay to get hired and that she was "too dark" to work there. *Id.* If made, this statement is direct evidence that race played a role in Centerfold's decision not to hire Williams. Put differently, "no inference or presumption" is required to get from this statement to the conclusion "that race was a basis in [the] employment decision." *See Jones*, F.3d at 993.

Additionally, the comments described in Williams' declaration are strikingly similar to comments that the Fifth Circuit has previously held constitute direct evidence of discrimination.

12

In *Jones*, the plaintiff alleged that he was not hired as a poker dealer because he was Black. 427 F.3d at 991. The Fifth Circuit held that the plaintiff's race discrimination claim was supported by direct evidence because two witnesses testified to "decision maker(s) in the poker room us[ing] race as a factor in employment decisions." *Id.* at 993. The decision maker in both instances made comments to the witnesses that "these good old white boys don't want [B]ack people touching their cards" and "maybe I've been told not to hire too many [B]lacks in the poker room." *Id.* at 990–91. The court in *Jones* held that these statements "clearly and explicitly indicate[d] that decision maker(s) in the poker room used race as a factor in employment decisions, which is by definition direct evidence of discrimination." *Id.*

In the present case, Williams offers Declouet's declaration, Ilori's declaration, and Skwera's deposition as additional direct evidence of discrimination. Declouet testifies that when she tried to apply to Centerfolds, a hostess told her, after speaking with the manager, "that the club had a limit on how many [B]lack women they could hire, and they were all full." Doc. #34, Ex. H. Additionally, Ilori testifies that a Centerfolds hostess refused to give her an application but immediately provided one to a Caucasian dancer, allowing the Caucasian applicant to speak directly with the hiring manager. Doc. #34, Ex. I. Finally, Williams submits the deposition of Skwera, who alleges that the clubs owned by the Davari brothers in Houston, including Centerfolds, have a reputation for not hiring African American women dancers. Doc. #34 at 11. Like the statements in *Jones*, the comments at issue here indicate that Williams was disqualified from applying to Treasures because of her race. Moreover, they do so "clearly and explicitly" and appear to be "routine" when denying Black dancers job applications. *Id.* Thus, Williams has provided direct evidence of discrimination.

As discussed above, when a plaintiff presents direct evidence of discrimination, the burden

13

shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of race. Here, Centerfolds has not carried its burden. Centerfolds merely asserts that there is no record that Williams applied for a dancer position or evidence of the manager's derogatory comments. Doc. #33 at 10. The Court finds Williams has offered direct evidence that she was denied employment on account of her race, creating a genuine issue for trial. Therefore, Defendants' Motion for Summary Judgment is denied as to Williams' Section 1981 failure-to-hire claim against Centerfolds.

### b. Ilori

Next, Defendants move for summary judgment on Ilori's Section 1981 failure-to-hire claims against Splendor and Centerfolds.

### 1. Failure to Hire: Splendor

First, Defendants move for summary judgment on Ilori's Section 1981 failure-to-hire claim against Splendor. As discussed above, to determine whether comments in the workplace constitute direct evidence of discrimination, this Court looks to four factors: "whether the comments are (1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision." *Etienne*, 778 F.3d at 476. In her declaration, Ilori states that when she attempted to apply to Splendor on May 20, 2022, the hostess told Ilori they already had "enough ebony dancers." Doc. #34, Ex. I. Applying the four factors, Ilori has distinguished her direct evidence from stray remarks because (1) the remarks explicitly referenced her skin color; (2) when she was denied a job application; (3) by a hostess in charge of distributing job applications; and (4) the comments were directly related to the decision to deny her a job application.

