IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LIOSHA WILLIAMS, DESTINY ILORI, §
AND JALAYCIA DECLOUET, §
§
§
*Plaintiffs,* §
§
v. §
§   CIVIL ACTION NO. 4:23-cv-01025
§
A.H.D. HOUSTON, INC. d/b/a §
CENTERFOLDS; W.L. YORK, INC. d/b/a §
THE COVER GIRLS; D WG FM, INC §
d/b/a SPLENDOR, D. TEXAS §
INVESTMENTS INC / AHD HOUSTON §
d/b/a TREASURES GENTLEMENS §
CLUB; ALI DAVARI and HASSAN §
DAVARI, §
§
*Defendants.* §

**REPLY BRIEF TO MOTIONS FOR: I. SANCTIONS; II. COSTS**

**I. Reply re: Motion for Sanctions**.

**Their Failure to Deny Misconduct Forfeits Opposition**. Wallace & Allen did not deny any of the allegations in the Motion for Sanctions Against Wallace & Allen (Dkt. 205), including: they had knowingly submitted a fabricated email for use as evidence, they had disobeyed court rules and orders, and they had habitually obstructed discovery and made several significantly misrepresentations to the Court. Their only stated reason for opposing the Motion for Sanctions was: "As this Court may recall, this issue was previously briefed by defendant relating to attorney Eric Mirabel's misconduct which resulted in his voluntary withdrawal from the case to avoid a bar [sic.] complaint." Dkt. 207. They also "incorporate the briefing from Docket Numbers 68 through 70…" but these briefs were the false allegations of my misconduct, from December, 2024. Their failure to deny the misconduct allegations in the Motion for Sanctions constitutes their forfeiture of any opposition to all those allegations. *See Norris v. Causey,* 869 F.3d 360, 373 n.10 (5th Cir.

1

2017), citing *Weaver v. Puckett*, 896 F.2d 126, 128 (5th Cir. 1990). Judgment should be entered for the undersigned.

**More Misrepresentations by Wallace & Allen.** In the face of accusations in the Motion for Sanctions that they improperly caused my withdrawal using a toolbox of misconduct including several material misrepresentations to the Court, they continue to make misrepresentations in their Response (Dkt. 207). Their "defense" that my misconduct "resulted in his voluntary withdrawal from the case to avoid a bar [sic.] complaint" is false. At the hearing on Jan. 17 2025,[1] after Mr. Wallace falsely stated to the Court that he had played the recording from Ms. Nicholson for me (when he had only played part of it, so that the date of the recording could not be established by me), and after he provided me his proposed exhibit for the hearing, which was the fabricated **Exhibit N** (Dkt. 205-15), the Court stated (in a jury room meeting) there would be "consequences" if I was found to have encouraged Ms. Nicolson to disobey her subpoena; but no "bar complaint" (or State Bar grievance) was mentioned. I decided to withdraw because I felt I could not effectively represent my clients before the Court, in view of its comments indicating the Cout felt I had disgraced the profession.[2] My motion for withdrawal (Dkt. 84) was granted on Feb. 25, 2025 (Dkt. 89), and the first mention of State Bar involvement by the Court was at the oral hearing on March 14, 2025, after my withdrawal. After a hearing on May 23, 2025 on my motion for reappearance, the Court suspended proceedings and stated an intention to refer the matter to the State Bar for investigation. *See* May 23rd Minute Order. Later, on June 3, 2025, I received a letter from Ms. Carloss, with a draft State Bar grievance attached. **Exhibit A** hereto. In response, I withdrew my motion for reappearance because I had no clients in the case, and I decided not to delay my former

---

[1] As explained in more detail in the Motion for Sanctions (Dkt. 205) at pp. 16-17.
[2] Motion for Sanctions (Dkt. 205) p. 17.

2

clients' trial by forcing a State Bar investigation (during which time the suspension of proceedings would presumably have remained in place).

**My Proper and Honest Advice to Ms. Nicholson in the Recording**. The allegation that I interfered with Ms. Nicholson's subpoena is rebutted in the Motion for Sanctions, Dkt. 205 at pp. 6-10. Because, at the May 23, 2025 hearing, Mr. Wallace specifically noted my response (in their selectively edited recording clip) to Ms. Nicholson's question about the consequences of her disobeying a subpoena, by saying: "if you don't show up, you don't show up," (Exhibit I, Dkt. 205-9) -- implying that this statement alone constituted misconduct -- I note the following context of that statement and the comment to the applicable disciplinary rule.

In the portion of my conversation with Ms. Nicholson edited out of their recording (Dkt. 205-9), she had been repeatedly pressing me to subpoena her at trial as *my* witness. She was referring to those earlier exchanges in the recording transcript (Dkt. 205-9) where she stated: "Like, when we go to trial, do you want me to come or not?"[3] She had also told me, in the part of the conversation edited out, that she would not be Mr. Wallace's witness and was going to disobey his subpoena. I told her to obey it – which is also edited out.

Later in the conversation, her question that prompted my response that Mr. Wallace quoted to the Court, was: "You know, like, so will I get in trouble for ignoring a subpoena? … if I don't show up, how does that go? Are You going to pay my fine"? Dkt. 205-9. As she had already stated definitively that she was going to disobey her subpoena, I advised her honestly as to the consequences of her contemplated illegal action – in accordance with Tex. Disciplinary Rules

---

[3] My vague and non-committal response to that question didn't even indicate she should not or could not testify *for me* – let alone indicate she shouldn't obey a Wallace & Allen subpoena. Motion for Sanctions, Dkt. 205, p. 9 "I'm not saying absolutely not. .. I don't really see that it's going to be that helpful." Dkt. 205-9

Prof'l Conduct R. 1.02 cmt. 7: "A lawyer is required ***to give an honest opinion about the actual consequences that appear likely to result from a client's conduct***. The fact that a client uses advice in a course of action that is criminal or fraudulent does not, of itself, make a lawyer a party to the course of action." (emphasis added) Moreover, as part of this advice, my entire response to Ms. Nicholson's question and request for money/fine payment (including the part ***not*** quoted by Mr. Wallace at the 5.23.2025 hearing) included a warning of potential negative consequences: "Well, I mean, it's possible that he could press you and try to get some money from you. But why would he do that? If you don't show up, you don't show up." Dkt. 205-9.

**II. Motion to Intervene for Costs**.

Defendants did not provide any reasoned response to the request for costs in the Motion to Intervene (Dkt. 204), so the requested costs of $3,838.53 should be awarded the undersigned on a finding of liability against any defendant in favor of any of the three plaintiffs. Plaintiffs' redacted engagement agreements are attached as **Exhibit B** (Ilori), **Exhibit C** (Williams) and **Exhibit D** (Declouet), to complete the record. In the event any plaintiff is found by the Court to have suffered any damages by any defendant, the undersigned intends to file a motion for attorneys fees *quantum meruit*, as well.

**III. Conclusion**

In conclusion, the undersigned's pending Motion for Sanctions (Dkt. 205) and Motion to Intervene of Right for Litigation Costs (Dkt. 204) should be granted.

Respectfully Submitted,

By: /s/*Eric P. Mirabel*
    Eric P. Mirabel
    Texas State Bar No. 14199560
    Southern District ID No. 9708
    eric@emirabel.com
    3783 Darcus St.
    Houston, Texas 77005
    Tel:  (281) 772-3794

**CERTIFICATE OF SERVICE**

On this 10th day of June, 2026, I hereby certify that a true and correct copy of the foregoing document was served on all counsel via the Clerk of the Court through the ECF system.

/s/*Eric P. Mirabel*