United States District Court
Southern District of Texas
**ENTERED**
September 24, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LIOSHA WILLIAMS, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-01025 |
| | § | |
| AHD HOUSTON INC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The remaining Plaintiffs in this case are Liosha Williams, Destiny Ilori, and Jalaycia Declouet (collectively, "Plaintiffs"). Plaintiffs are African American women who currently or previously danced at adult entertainment clubs in Houston, Texas. Doc. #34. Defendants A.H.D. Houston, Inc., d/b/a Centerfolds ("Centerfolds") and D WG FM, Inc., d/b/a Splendor ("Splendor") are adult entertainment clubs where Plaintiffs worked or applied to work. *Id.*

This lawsuit commenced on March 21, 2023, when Plaintiffs filed their Complaint against Defendants. Doc. #1. The issues before the Court during trial were: (1) Williams' Section 1981 failure-to-hire claim against Centerfolds, (2) Ilori's Section 1981 failure-to-hire claims against Splendor, (3) Ilori's Section 1981 failure-to-hire claims against Centerfolds, and (4) Declouet's Section 1981 failure-to-hire claim against Centerfolds. Doc. #82. On February 9, 2026, the above-captioned case proceeded to a bench trial before this Court. All parties appeared through their counsel of record. During the bench trial, the Court received evidence and heard sworn testimony from Jalaycia Declouet, Destiny Ilori, Liosha Williams, Ali Davari, Halmudd Naumann, Inniwe Dakouo, and Crystal Cowart. After considering the pleadings, evidence, arguments of counsel,

and the applicable legal authority, the Court enters the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1).[1]

## FINDINGS OF FACT

The following facts have been established by a preponderance of the evidence.

### A. Parties and Claims

1. Plaintiffs Liosha Williams ("Williams"), Destiny Ilori ("Ilori"), and Jalaycia Declouet ("Declouet") are African-American women. Doc. #211 at 18, 43, 89.
2. Defendant A.H.D. Houston, Inc. owns and operates Centerfolds, an adult entertainment establishment in Houston, Texas. Doc. #211 at 205.
3. Defendant D WG FM, Inc. owns and operates Splendor, an adult entertainment establishment in Houston, Texas. Doc. #211 at 205.
4. Plaintiffs sought opportunities to work as dancers at Centerfolds, Splendors, or both. Doc. #211 at 5.
5. During the relevant period, dancers at Centerfolds and Splendor were treated as independent contractors. Doc. #211 at 147, 178.
6. Dancers were not paid wages by Defendants. Their earnings depended primarily on payments received from customers. Doc. #211 at 149–150.
7. Dancer earnings varied substantially based on customer volume, shift, day of the week, individual performance, customer preferences, and market conditions. Doc. #211 at 150, 168, 189.

---

[1] Any findings of fact that are more properly conclusions of law are so deemed. Any conclusions of law that are more properly findings of fact are so deemed. All relief not granted is expressly denied.

8. Plaintiffs remaining claims arise under 42 U.S.C. § 1981. Doc. #211 at 4.

9. The issue tried to the Court was whether Defendants failed to hire Plaintiffs because of their race. Doc. #211 at 4.

**B. Defendants' Contracting Practices**

10. Defendant Ali Davari ("Davari") testified that he has ownership interests in Centerfolds and Splendor. Doc. #211 at 118–119.

11. Davari testified that Centerfolds and Splendor did not maintain a race-based quota limiting the number of African-American dancers who could work at either club. Doc. #211 at 120–121.

12. Davari testified that race was not a factor in determining whether a dancer could work at Centerfolds or Splendor. Doc. #211 at 120.

13. Davari testified that managers generally wore suits and were responsible for club operations. Doc. #211 at 122.

14. Davari testified that hostesses did not possess authority to hire dancers. Doc. #211 at 126.

15. Davari testified that hostesses did not possess authority to reject dancer applicants. Doc. #211 at 126.

16. Davari testified that if a manager was unavailable, a hostess could tell an applicant to return later. Doc. #211 at 127.