14

Splendor has failed to establish by a preponderance of the evidence that the same decision would have been made regardless of race. Defendants merely dismiss Ilori's claims as "conclusory." Doc. #33 at 12. Defendants further argue that hostesses do not have hiring privileges for the purposes of a Section 1981 claim. *Id.* However, the Court finds the record contains enough evidence that would permit a reasonable fact finder to conclude that the hostesses had some level of authority with respect to hiring. Specifically, the record is replete with instances of hostesses at Splendor acting as an initial screener for job applicants. *See* Doc. #34, Exs. A, I, K. Therefore, Defendants' Motion for Summary Judgment is denied as to Ilori's Section 1981 failure-to-hire claim against Splendor.

### 2. Failure to Hire: Centerfolds

Defendants next move for summary judgment on Ilori's Section 1981 failure-to-hire claim against Centerfolds. In showing intentional employment discrimination, a plaintiff is not required to come forward with direct evidence of discriminatory intent. *LaPierre*, 86 F.3d at 449. Because direct evidence of an employer's discriminatory intent is rare, plaintiffs must ordinarily prove their claims through circumstantial evidence. *Id.* Claims of racial discrimination based only on circumstantial evidence are evaluated under the *McDonnell Douglas* burden-shifting framework. *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). Under this three-part scheme, a plaintiff must first establish a prima facie case of discrimination by showing: (1) she belongs to a protected group; (2) she was qualified for the position sought; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside the protected class. *Id.* If a plaintiff is successful in establishing her prima facie case, a presumption of discrimination arises. *Id.* The burden then shifts to the defendant to produce a legitimate, nondiscriminatory justification for its actions. *Id.* The defendant's burden is satisfied by producing evidence, which, "taken as

15

true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the defendant articulates a reason that can support a finding that its actions were nondiscriminatory, the mandatory inference of discrimination created by the plaintiff's prima facie case falls away. *Hicks*, 509 U.S. at 510–11.

In her declaration, Ilori states that she is a dancer/entertainer who has worked in Houston clubs for the last four years. Doc. #34, Ex. I. She claims that when she attempted to apply for a position at Centerfolds on May 20, 2022, the hostess "refused to give her an application" and then told her that they "were not going to be hiring for a while." *Id.* Ilori additionally testifies that the hostess gave a similarly situated Caucasian dancer an application form and "let this person meet and speak directly with the hiring manager." *Id.* Ilori further states that an employee at Centerfolds told her that "they only grant dancer positions to a limited number of Black dancers." *Id.*

The Court finds that Ilori has made out a prima facie case by showing (1) she is an African American woman; (2) she applied and was qualified for the position at Centerfolds; (3) she was rejected despite her qualifications; and (4) a Caucasian dancer was given an application instead. Centerfolds has failed to assert any legitimate, nondiscriminatory reason for Ilori's denial, arguing simply that Centerfolds does not deny a dancer an application based on her race. Doc. #33 at 13. Accordingly, Ilori has established a genuine issue of fact as to whether she was the victim of intentional employment discrimination. Therefore, Defendants' Motion for Summary Judgment is denied as to Ilori's Section 1981 failure-to-hire claim against Centerfolds.

### c. Declouet

Defendants also move for summary judgment with respect to Declouet's Section 1981 failure-to-hire claim against Centerfolds. In her declaration, Declouet states that during one of her

attempts to apply at Centerfolds, a hostess, who had just spoken privately with a manager, told her that "the club had a limit on how many [B]lack women they could hire, and they were 'all full.'" Doc. #34, Ex. H. As discussed above, to determine whether comments in the workplace constitute direct evidence of discrimination, this Court looks to four factors: "whether the comments are (1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision." *Etienne*, 778 F.3d at 476.

Here, Declouet has presented direct evidence of discrimination because (1) the remarks explicitly referenced her race; (2) when she was denied a job application; (3) by a hostess in charge of distributing job applications who had just spoken with a hiring manager; and (4) the comments were directly related to the decision to deny her a job application. Moreover, Centerfolds has failed to establish by a preponderance of the evidence that the decision not to hire Declouet would have been made regardless of race. Centerfolds merely dismisses Declouet's claims as "conclusory" and insists that it does not have a quota system that limits the number of Black dancers. Doc. #33 at 14. Accordingly, Defendants' Motion for Summary Judgment is denied as to Declouet's failure-to-hire claim against Centerfolds.