17. Davari testifies that any race-based denial of an applicant would violate Defendants' policies. Doc. #211 at 131, 157.

18. Davari acknowledged that Defendants did not maintain formal records of every person who inquired about dancing but was not permitted to work. Doc. #211 at 161.

19. Defendants presented evidence that between the years of 2017-2025, African-American dancers made up between 10-26% of total dancers contracted at Splendor. Tr. Ex. D-12.

20. Defendants presented evidence that between the years of 2017-2025, African-American dancers made up between 13-36% of total dancers contracted at Centerfolds. Tr. Ex. D-12.

21. The fact that African-American dancers worked at Splendor and Centerfolds does not preclude a finding that a particular applicant was discriminated against.

22. Nevertheless, the Court finds that the evidence in this case undermines Plaintiffs' contention that Defendants maintained a policy, practice, or quota limiting the number of African-American dancers who could work at Centerfolds and Splendor.

### C. Plaintiff's Testimony

#### 1. Jalaycia Declouet

23. Declouet testified that she attempted to apply to work at Centerfolds on three occasions. Doc. #211 at 14.

24. Declouet testified that she went to Centerfolds with Kylie Campbell, a Caucasian roommate, and that Campbell was hired while Declouet was not. Doc. #211 at 19–21.

25. Declouet testified that, during a later visit, a front-desk employee told her that Centerfolds had reached its "limit" on Black dancers and was "full." Doc. #211 at 18, 22.

26. Declouet testified that she observed the front-desk employee speak with a male manager before making that statement. Doc. #211 at 17.

27. Declouet did not speak directly with the alleged male manager. Doc. #211 at 17.

28. Declouet could not identify the alleged male manager by name. Doc. #211 at 27–30.
29. Declouet could not identify the front-desk employee by name. Doc. #211 at 27.
30. Declouet was questioned about prior deposition testimony in which she identified the manager as Davari. Doc. #211 at 27–30.
31. At trial, Declouet testified that she now understood Davari to be an owner and that the person she saw was not Davari but an unidentified manager. Doc. #211 at 27–30.
32. Declouet did not present testimony from Kylie Campbell or any other witness who observed the alleged interaction.
33. Declouet did not present contemporaneous documentary evidence corroborating the alleged race-based statement.

**2. Destiny Ilori**

34. Ilori testified that she applied to work at Splendor three times. Doc. #211 at 34.
35. Ilori testified that, during her third visit, a manager stated that Splendor was not hiring because it had enough "ebony dancers." Doc. #211 at 43.
36. Ilori understood the phrase "ebony dancers" to refer to Black or African-American dancers. Doc. #211 at 43.
37. Ilori testified that she attempted to work at Centerfolds approximately eight times. Doc. #211 at 46.
38. Ilori testified that she was repeatedly told that Centerfolds was not hiring or that she should return at another time. Doc. #211 at 47, 50–53.
39. Ilori testified that she did not observe Black dancers at Centerfolds during her visits. Doc. #211 at 49.
40. Ilori did not enter dancer locker rooms, VIP areas, or other nonpublic areas where

dancers may have been present. Doc. #211 at 68–69.

41. Ilori testified that a parking attendant or security guard told her that Centerfolds hired only a limited percentage of Black women and that the club was racist. Doc. #211 at 60–61.

42. Ilori did not identify the Splendor manager by name who allegedly used the phrase "ebony dancers." Doc. #211 at 79.

43. Ilori did not identify by name the Centerfolds manager she allegedly spoke with. Doc. #211 at 79.

44. Ilori did not establish that the parking attendant or security guard possessed authority to hire dancers, reject applicants, or speak on behalf of Defendants regarding contracting decisions. Doc. #211 at 76–77.

45. Ilori did not establish whether the parking attendant or security guard was employed by Defendants or by a third-party contractor. Doc. #211 at 75.