### d. Smith

Defendants next move for summary judgment on Smith's Section 1981 failure-to-hire claim against Treasures. Applying the four factors, Smith has distinguished her direct evidence from stray remarks. In her declaration, Smith testifies that when she tried to apply for a position at Treasures, she was told by a manager that there were "'too many Black girls' on [the] day shift and to come for [the] night shift" if she wanted to dance there. Doc. #34, Ex. J. Accordingly, Smith has provided direct evidence of discrimination because (1) the remarks explicitly referenced

17

her race; (2) when she was denied a job application; (3) by a manager; and (4) the comments were directly related to the decision to deny her a job application. *See Etienne*, 778 F.3d at 476. In addition, Treasures has failed to carry its burden to show by a preponderance of the evidence that Smith would have been denied a job position regardless of discriminatory animus, asserting simply that Smith's allegations are "unsubstantiated," and that Treasures has never permitted a racially discriminatory practice or policy. Doc. #33 at 14-15. Therefore, Defendants' Motion for Summary Judgment is denied as to Smith's Section 1981 failure-to-hire claim against Treasures.

### e. Castro

Finally, Defendants move for summary judgment on Castro's Section 1981 failure-to-hire claims against Splendor and Cover Girls. In her declaration, Castro testifies that when she attempted to apply at both clubs, she "was told by both the manager and/or the hostess near the front that because she was not white, they wouldn't hire her." Doc. #34, Ex. K. Accordingly, Castro has provided evidence that (1) the remarks explicitly referenced her race; (2) when she was denied a job; (3) by a manager or someone who screened job applicants; and (4) the comments were directly related to a decision to deny hiring her. *See Etienne*, 778 F.3d at 476. In response, both Splendor and Cover Girls failed to produce a legitimate, nondiscriminatory justification for their actions. Instead, they rebut only by saying Castro's claims are "conclusory," and that Splendor and Cover Girls do not deny dancers applications based on their race. Doc. #33 at 15. Thus, Defendants' Motion for Summary Judgment is denied as to Castro's failure-to-hire claims.

### f. Leave to Amend

Plaintiffs ask the Court to grant them leave to amend their initial pleading to join D. Houston, Inc. as a necessary party under FED. R. CIV. P. 19. Doc. #64 at 1. The party advocating joinder "has the initial burden of demonstrating that a missing party is necessary." *Hood ex rel. Mississippi*

18

*v. City of Memphis, Tenn.*, 570 F.3d 625, 628 (5th Cir.2009). If, however, "an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder." *Id.*

Plaintiffs argue that D. Houston, Inc. is a necessary party because it has a certificate for doing business under the assumed name "Treasures." Doc. #64 at 3. Plaintiffs assert they were not aware that D. Houston, Inc. held the assumed name "Treasures" until August 13, 2024, when Defendants indicated it on the record. Doc. #64 at 6, *see* Doc. #41 at 2. Defendants counter that with proper diligence, Plaintiffs could easily have discovered that D. Houston, Inc. does business as Treasures via public record search. Doc. #73 at 2. They further argue that Plaintiffs are acting in bad faith by bringing this Motion after the deadline. *Id.* at 4. However, Defendants do not dispute that D. Houston, Inc. does business as Treasures. On the contrary, they have submitted a sworn statement by Hassan Davari testifying that "the owner of Treasures is D. Houston, Inc." *Id.*, Ex. 5. Therefore, it appears the parties agree that D. Houston, Inc. is a necessary party to this action.