46. Ilori did not present testimony from any alleged witness who observed the alleged statements.

47. Ilori did not present contemporaneous documentary evidence corroborating the alleged race-based statements.

**3. Liosha Williams**

48. Williams testified that she sought to work at Centerfolds. Doc. #211 at 87.

49. Williams testified that she asked to speak with a hiring manager, but a hostess did not get a manager. Doc. #211 at 88–90.

50. Williams testified that that the hostess told her Centerfolds was "not hiring any Black dancers." Doc. #211 at 89.

51. Williams described the hostess as a blonde woman but did not identify her by name. Doc. #211 at 89.

52. Williams acknowledged that she never spoke with a manager at Centerfolds. Doc. #211 at 91.

53. Williams testified that she observed Caucasian women entering the club with what she believed were dancer bags. Doc. #211 at 91–93.

54. Williams acknowledged that she did not know whether those women were applicants, current dancers, employees, or persons otherwise affiliated with the club. Doc. #211 at 116–117.

55. Williams did not present testimony from any person who observed the alleged statement.

56. Williams did not present contemporaneous documentary evidence corroborating the alleged statement.

57. Williams testified that the incident affected her confidence and caused emotional distress. Doc. #211 at 97–99.

58. Williams also testified that she had attempted to lighten her skin. Doc. #211 at 97.

59. On cross-examination, Williams acknowledged that she began skin-lightening treatment before the alleged Centerfolds incident. Doc. #211 at 108–109.

**D. Defense Witnesses**

**1. Halmudd Naumann**

60. Halmudd Naumann ("Naumann"), regional manager, testified that race was not used as a factor in determining whether a dancer could work at Centerfolds or Splendor. Doc. #211 at 165.

61. Naumann testified that the clubs had a financial incentive to permit more dancers to work. Doc. #211 at 168.

62. Naumann acknowledged that he was not the regional manager responsible for Centerfolds and Splendor during all relevant time periods. Doc. #211 at 171.

63. The Court gives Naumann's testimony some weight regarding Defendants' general practices and limited weight regarding the specific incidents alleged by Plaintiffs.

**2. Inninwe Dakouo**

64. Inninwe Dakouo ("Dakouo"), Centerfolds manager, testified that he worked at Centerfolds and that the club was diverse. Doc. #211 at 175, 181.

65. Dakouo testified that security guards did not hire dancers. Doc. #211 at 186.

66. Dakouo testified that dancer earnings varied significantly and could range from little to nothing to much larger amounts depending on the night. Doc. #211 at 188–189.

67. Dakouo did not recall seeing any of the Plaintiffs at Centerfolds. Doc. #211 at 193.

68. The Court credits Dakouo's testimony regarding the variability of dancer earnings and the lack of hiring authority held by security personnel at Centerfolds.

**3. Crystal Cowart**

69. Crystal Cowart ("Cowart") testified that she had worked with Centerfolds and Splendor for approximately twenty-four years. Doc. #211 at 206.

70. Cowart testified that dancer applicants generally needed to speak with a manager before receiving or completing relevant paperwork. Doc. #211 at 209.

71. Cowart testified that hostesses did not have hiring authority. Doc. #211 at 209.

72. Cowart testified that Black dancers worked at Centerfolds and Splendor. Doc. #211 at 214, 217.

73. The Court credits Cowart's testimony regarding the general contracting process and the absence of hostess hiring authority.

**E. Court's Factual Findings**

74. The Court finds the testimony of Defendants' witnesses credible on the material points that hostesses and security personnel lack hiring authority and that African-American dancers worked at Centerfolds and Splendor.

75. The Court observed the testimony of all witnesses and evaluated credibility based on demeanor, consistency, corroboration, opportunity to perceive the events described, and the evidence as a whole.

76. The Court finds that each Plaintiff testified sincerely regarding her belief that she was subjected to racial discrimination.

77. The Court does not find that any Plaintiff intentionally testified falsely.

78. However, the Court finds that sincerity alone does not establish the accuracy of a witness's recollection or satisfy a Plaintiff's burden of proof.