Moreover, the Court finds it cannot accord complete relief among the parties, namely Plaintiffs, who assert claims against Treasures. Finally, joinder of D. Houston, Inc. will not deprive this court of subject matter jurisdiction, as the basis of jurisdiction is now federal question jurisdiction. *See* FED. R. CIV. P. 19(a)(1)(A). Thus, the Court finds Plaintiffs have met their burden to demonstrate compulsory joinder. Accordingly, Plaintiffs' request for leave to add D. Houston, Inc., d/b/a Treasures as a Defendant is granted. Additionally, in the interest of clarity, Plaintiffs may further amend the complaint to remove the claims and parties that have been abandoned or dismissed.

Plaintiffs next request leave to file an amended complaint to change the DBA for Defendant D. Texas Investments, Inc. from "Treasures Gentleman's Club" to "Treasures." Doc. #64 at 9. In response, Defendants provided an affidavit of an officer of D. Texas Investments, Inc. testifying, "D. Texas Investments, Inc. does not do business as Treasures." Doc. #73, Ex. 5. Courts examine five considerations to determine whether to grant a party leave to amend a complaint: 1) undue delay; 2) bad faith or dilatory motive; 3) repeated failure to cure deficiencies by previous amendments; 4) undue prejudice to the opposing party; and 5) futility of the amendment. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). Given Defendants' response, the Court finds Plaintiffs' proposed DBA change would be futile as Defendants have clearly shown Treasures is not the proper DBA for D. Texas Investments, Inc. Accordingly, Plaintiffs' request for leave to change the DBA name of D. Texas Investments, Inc. is denied.

Finally, Plaintiffs request leave to clarify a "back pay" damages theory for Plaintiff Liosha Williams. Doc. #64 at 11–13. Plaintiffs have had ample time to articulate their damages theory based on events that have been well-known since this case was filed nearly two years ago.[2] Additionally, Plaintiffs have not pointed to anything new that would justify their significant delay in seeking leave to amend. The Court finds that Plaintiffs' failure to cure this deficiency earlier weighs against leave. *See St. Germain v. Howard*, 556 F.3d 261, 264 (5th Cir. 2009) (finding district court committed no error in denying opportunity to amend because "plaintiffs had several opportunities to state their best case."); *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 608 (5th Cir. 1998) (affirming denial of leave to amend pleading after dismissal of claims where plaintiffs "had three opportunities to articulate their damage theory" and district court determined defendant

---

[2] In contrast, Plaintiffs' Motion for Leave to Add D. Houston, Inc., d/b/a Treasures was filed only sixteen days after they discovered its identity. Doc. #46

20

"should not be subjected to any further costs of litigation in this lawsuit."). Accordingly, Plaintiffs' request for leave to clarify a damages theory for Plaintiff Liosha Williams is denied.

## IV. Conclusion

In conclusion, Defendants' Motion for Summary Judgment is hereby GRANTED IN PART. Doc. #33. Specifically, summary judgment is GRANTED with respect to Williams' breach of contract claim against Treasures because the claim is time-barred. However, the Motion is DENIED with respect to all other claims because Plaintiffs have raised genuine issues of fact that preclude summary judgment.

The Court further GRANTS Plaintiffs' Motion for Leave to File Declaration of Plaintiff Williams (Doc. #42) and GRANTS IN PART Plaintiffs' Amended Motion for Leave to Add Defendant and Change DBA Name (Doc. #64). Plaintiffs' Amended Complaint in accordance with the narrow revisions discussed above shall be filed within **five (5) business days of retaining new counsel.**

Plaintiffs' Opposed Motion for Leave (Doc. #46); Plaintiffs' Motion for Leave to File Proposed Order (Doc. #47); and Plaintiffs' Motion for Oral Hearing (Doc. #66) are DENIED as MOOT. Finally, because the Court resolved Defendants' Motion to Enforce Settlement Agreement (Doc. #38) at a hearing on August 13, 2024, Plaintiffs' Motion for Leave to File Opposition to Defendants' Motion (Doc. #52) is DENIED as MOOT.

It is so ORDERED.

JAN 27 2025
_____
Date

_____
The Honorable Alfred H. Bennett
United States District Judge

21