79. The Court finds that Plaintiffs were unable to identify the individuals who allegedly made the statements upon which their claims depend.

80. The Court further finds that Plaintiffs failed to establish the positions, responsibilities, or decision-making authority of the individuals who allegedly made the statements upon which their claims depend.

81. The Court finds that the evidence does not permit a reliable determination that the individuals who allegedly made the challenged statements had authority over the contracting decisions at issue.

82. Declouet could not identify either the front-desk employee who allegedly

communicated the statement concerning Black dancers or the male manager who allegedly spoke with that employee. Doc. #211 at 27–30.

83. Declouet's inability to identify the participants in the interaction is compounded by her inconsistent testimony regarding the identity of the manager she observed. Doc. #211 at 27–30.

84. Ilori did not identify the manager who alleged stated that Splendor had enough "ebony dancers." Doc. #211 at 79.

85. Ilori did not establish that the parking attendant or security guard who allegedly spoke with her possessed authority over contracting decisions or reliable knowledge concerning Defendants' hiring practices. Doc. #211 at 75–77.

86. Williams never spoke directly with a manager and attributed the alleged discriminatory statement to an unidentified hostess. Doc. #211 at 88–90.

87. The Court credits Defendants' testimony that hostesses lacked authority to approve or reject dancer applicants. Doc. #211 at 209.

88. Plaintiffs presented no contemporaneous documents, messages, notes, recordings, or other evidence corroborating the alleged statements.

89. The Court finds that Plaintiffs' claims depend entirely upon uncorroborated accounts of statements allegedly made by unidentified individuals whose authority and role in Defendants' contracting process was not established.

90. The Court further finds that Defendants presented credible evidence that African-American dancers worked at both Centerfolds and Splendor during the relevant period. Tr. Ex. D-12.

91. The Court does not find that Defendants maintained a policy or practice of refusing to

contract with African-American dancers.

92. The Court does not find that Defendants maintained a race-based quota or policy limiting the number of African-American dancers who could work at Centerfolds or Splendor.

93. After considering the evidence, the Court finds that Plaintiffs failed to establish by a preponderance of the evidence that Defendants denied them contracting opportunities because of their race.

**F. Damages**

94. Plaintiffs seek economic damages for lost earning opportunities. Doc. #23.

95. Plaintiffs also seek damages for emotional distress. Doc. #23.

96. Plaintiffs did not establish that they would have been allowed to work any specific number of shifts at Splendor or Centerfolds.

97. Plaintiffs did not establish that they would have worked at Defendants' clubs for any specific length of time.

98. Plaintiffs did not establish that they would have worked any particular schedule with reasonable certainty.

99. Plaintiffs did not establish that earnings at other clubs provided a reliable measure of what they would have earned at Centerfolds or Splendor.

100. The evidence established that dancer income was variable, customer-dependent, and uncertain. Doc. #211 at 188–189.

101. The Court finds that Plaintiffs' economic-damages evidence was largely speculative.

102. Plaintiffs did not present medical records, treatment records, expert testimony, or

third-party testimony corroborating the severity or duration of emotional distress.

103. Because Plaintiffs failed to establish liability, the Court need not award or calculate damages.

## Conclusions of Law

104. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

105. Venue is proper in the Southern District of Texas, Houston Division.

### A. Section 1981

106. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a).

107. Section 1981 protects against intentional racial discrimination in the making and enforcement of contracts. 42 U.S.C. § 1981.

108. "To prevail under section 1981, the plaintiff must prove a prima facie case of intentional discrimination." *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997) (citing *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)).

109. A plaintiff must further establish that race was a but-for-cause of the challenged contractual decision. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020).

110. Intentional discrimination may be proven through direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir.2000).

111. A remark constitutes direct evidence of discrimination if it is "(1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment

decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision." *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir. 2015).

112. Remarks may bear a sufficient causal connection to the employment decision if the speaker has such influence over the decision maker that his animus properly may be imputed to the decision maker. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226-7 (5th Cir.2000) (citing *Haas v. ADVO Sys., Inc.*, 168 F.3d 732, 734 n. 1 (5th Cir.1999)).

113. Plaintiffs claims rest upon statements allegedly made by individuals encountered while Plaintiffs sought opportunities to work at Splendor and Centerfolds.

114. To establish liability under Section 1981, Plaintiffs must prove that the alleged discriminatory conduct is attributable to Defendants and that race was the but-for cause of the challenged contracting decision. *Lawrence v. Fresh Del Monte Produce, Inc.*, No. 4:20-CV-04236, 2024 WL 1342747, at *6 (S.D. Tex. Mar. 28, 2024).

115. The evidence presented at trial failed to establish the identity, authority, or decision-making role of the individuals who made the statements upon which Plaintiffs rely.

116. Plaintiffs were unable to identify the alleged speakers by name.

117. Plaintiffs failed to establish that the individuals possessed authority to approve or reject dancer applicants or otherwise participated in contracting decisions on behalf of Defendants.

118. The lack of evidence establishing the speakers' authority undermines the probative value of the alleged remarks. *See Russell*, 235 F.3d at 225 (explaining that the "value" of the remarks is dependent upon the content of the remarks and the speaker.").

119. After weighing the evidence, the Court finds that Plaintiffs failed to establish by a preponderance of the evidence that the alleged statements were made by authorized decisionmakers acting on behalf of Defendants.

**B. Plaintiffs Failed to Establish Liability**

120. Declouet failed to prove that an authorized Centerfolds decisionmaker denied her the opportunity to contract because of her race.

121. Declouet did not speak directly with the alleged manager, did not identify the alleged manager, did not identify the front-desk employee, and did not corroborate the alleged statement.

122. Ilori failed to prove that Centerfolds or Splendor denied her the opportunity to contract because of her race.

123. Ilori's testimony regarding the "ebony dancers" statement at Splendor, while serious, was uncorroborated and not attributed to an identified decisionmaker whose authority was established by the evidence.

124. Ilori's testimony regarding Centerfolds relied on limited observations and a parking-lot statement from a person whose authority, employment status, and basis of knowledge were not established.

125. Williams failed to prove that an authorized Centerfolds decisionmaker denied her the opportunity to contract because of her race.

126. Williams never spoke with a manager, and the credible evidence established that hostesses lacked hiring authority.

127. Plaintiffs also failed to prove the existence of a race-based quota or policy.

128. Plaintiffs alleged a race-based limitation on African-American dancers, but the

evidence does not support that theory by a preponderance of the evidence.

129. Plaintiffs failed to prove that race was the but-for cause of Defendants' decisions regarding their applications or workplace inquiries.

130. Accordingly, Plaintiffs failed to establish a violation of 42 U.S.C. § 1981.

**C. Damages**

131. Because Plaintiffs failed to establish liability, the Court need not award damages. *See M3 Girl Designs, LLC v. Blue Brownies, LLC*, No. 09-2390, 2013 WL 12094183, at *4 (N.D. Tex. Jan. 3, 2013) ("The Plaintiff had the burden of proving liability. Because the Plaintiff failed to establish liability, damages are irrelevant.").

132. Similarly, because Plaintiffs failed to establish liability, the Court need not reach emotional-distress damages. *See Lavigne v. Cajun Deep Foundations, L.L.C.*, 654 Fed. Appx. 640, 648 n.3 (5th Cir. 2016).

**D. Conclusion and Order**

133. Plaintiffs failed to prove by a preponderance of the evidence that Defendants violated 42 U.S.C. § 1981.

134. Judgment shall be entered in favor of Defendants on all remaining claims.

135. The Court will enter a final judgment by separate order.

It is so ORDERED.

SEP 2 4 2026

Date

The Honorable Alfred H. Bennett
United States District Judge